UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KATHLEEN & GORDON SCHAFER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-8262** |
| **STATE FARM & FIRE CASUALTY COMPANY, ET AL.** | **SECTION "K"(2)** |

### ORDER AND REASONS

Two motions to dismiss are before the Court. Defendant State Farm Fire and Casualty Company ("State Farm") has filed a Motion to Dismiss Class Allegations in the Third Amended Complaint (Rec. Doc. 81) ("Mot. Dismiss"). Plaintiffs Kathleen and Gordon Schafer, putative class representatives, have opposed this motion (Rec. Doc. 85) ("Opp. Mot. Dismiss"). State Farm has filed a reply (Rec. Doc. 91) ("Reply Mot. Dismiss").

Defendant Xactware, Inc., ("Xactware") has also filed a Motion to Dismiss and to Strike the Third Amended Complaint (Rec. Doc. 79) ("Mot. Strike"). Plaintiffs have opposed this motion as well (Rec. Doc. 84) ("Opp. Mot. Strike"). Xactware has filed a reply (Rec. Doc. 90) ("Reply Mot. Strike").

**I. BACKGROUND**

These pending motions present the third time that this Court will consider motions to dismiss in this case. The background facts were thoroughly provided in this Court's first opinion considering motions to dismiss, *Schafer v. State Farm Fire & Cas. Co.*, 507 F. Supp. 2d 587, 589-91 (E.D. La. 2007) (Duval, J.) (hereinafter "*Schafer I*"). Familiarity with those facts is

1

presumed here. Generally, Plaintiffs, who are insured customers of Defendant State Farm, allege that State Farm used a flawed methodology in adjusting Plaintiff's property damage claims suffered during Hurricane Katrina. Plaintiffs also assert that Defendant Xactware produced inaccurate pricing lists to Defendant State Farm and other insurers, lists that contributed to the errant adjustment of Plaintiffs' property claims. Alternatively, Plaintiffs claim that State Farm and Xactware colluded or conspired to fix prices for replacement materials that resulted in artificially deflated insurance adjustments.

*Schafer I* considered the motions to dismiss the Plaintiffs' first amended class action complaint. Plaintiffs had alleged four claims in the first amended complaint. First, they claimed that the Defendants State Farm and Xactware conspired together and with others in a horizontal price-fixing scheme to "depress the amount paid out under the terms of the insurance contracts below market prices." First Am. Compl. ¶ 31-36. Plaintiffs alleged breach of contract with State Farm for failing to pay Plaintiffs the reasonable amount due "despite receipt of the required proof of loss and demand," and that moreover alleged State Farm otherwise "misrepresent[ed] relevant facts" such as "the fairness, accuracy, and amount due" under the Plaintiffs' policies. First Am. Compl. ¶ 38-43. Plaintiffs claimed that both State Farm and Xactware negligently calculated Plaintiffs' damages and failed to ensure that their pricing databases were regularly updated. First Am. Compl. ¶ 44-52. They asserted further that Xactware and State Farm intentionally defrauded their customers by colluding to "keep down the prices of [State Farm's] price lists in the Xactimate system." First Am. Compl. ¶ 53-57. Finally, Plaintiffs alleged a final claim of intentional breach of contract. First Am. Compl. ¶ 58-59.

In this Court's opinion in *Schafer I*, dated August 22, 2007, it dismissed the Plaintiffs'

2

claims in part.  First, in response to the Defendants' allegation that the putative class should be dismissed, the Court decided that "consideration of these issues are premature" and delayed any decision until a class certification could be held.  *Schafer I*, 507 F. Supp. 2d at 592.  This Court ruled that Plaintiffs also had standing to bring their state-law horizontal price-fixing claim, but under the Supreme Court's *Twombly* decision the plaintiffs "[did] not present the necessary factual predicates that plausibly suggest the existence of a conspiracy."  *Id.* at 597.  This Court found that the Plaintiffs' breach of contract claim against State Farm supported recovery but dismissed any such allegation against Xactware because no contract apparently existed between the Plaintiffs and Xactware.  *Id.* at 598.  With regards to negligence, this Court found that a claim had adequately been pled against State Farm.  The pleadings against Xactware, however, did not properly allege a legal duty on the part of that Defendant, but the Plaintiffs' opposition to the motion to dismiss raised the argument that an additional claim could be made under the Louisiana Products Liability Act ("LPLA").  *Id.* at 600-01.  Therefore, while dismissing the negligence claims against Xactware, the Court allowed the Plaintiffs to attempt to plead a claim under LPLA.  *Id.* at 601.  Lastly, this Court found that the allegations of intentional misrepresentation or fraud cleared the pleading hurdles of Federal Rule of Civil Procedure 9(b), and therefore it allowed those claims to proceed against both Defendants.  *Id.* at 601-02.

