UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHLEEN AND GORDON SCHAFER,   * CIVIL ACTION
                               *
                 Plaintiffs,   * NO. 06-8262
                               *
     VERSUS                    * SECTION "K"(5)
                               *
STATE FARM FIRE AND CASUALTY   * JUDGE DUVAL
COMPANY AND XACTWARE SOLUTIONS,*
INC.,                          * MAGISTRATE CHASEZ
                               *
                 Defendants.   *
                               *
* * * * * * * * * * * * * * * * * * * * * * * * *   *

### REPORT OF JAMES J. ADRIAN

My name is James J. Adrian. I was engaged by the law firm of Stone Pigman Walther Wittmann, LLC on behalf of State Farm Fire and Casualty Company ("State Farm") to offer my expert opinions with regard to State Farm's estimates and payments of homeowner claims in Louisiana for the time period of August 29, 2005 through the third quarter of 2008.

It is my understanding that the Plaintiff has alleged that in Louisiana, State Farm has underpaid the costs of repair for homeowner claims and that both State Farm's and Xactware's unit pricing for repair items are below market. As described in detail below, I have seen no evidence or basis to support Plaintiffs' contentions that State Farm underpaid Louisiana homeowners dwelling claims or that the unit prices used by State Farm and Xactware are lower than actual repair costs. Furthermore, it is my opinion that the only way one can determine whether a payment was sufficient to cover the cost of repairs is to individually evaluate in detail each claim file.

I have reviewed and analyzed a random sample of 100 State Farm Louisiana homeowner claims from the relevant time frame.[i] I have also reviewed various industry cost estimating books and systems that are used to estimate the costs of home repairs. Briefly stated, my opinions, which are described more fully in this report, are as follows:

**OPINION ONE:**
**Estimating is a process of predicting future costs. The process is not a science. Construction cost estimates are prepared by defining the scope of work to be performed and applying a cost to the quantity of work required. Because an estimate is only a prediction of costs, one would expect some of the estimate components to be less and others to be more than the actual costs incurred to make repairs. As evidence of this, my review of the randomly selected State Farm claim files indicated that a contractor's estimate of work similarly set out in a State Farm estimate on occasion was higher, and on occasion, the State Farm cost estimate and contractor cost estimate were substantially the same. However, my review indicates**

DEFENDANT'S EXHIBIT

that the estimating process utilized by State Farm to estimate the repair costs for each homeowner's damage enhances the accuracy of those estimates.

OPINION TWO:
My review of the sample claim files indicates that construction contractor estimates or invoices are often used by State Farm in paying homeowner repair costs. Sometimes the contractor estimate is for a portion of the repairs; other times it is for the entire repair. The Schafers have contended that State Farm pays below market for repairs. That contention is not supported by my review of the sample claim files. When State Farm paid homeowner repairs based on contractor estimates, they clearly were paying market place prices.

OPINION THREE:
My review of the sample claim files indicates that there were a number of claims in which State Farm included a payment on the estimate for general contractor overhead and profit even where it was clear that no such general contractor would be necessary or feasible. There were 9 such incidences out of the sample 100 claims where State Farm included a 20% additional amount on the estimate for the costs of general contractor overhead and profit. This unnecessary added amount may have had the effect of overpaying the homeowner for the repair.

OPINION FOUR:
My review of the activity logs contained in the sample claim files indicates that there was considerable dialogue and communication between State Farm and the homeowners, and sometimes their contractor, regarding their damage and the claim process. Generally the activity logs did not reflect disagreements between State Farm and the homeowner. There were select instances when the homeowner and State Farm had discussion of an issue, typically about the scope of work coverage (e.g., should all or only some of a roof be repaired). While on occasion the initial State Farm estimate differed from a contractor's total estimate, my review did not find a single instance where the discussions ended with a disagreement between the homeowner and State Farm about the unit costs used by State Farm in estimating the cost of the homeowner repair.