Subsequently, the Plaintiffs filed their Second Amended Complaint on September 4, 2007.  (Rec. Doc. 49).  The new complaint added three paragraphs relating the liability of Xactware for  defrauding the plaintiffs, for conspiring to violate state antitrust laws and insurance law, and for product liability under the LPLA.  However, the LPLA itself provides that, where it is invoked, it is the exclusive remedy available to a party.  Therefore, the parties

agreed to strike the LPLA claim in favor of Plaintiffs' other claims. (Rec. Doc. 75). Plaintiffs were granted leave to amend their complaint a third time ("Third Am. Compl.") (Rec. Doc. 79). The Third Amended Complaint, which is now before this Court, modifies the class definition and it supplements the fraud allegations regarding reliance.

## II. STATE FARM'S MOTION TO DISMISS CLASS ALLEGATIONS

State Farm seeks dismissal on the following grounds. State Farm first argues that under the Supreme Court's *Twombly* rule, and the Fifth Circuit's opinion in *John v. National Security Fire and Casualty Co.*, 501 F.3d 443 (5th Cir. 2007), the Plaintiffs must "make allegations thought to justify the maintenance of the claim as a class action" under Rule 23. State Farm argues that, as a preliminary matter, this case does not fall within the rubric for a Rule 23(b)(1)(A) class action because that rule does not apply to class actions seeking primarily damages, and Rule 23(b)(1)(B) does not apply because it only governs cases where an individual adjudication would affect the substantive rights of other class members. Mot. Dismiss at 5-8. Moreover, because the Plaintiffs do not seek injunctive or declaratory relief, Rule 23(b)(2) does not apply. Mot. Dismiss at 9.

Therefore, State Farm argues that Rule 23(b)(3) must apply and that the Plaintiffs do not satisfy the requirements of the rule. They argue that individualized issues predominate over common ones because there are individualized issues of damages, such as how much State Farm undervalued each customer's damage. They cite *John*, in which the Fifth Circuit affirmed dismissal of a class action that sought damages from insurance companies for undercutting customers' insurance claims for hurricane damage. *John*, 501 F.3d at 445. State Farm also

argues that a class action is not the superior method of adjudication, as individual suits or alternative dispute resolution is a more desirable method even for disputes regarding costs of labor and materials. Mot. Dismiss at 19. State Farm claims that the Plaintiffs' pursuit of fraud and negligent misrepresentation claims individually but not on behalf of the class precludes a finding of typicality or adequate representation by the putative lead plaintiff. Mot. Dismiss at 20-21. Moreover, the Plaintiffs' complaint cannot satisfy the commonality requirement and it fails to propose an ascertainable class. Mot. Dismiss at 22-24.

This Court concludes that State Farm's motion should be denied at the present time. Presuming, without deciding, that this putative class action must qualify under the standard of Rule 23(b)(3), this Court finds that it is inappropriate to dispose of the class action while the case is in its present posture. To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Doe v. MySpace, Inc.*, --- F.3d ----, 2008 WL 2068064, at *3 (5th Cir. 2008), *quoting Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). When considering a motion to dismiss, "the facts alleged in its complaint are taken as true, with those allegations being construed in the light most favorable to [] the non-movant." *Southwestern Bell Tel., LP v. City of Houston*, --- F.3d ----, 2008 WL 2102283, at *2 (5th Cir. 2008). Rule 23 sets forth the types of class actions that may be brought in federal court:

> **(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
>
> **(1)** prosecuting separate actions by or against individual class members would create a risk of:
>
> > **(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the

>party opposing the class; or
>
>**(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
>**(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
>**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>>**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>>**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>>**(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>>**(D)** the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). The class definition offered by Plaintiffs in their Third Amended Complaint includes:

>All Louisiana residents who were named insureds with State Farm and who received a one-time unconditional payment for the actual cash or other value of damage to property located in the State of Louisiana, under the terms of homeowner's policies with State Farm, utilizing any Xactware or Xactimate pricing, from August 29, 2005 thru [sic] [the date of certification]."