OPINION FIVE:
I understand that Plaintiffs contend that the unit pricing used by State Farm and the unit pricing contained on Xactware price lists are below market. I have seen no indication of that based on my experience with estimating data bases and systems. I have thirty-five years of experience teaching construction cost estimating and doing cost estimating consulting. I am aware of other industry cost sources besides Xactware, and my experience has been that Xactware provides pricing consistently competitive with or greater than that used in other industry sources. My experience has also been that comparisons among repair cost vendors is complex, difficult, and sometimes not possible because those industry sources build different assumptions into their pricing and have greatly different detail and work item definitions. There is no single market price for any given item at any given point in time. This is borne out by my experience and illustrated by the results of my review of several industry cost book sources.

**OPINION SIX:**
**The only way one can determine whether a payment was sufficient to cover the cost of a repair is to individually evaluate in detail the specific circumstances of each individual claim. My review of the sample claim files found no indication that claims were underpaid. In fact, in reviewing the sample claim files, I did observe claim files in which State Farm's payment may have been greater than required for the applicable homeowner damage.**

My background and qualifications for giving these opinions include thirty plus years of experience as a professor of construction, construction industry practitioner and consultant, and author.

1. I received my Ph.D. in Civil Engineering from the University of Illinois in 1972. I have also received my M.S. and B.S. degrees in Civil Engineering from the University of Illinois and a B.S. in Accounting from Bradley University. I am a Certified Public Accountant ("CPA") and a Registered Professional Engineer ("PE"). A copy of my curriculum vitae is attached as an Exhibit 1. The materials that I have reviewed and relied upon in preparing this report are identified in Exhibit 2.

2. I have devoted my thirty-five plus years of professional life focusing on construction administration, and I am one of the longest tenured professors in the country who has taught construction estimating. My textbook, Construction Estimating, has been widely used by academia and industry to teach students and practitioners the proper steps required to prepare an accurate cost estimate. I have taught construction estimating for thirty-five years and have prepared training material for the American Institute of Certified Public Accountants for the members to aid them in appraising the accuracy of construction estimates when they prepare construction firm audited financial statements.

3. For my recognized work in construction estimating, I was named an Honorary Member of the National Society of Professional Estimators (one of the four named at the time of being named). Additional awards include the following

- Distinguished Alumni Award for 2001; University of Illinois-Urbana; Department of Civil Engineering (for contributions to construction education).

- National Construction Educator of the Year – 1996; Associated General Contractors of America.

- Rothberg Award for Scholarship and Professional Activity; Bradley University

A more detailed statement of my opinions in this matter and the basis for those opinions follow. I reserve the right to supplement these opinions to address additional assertions made by Plaintiffs or additional discovery materials and to provide illustrative exhibits.

**OPINION ONE:**
**Estimating is a process of predicting future costs. The process is not a science. Construction cost estimates are prepared by defining the scope of work to be performed and applying a cost to the quantity of work required. Because an estimate is only a prediction of costs, one would expect some of the estimate components to be less and others to be more than the actual costs incurred to make repairs. As evidence of this, my review of the randomly selected State Farm claim files indicated that contractor estimate of work similarly set out in a State Farm estimate on occasion was higher, and on occasion, the State Farm cost estimate and contractor cost estimate were substantially the same. However, my review indicates that the estimating process utilized by State Farm to estimate the repair costs for each homeowner's damage enhances the accuracy of those estimates.**

1.1   It is my experience that multiple contractor estimates for the same work will always vary.

1.2   It is my experience and opinion that, while estimates will certainly vary, the accuracy of the estimate of cost is dependent on several factors, including:

   (a)   The degree and amount of detail in defining the work to be performed

   (b)   The frequency of updating the cost data

   (c)   The localizing of the historical data to the location of the repair being estimated

   1.2.a.   <u>Degree and amount of detail of the costs</u>
   My review of the price list or cost data base that State Farm utilized throughout the time period for which I reviewed homeowner claims indicates that the system has approximately 10,000 distinct repair work tasks identified that can be used to estimate the cost for doing a specific type of repair. The overall price lists used by State Farm are broken down into specific broad categories of work (see Exhibit 3)

   Furthermore, each broad category of work noted in Exhibit 3 is further broken down into detailed line items that enhance specific costing. For example, for roofing type of repair work (a common type of repair needed for homeowner repairs), the price lists identify and provide cost data for approximately 430 different roofing work tasks or items (see Exhibit 4 for example of types of roofing work in cost data base).