Third Am. Compl. at 2.

State Farm asserts that dismissal is appropriate because the relevant insurance policies allegedly involved here are varied and numerous, because the specific losses of each plaintiff will be unique, and because it will be impossible to determine the proper cost of each allegedly

overcharged material.  However, taking these assertions as true would be contrary to those allegations by the Plaintiffs.  They assert that the class is easily ascertainable, as it includes persons who are insurance customers of State Farm, and presumably State Farm would have such relevant documentation.  Plaintiffs claim that any individualized issues, such as timing of payments, the type of damage, and amount of payment are all easily ascertainable, and thus they do not predominate over the common issue of what State Farm should have paid the putative class members.  Opp. Mot. Dismiss at 6.  Any calculation of damages also need not involve individualized determination; instead, Plaintiffs aver that any damages can be neatly determined simply through "a reliable auditing or accounting."  Opp. Mot. Dismiss at 7, *citing Klay v. Humana*, 382 F.3d 1241, 1259-60 (11th Cir. 2004) ("Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.").  Plaintiffs likewise assert that a class action is a superior vehicle for this litigation because many putative class members may have suffered low amounts of damage such that bringing an individual lawsuit would be uneconomical.  Opp. Mot. Dismiss at 9.

      This Court finds that these pleadings, on their face, plausibly allege that class treatment would be appropriate under Rule 23(b)(3) in this matter.  The allegations show, at this time, that "questions of law or fact common to class members predominate over any questions affecting only individual members" because State Farm used the same allegedly flawed methodology to adjust Plaintiffs' insurance claims, paid them all one-time actual value payments.  Fed. R. Civ. P. 23(b)(3).  It is particularly persuasive that each Plaintiffs' damages could be small, but also can be easily ascertained, thus making a class action "superior to other available methods for fairly

and efficiently adjudicating the controversy." *Id.* To follow State Farm's position, this Court would have to consider matters outside the pleadings to decide the present motion, but "[i]f the district court considers information outside the pleadings, the court must treat the motion as a motion for summary judgment." *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004). This Court does not find summary judgment treatment appropriate at this time, particularly where there appears to be a vast difference of opinion concerning the propriety of class treatment. It should be noted, however, that while the Plaintiffs receive the benefit of the doubt in a motion to dismiss, they will bear the burden of proof when they seek class certification. *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d. 732, 737-38 (5th Cir. 2003) ("The party seeking certification bears the burden of demonstrating that the requirements of rule 23 have been met.") (citation omitted).

State Farm points to the Fifth Circuit's *John* decision to advocate for this Court to dismiss the class allegations now. Indeed, in *John*, the Fifth Circuit held that dismissal of a class at the pleading stage can be appropriate. However, the Fifth Circuit never had the occasion to decide whether the district court's dismissal was indeed legally appropriate because "the Johns [did] not content that the class they propose is ascertainable, but instead propose two newly defined classes." 501 F.3d at 445. Consequently, *John* only stands for the proposition that a district court has the power to dismiss class allegations at the pleading stage, but not when such dismissal is appropriate. Without further precedent establishing when rejection of a class complaint is appropriate at the motion to dismiss stage, this Court will refrain from taking the draconian measure of dismissing the putative class at this time.

State Farm further argues that this case should be dismissed as Judge Feldman dismissed

the class action in *Aguilar v. Allstate Fire & Cas. Ins. Co.*, No. 06-4660, 2007 WL 734809 (E.D. La. Mar. 6, 2007) (Feldman, J.).  Mot. Dismiss at 4-5.  *Aguilar* involved very similar facts: plaintiffs were property owners whose properties were damaged during Katrina.  They sued insurance companies for improperly adjusting their claims, and proposed a class as insurance customers whose property was damaged during Katrina and who "ha[d] a compensable loss and has either been paid or [is] in the process of being paid by the defendant for the compensable loss of the property."  *Id.* at *1.  Judge Feldman rejected these claims, finding that the individual issues predominated over the class issues because plaintiffs would have to "demonstrat[e] a wrongful pattern and practice of failing to adjust claims will require an intensive review of the individual facts of each class member's damage claim, including the nature and extent of damage, the timing and adjustment of each class member's claim, how much each class member was paid for his claim and for what damage, and whether that amount was sufficient and timely."  *Id.* at *3.