   My review of the sample homeowner files indicates that State Farm utilized this detailed list of work tasks to estimate the homeowner claim work required.

   It is my experience that the Xactimate estimating system used by State Farm is more detailed in its work line items than one finds in other estimating systems.

1.2.b. <u>Frequency of updating the cost data base</u>

My review of the random homeowner files and the State Farm price lists used by State Farm indicates that the unit costs that were used by State Farm in Louisiana were frequently updated. For example, as noted below, State Farm used fifteen (15) time-adjusted price lists in a thirteen month period for the New Orleans pricing territory. Similar frequent time-adjusted price lists were used in the other Louisiana pricing territories, as well.

New Orleans
| | | |
|---|---|---|
| LANO5F5C3 | C3 | 9/2/2005 |
| LANO5F5C4 | C4 | 9/9/2005 |
| LANO5F5D1 | D1 | 10/7/2005 |
| LANO5F5D2 | D2 | 10/16/2005 |
| LANO5F5D3 | D3 | 10/24/2005 |
| LANO5F5D4 | D4 | 11/22/2005 |
| LANO5F5D5 | D5 | 12/8/2005 |
| LANO5F6A1 | A1 | 1/18/2006 |
| LANO5F6A2 | A2 | 1/23/2006 |
| LANO5F6A3 | A3 | 2/21/2006 |
| LANO2F6B1 | B1 | 4/27/2006 |
| LANO2F6B2 | B2 | 5/17/2006 |
| LANO2F6C1 | C1 | 8/15/2006 |
| LANO2F6C2 | C2 | 8/25/2006 |
| LANO2F6D1 | D1 | 10/16/2006 |

1.2.c. <u>Localizing of the historical data to the location of the repair being estimated</u>

My review of the random homeowner files and the price lists used by State Farm indicates that the unit costs reflect the location in which the homeowner repair was to be made. The price lists State Farm uses are tailored to 9 different pricing areas:

| Pricing Area | Symbol in Estimating Cost Data Base Used by State Farm for Pricing Areas |
|---|---|
| New Orleans | LANO |
| Alexandria | LAAL |
| Baton Rouge | LABR |
| Houma | LAHO |
| Lafayette | LALA |
| Lake Charles | LALC |
| Mandeville | LAMA |
| Shreveport | LASH |
| Monroe | LAMO |

In summary, the Xactimate estimating system State Farm uses provides costs for detailed work items, frequent periodic price adjustments, and

location-specific pricing. These features enhance the accuracy of State Farm cost estimates.

1.3   Based on my review of the transcript of the deposition of Mr. Jon Luther, executive vice president of the Greater New Orleans Home Builders Association, I understand that a price list was generated by that association. I reviewed the price list generated by the association and determined that it did not contain the estimating system features described above. The price list was only done on a single occasion, was never updated, and was only for a single location. In addition, unlike the price lists used by State Farm, the association's price list did not include extensive work task detail. Therefore, in my opinion, the price list prepared by the association would not provide a reasonable or accurate estimate of the cost of a homeowner repair.

**OPINION TWO:**
**My review of the sample claim files indicates that construction contractor estimates or invoices are often used by State Farm in paying homeowner repair costs. Sometimes the contractor estimate is for a portion of the repairs; other times it is for the entire repair. The Schafers have contended that State Farm pays below market for repairs. That contention is not supported by my review of the sample claim files. When State Farm paid homeowner repairs based on contractor estimates, they clearly were paying market place prices.**

2.1   My sample claim file review indicates that more often than not, when a contractor estimate or bid is available, State Farm will pay or reimburse the homeowner based on the contractor estimate. (A summary spreadsheet exhibit reflecting my file review observations accompanies this report as Exhibit 5.) When a contractor estimate/bid is significantly higher than the State Farm estimate, my review indicates State Farm will attempt to reconcile any difference (often as to scope).