In the present case, the Plaintiffs persuasively argue that *Aguilar* is distinguishable.  They assert that their proposed class is much narrower than *Aguilar* because here their proposed class includes only those who received "one-time actual cash value" payments without seeking replacement coverage.  Opp. Mot. Dismiss at 5.  This class thus can be contrasted with *John* and *Aguilar*, cases in which the class purported to represent *all* covered property owners.  Plaintiffs argue that their class is indeed ascertainable because, unlike *Aguilar* and subsequent cases, here there are no individualized questions of the nature or extent of damage.  No "individualized jury trials" will be required to calculate damage once liability is established; instead, Plaintiffs assert that all that will be required to determine damages is "a reliable audit or accounting."  Opp. Mot.

9

Dismiss at 7.  State Farm replies that Plaintiffs do not make any representation concerning what this accounting or mathematical formula would look like; with 10,000 distinct line item prices, this formula could be immensely unwieldy.  Reply Mot. Dismiss at 4.  This Court does not discount State Farm's claims, but at this stage in the litigation it is bound to give credence to those allegations by the Plaintiffs.  The class certification hearing will certainly elucidate the parties' claims and provide a better basis upon which this Court can to evaluate their positions.  Until that time, State Farm's Motion to Dismiss Class Allegations will be denied.

### III.  XACTWARE'S MOTION TO DISMISS OR TO STRIKE

Defendant Xactware filed a Motion to Dismiss and to Strike the Third Amended Complaint (Rec. Doc. 79) ("Mot. Strike").  Xactware joined in State Farm's Motion to Dismiss Class Allegations, and accordingly this Court's ruling, *supra*, applies to the same extent here.  In this separate motion, Xactware specifically alleges that the fraud claims asserted against it are not adequately pleaded.  First, Xactware asserts that Plaintiffs made a "conclusory allegation that State Farm 'relied' on Xactimate in adjusting insurance claims [that] is not sufficient to state a viable fraud claim against Xactware under Louisiana law."  Mot. Strike at 4.  Xactware claims that Plaintiffs do not sufficiently allege that "*they* relied upon a misrepresentation by [Xactware]." Mot. Strike at 4 (emphasis in original).  Xactware also alleges that Plaintiffs do not adequately plead that their reliance was a proximate cause of their injury.  Mot. Strike at 6.  For the following reasons, this motion will be denied.

Generally, any pleading in federal court asserting fraud must be plead "with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "What constitutes 'particularity'

will necessarily differ with the facts of each case." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir.1992)).  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)).  However, under Rule 9(b) "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Delictual fraud, provided for under Louisiana Civil Code articles 2315,[1] requires proof of the following elements: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury."  *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1068 (5th Cir. 1993) (citations omitted).

The Third Amended Complaint contains adequate allegations regarding reliance.  The complaint states that the Schafers "relied to their detriment upon the misrepresentations contained within the Xactware pricing," and they "received and accepted lower payments, and refrained from making a supplemental claim or taking other action, in reliance upon the purported accuracy, fairness and reliability of the pricing lists originating with Xactimate."  Third Am. Compl. ¶ 55-C.  Plaintiffs also allege that "State Farm relied upon Xactware pricing,

---

[1]According to Article 2315 of the Louisiana Civil Code, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code art. 2315.  Article 1953 of the Code further explains:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

La. Civ. Code art. 1953.

to Mr. & Mrs. Schafer's detriment, (and to the detriment of the entire putative class), thereby causing State Farm to make lower one-time or other payments to Plaintiffs (and the putative class members) which were less than what they should have been." Third Am. Compl. ¶ 55-D. Summed up, these allegations charge that Xactware passed along its database, which allegedly contained deflated numbers, to State Farm and other insurers, knowing that the insurers would use the database to adjust homeowner claims. Presuming these allegations to be true, they plausibly allege that State Farm and other insurers relied on Xactware in adjusting homeowners' insurance claims. It is certainly plausible, moreover, that Plaintiffs would rely on the insurance adjustments that are premised on the accuracy of the Xactware database, and this Court find no reason at this time to dismiss this case simply because Plaintiffs are relying on a third party.[2]

Plaintiffs adequately allege intent as well, stating that Xactware "knew and intended that State Farm (and/or Plaintiffs and/or other putative class members) would rely on its pricing lists." Third Am. Compl. ¶ 55-E. Plaintiffs explain that Xactware's sought to defraud them through State Farm because of "the increased profits or savings to State Farm would predictably and foreseeably encourage and result in State Farm's purchase and continued use of Xactware

---

[2]*See Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999):

> We would expect Louisiana courts to use a standard for intentional misrepresentation involving risk of physical harm similar to the Restatement (Second) of Torts § 310 (1965): "An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or a third person in reliance upon the truth of the representation, if the actor (a) intends his statement to induce or should realize that it is likely to induce action by the other, *or a third person*, which involves an unreasonable risk of harm to the other, and (b) knows (I) that the statement is false, or (ii) that he has not the knowledge which he professes."