2.2   My review of the 100 randomly selected homeowner claim files indicates payment to the homeowner by State Farm was made, in whole or in part, on the following bases:

| *Basis of Payment by State Farm to Homeowner* | *Frequency* |
|---|---|
| Contractor Estimate(s) for all or portion of repairs | 39 |
| Premier Service Provider Program- Contractor | 2 |
| Policy Limit | 5 |
| Solely on State Farm Estimate | 51 |
| Can't tell from File | 3 |

The analysis indicates that State Farm paid homeowner claims, in total or in part, based on contractor estimates in 41 of the 100 files reviewed. There were additional five claim files where the payment was determined based on a policy limit.

2.3   My review indicates that the contractor estimates seldom delineate the components of their estimates in detail such that the individual items in the overall estimate can be compared line item to line item with the detailed State Farm estimate in the claim files. However, I was able to observe several examples of instances where the unit pricing identified on the State Farm estimate was virtually the same as that contained on the contractor estimate. However, if one attempts to compare the two, it is important to recognize that the estimating system State Farm uses makes a lump sum adjustment, referred to as Base Service Charge, to the sum of the individual work task items. An example of these base service charge adjustment is shown below for claim file 18-A245-667.

SF Farm Estimate- Specific Work

| Description | Quantity | Unit Cost | RCV |
|---|---|---|---|
| R&R Chain link fence – 6' high | 20.00 LF | 10.37 | 207.40 |
| R&R 2" x 6" lumber-treated (1BF per LF) | 46.00 LF | 2.05 | 94.30 |
| Total | | | 301.70 |

SF Estimate Adjustments for Base Service Charges

| Adjustments for Base Service Charge | Adjustment |
|---|---|
| Carpenter – General Framer | 88.74 |
| Fencing Installer | 92.60 |
| Total Adjustment for Base Service Charges | 181.34 |

This claim file contains a contractor estimate for the above noted fence. The contractor estimate / bid are for $485.00.

If one compares the contractor estimate /bid of $485.00 to the State Farm estimate for the similar work, and the base service charges are appropriately added to the State Farm estimate line item, the State Farm estimate for the fence and the post ($301.70 + $181.34 or $483.04) and the contractor estimate of $485.00 are virtually the same.

**OPINION THREE:**
**My review of the sample claim files indicates that there were a number of claims in which State Farm included a payment on the estimate for general contractor overhead and profit even where it was clear that no such general contractor would be necessary or feasible. There were 9 such incidences out of the sample 100 claims where State Farm included a 20% additional amount on the estimate for the costs of general contractor overhead and profit. This unnecessary added amount may have had the effect of overpaying the homeowner for the repair.**

3.1   A general contractor is an individual or a firm that has direct contractual relationship with the property or project owner. The general contractor engages, coordinates, and supervisors the work of subcontractors.

3.2  A general contractor has full responsibility for the repair or construction of the project to include the project time, cost, quality, and safety. General contracting firms vary significantly in size (annual dollar value of work performed) and the amount, if any, of actual trade or craftwork they perform on the project with their own employees.

3.3  Each and every repair or construction project is **different** in regard to many factors to include the following:

Unique Factors for Each Repair or Construction Project
- a) Dollar value of work
- b) Difficulty of repair and construction work required
- c) Uniqueness of work required
- d) Type and number of labor crafts required to do the work
- e) Type and availability of material for work
- f) Property owner knowledge of work process
- g) Skill, size, and type of contractors in location of work
- h) Working conditions in which work is performed
- i) Quality required
- j) Regulatory laws regarding the work process
- k) Number and type of change orders issued during work

Whether and to what extent any property repair or construction project requires the services of a general contractor depends on the combination and relationship of the above factors.

3.4  Given the objectives of cost, time, quality, and safety, and given the relatively unique combinations of the above types of factors for every repair or commercial project, owners have used many **different** approaches to complete the work. There is not one approach, there are many. Depending on the unique factors characteristic of a defined repair or construction project, different approaches need to be considered. This selection of a preferred approach is illustrated in Exhibit 6.