*Id.* (emphasis added).

pricing or other services [] at the expense of and injury to Plaintiffs and the members of the putative class." Third Am. Compl. ¶ 55-E.  Considering that intent need only be pleaded generally under Federal Rule of Civil Procedure 9(b), these allegations are enough to assert the intent element of fraud.

Plaintiffs also plausibly allege proximate causation.  They generally assert, "The conduct of Xactware and State Farm, both individually and in concert and conspiracy with one another, caused, contributed to, and/or was a substantial factor in causing damage to Mr. & Mrs. Schafer and the members of the putative class." Third Am. Compl. ¶ 55-B.  Plaintiffs further allege that they "received and accepted lower payments, and refrained from making a supplemental claim or take other action, in reliance upon the purported accuracy, fairness and reliability of Plaintiffs allege that Xactware knew that State Farm and/or the Plaintiffs would rely on these pricing lists and intended to profit from this reliance." Third Am. Compl. ¶ 55-C.   Xactware asserts that Plaintiffs have not adequately alleged that Xactware's allegedly faulty pricing data ever reached customers such as Plaintiffs.  But Plaintiffs persuasively allege that Xactware induced State Farm to rely on its deflated pricing lists, "thereby causing State Farm to make lower one-time or other payments to Plaintiffs (and the putative class members) which were less than what they should have been."   Third Am. Compl. ¶ 55-D.  It is certainly plausible that Xactware provided deflated pricing data to State Farm and other insurers and that such deflated data had a detrimental impact on customers.  Even if Xactware's data was not alone in causing Plaintiffs' injury, but rather was simply a contributing factor to such harm, this infirmity does not hinder Plaintiffs' allegations because it is well-established under Louisiana law that more than one party can contribute to fault.  *See McCain v. Howell*, 971 So. 2d 323, 331 (La. App. 1st

Cir. 2007) ("The fact that more than one party can contribute to the harm is the reason for our comparative fault system."). Therefore, considering the posture of this case at the motion to dismiss stage, Plaintiffs have plausibly asserted causation with adequate particularity to satisfy Rule 9(b).

It should be noted that Plaintiffs also assert that, as to the fraud cause of action, "individual questions of 'reliance' or causation are not relevant, as the only conduct at issue (in terms of causation) is the common classwide reliance and conduct of State Farm." Third Am. Compl. ¶ 31-E. Plaintiffs further state that "[i]t is irrelevant whether Plaintiffs, as to these payments, can be said to have 'relied' on either Xactware or State Farm's misrepresentations." Third Am. Compl. ¶ 31-E. Xactware persuasively argues that such statements are essentially disclaimers of reliance by Plaintiffs, and that a broad "fraud on the market" theory is inappropriate here. However, this Court notes that this particular paragraph of the Third Amended Complaint concerns Plaintiffs' class action claims of fraud against Xactware. In this context, Plaintiffs' apparently are anticipating class certification, and therefore they attempt to disavow any individualized issues of reliance. *See Bell v. Ascendant Solutions, Inc.*, 422 F.3d 307, 310 (5th Cir. 2005) (noting that, where fraud on the market theory is unavailable, "plaintiff's fraud claims [are] dependent on proving reliance and thus unsuited for aggregation"). However, this Court finds that consideration of the class action claims is better suited for the class certification stage of this litigation. Therefore, Xactware's motion to dismiss shall be denied.

## IV.  CONCLUSION

      For the reasons stated herein, accordingly,

      **IT IS ORDERED** that Defendant State Farm's Motion to Dismiss Class Allegations (Rec. Doc. 81) is **DENIED**; and,

      **IT IS FURTHER ORDERED** that Defendant Xactware's Motion to Dismiss and to Strike (Rec. Doc. 79) is **DENIED**.

      New Orleans, Louisiana, this __11th__ day of June, 2008.

                                          **STANWOOD R. DUVAL, JR.**
                                       **UNITED STATES DISTRICT JUDGE**