As noted in Exhibit 6, there are several different processes the owner can select as most appropriate for their repair or construction project. Included in these processes are the following:

Repair or Construction Project Approaches to Completing the Work
- (#1) Owner does his or her own work
- (#2) Owner engages "handy man"
- (#3) Owner hires one trade contractor
- (#4) Owner hires multiple independent trade contractors and owner monitors work
- (#5) Owner hires multiple interdependent trade contractors and owner monitors work
- (#6) Owner hires general contractor that "brokers" all work; general contractor coordinates and supervises all work
- (#7) Owner hires general contractor that self-performs all work and coordinates and supervises all work

    (#8)    Owner hires general contractor that self-performs some work and coordinates and supervises all work
    (#9)    Owner engages design-build firm to do work
    (#10)    Owner uses construction management (CM) process
    (Numerous Others)

3.5    I have applied the foregoing analysis to my review of the 100 random homeowner claim files. I have concluded that State Farm paid an additional amount for general contractor overhead and profit in 9 of those cases where the services of a general contractor were clearly not needed. There were additional claims where the services of a general contractor were not needed and in which State Farm appropriately did not include general contractor overhead and profit on the estimate.

**OPINION FOUR:**
My review of the activity logs contained in the sample claim files indicates that there was considerable dialogue and communication between State Farm and the homeowners, and sometimes their contractor, regarding their damage and the claim process. Generally the activity logs did not reflect disagreements between State Farm and the homeowner. There were select instances when the homeowner and State Farm had discussion of an issue, typically about the scope of work coverage (e.g., should all or only some of a roof be repaired). While on occasion the initial State Farm estimate differed from a contractor's total estimate, my review did not find a single instance where the discussions ended with a disagreement between the homeowner and State Farm about the unit costs used by State Farm in estimating the cost of the homeowner repair.

4.1    My review of the 100 random homeowner claim files indicates that those files typically include various documents, including the following:
- A log of activity notes of correspondence and discussions between State Farm representative(s) and the homeowner (and possibly the State Farm representative and the contractor if there is a contractor estimate).
- State Farm estimate
- Photographs of the work to be repaired
- Other documents may include sketches, supplemental estimates, and evidence of payments (checks).

Based on the review of the above referenced documents, especially the activity logs, I did not find any evidence of an unresolved issue between the homeowner and State Farm regarding the unit costs for specific repair work identified in the claim files.

4.2    My review of the 100 random homeowner claim files to include a review of the activity logs in the files indicates the following:

| State Farm dialogue with homeowner and/or contractor | Frequency |
|---|---|
| Number of occasions where there is no evidence of any disagreement between State Farm and either homeowner or contractor as to a scope for work, timeliness of claim process, or cost issue for a repair. | 75 |
| Number of occasions where there is evidence of discussion of an issue between State Farm and either homeowner or contractor as to a scope for work, or timeliness of claim process that appeared to be negotiated to satisfaction of the homeowner. | 22 |
| Number of occasions where there is evidence of any discussion of issue between State Farm and either homeowner or contractor as to a scope for work, or timeliness of claim process where resolution is not clear. | 3 |

**OPINION FIVE:**
I understand that Plaintiffs contend that the unit pricing used by State Farm and the unit pricing contained on Xactware price lists are below market. I have seen no indication of that based on my experience with estimating data bases and systems. I have thirty-five years of experience teaching construction cost estimating and doing cost estimating consulting. I am aware of other industry cost sources besides Xactware, and my experience has been that Xactware provides pricing consistently competitive with or greater than that used in other industry sources. My experience has also been that comparisons among repair cost vendors is complex, difficult, and sometimes not possible because those industry sources build different assumptions into their pricing and have greatly different detail and work item definitions. There is no single market price for any given item at any given point in time. This is borne out by my experience and illustrated by the results of my review of several industry cost book sources.

5.1     The following estimating systems are examples of systems that can be used for cost estimating home repairs.

Xactimate (the system used by State Farm)
National Renovation & Insurance Repair Estimating (Craftsman)
Marshall & Swift Home Repair and Remodeling Costs
RS Means Cost Data

To make a cost comparison between the unit prices in the cost books, one must attempt to reconcile the different assumptions and definitions used in those sources. Sometimes it is possible to make comparison of like work items if one makes appropriate adjustments and reasonable assumptions.

When one makes the adjustments necessary to compare like cost components in a specific unit cost for a work item, one can expect instances where cost book #1 yields a higher unit cost for one work item relative to cost book #2, instances where cost book #1 reports a lower unit cost for another work item relative to cost book #2, and instances where cost book #1 reports a similar unit cost for another work item relative to cost book #3. My experience with working with cost books is that Xactware's pricing is consistently competitive with or greater than that published by other industry sources.

5.2   For example, the tables below illustrates comparative unit costs for a few of the common work tasks required for repairs:

| COST ESTIMATING BOOK* | Unit cost for Repair and Replace 3 tab-25 yr.-composition shingle roofing-including felt (Unit cost per Square = 100 square feet) |
|---|---|
| State Farm's Xactimate Price List | $158.00 |
| National Renovation & Insurance Repair Estimate | $136.29 |
| Marshall & Swift Home Repair and Remodel | $117.45 |
| RS Means Cost Data | $128.25 |

| COST ESTIMATING BOOK* | Unit cost for Sheathing plywood ½" CDX (Unit cost per foot) |
|---|---|
| State Farm's Xactimate Price List | $1.20 |
| National Renovation & Insurance Repair Estimate | $1.30 |
| Marshall & Swift Home Repair and Remodel | Not listed as item in cost book |
| RS Means Cost Data | $1.01 |

| COST ESTIMATING BOOK* | Unit cost for ½" drywall; hung, taped, and ready for paint (Unit cost per foot) |
|---|---|
| State Farm's Xactimate Price List | $1.46 |
| National Renovation & Insurance Repair Estimate | $1.54 |
| Marshall & Swift Home Repair and Remodel | Not listed by thickness in book |
| RS Means Cost Data | $1.17 |

\*note: State Farm uses the Xactimate estimating system. The price list used for this comparison is State Farm's price list for the New Orleans pricing territory for the second quarter of 2006. The other prices noted are also based on 2006 data, as reflected in 2007 cost books, and adjusted for New Orleans

5.3   There are a number of reasons why unit costs may vary from one cost estimating book to include the following:

   a.   The data that supports the unit prices may differ.
   b.   The work that is included in a specific work task may vary for the cost books.
   c.   The percentage of profit associated with the unit material costs can be different.
   d.   What is included in the unit labor rate costs may differ.

5.4   My review of the 100 claim files indicates that the Xactimate estimating system that State Farm uses also includes an additional cost item for an Adjustment for Base Service Charges. In the files that I reviewed, this additional repair cost component typically added approximately four percent to the repair cost. My review of the other three estimating cost books referenced above indicates that they do not include this addition to repair costs.

5.5   A meaningful comparison of two estimates prepared utilizing two different estimating systems or cost books can only be made when each of the estimates compares the same components of cost.

**OPINION SIX:.**
The only way one can determine whether a payment was sufficient to cover the cost of a repair is to individually evaluate in detail the specific circumstances of each individual claim. My review of the sample claim files found no indication that claims were underpaid. In fact, in reviewing the sample claim files, I did observe claim files in which State Farm's payment may have been greater than required for the applicable homeowner damage.

6.1   My review of the 100 random homeowner claim files indicates that there were instances in which State Farm was generous to the homeowner in its estimate of the scope of the work. For instance, my review indicates that State Farm in some instances paid for entire roof replacement when the damage appeared from the file to be partial.

6.2   My review of the 100 random homeowner claim files indicates that there were instances in which State Farm paid general contractor overhead and profit when the use of a general contractor would not be feasible.

13

6.3  In addition to the above referenced possible overpayments, my review of the 100 random homeowner claim files indicates that there were also a number of files where additional scope of work was found after the initial State Farm estimate was prepared. State Farm either re-estimated as a basis for the initial payment or made a supplemental payment for the additional repairs required on those claims.

6.4  My review of the activity log notes in the files indicates that there are files where the homeowner has been complimentary to State Farm for State Farm's handling of the home repair claim.

In conclusion, based on my experience and review of the specifics of the 100 randomly selected claim files, I have seen no evidence or basis to support the plaintiffs' allegation that State Farm has underpaid Louisiana homeowners dwelling claims or that supports their assertion that the unit prices used by State Farm and Xactware are lower than actual repair costs.

_____
JAMES J. ADRIAN

1-15-2009
Date

---

[i] I also reviewed an additional 43 claim files over and above the random sample of 100. My observations regarding those additional claims are consistent with my observations regarding the random sample of 100 files.