UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KATHLEEN SCHAFER** | * | **CIVIL ACTION: 06-8262** |
| **Wife of and/or GORDON SCHAFER** | * | |
| | * | **JUDGE: STANWOOD R. DUVAL, JR.** |
| **V.** | * | |
| | * | **SECTION: K** |
| **STATE FARM FIRE & CASUALTY** | * | |
| **COMPANY and XACTWARE, INC.** | * | **MAGISTRATE: 2** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF JAMES ADRIAN

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, who respectfully submit the instant Reply Memorandum in Support of their Motion to Exclude the Testimony of James Adrian.

**I.   THE ADRIAN REPORT IS JUST NOT RELEVANT TO CLASS CERTIFICATION.**

Even the new evidence does not provide any assistance to the Court in determining whether the Rule 23(a) prerequisites or (b)(3) requirements are satisfied.  Mr. Adrian's Opinion No. 1 (Xactimate creates an accurate estimate), Opinion No. 2 (State Farm pays market price when it pays a claim based on a contractor's estimate), Opinion No. 3 (State Farm may have unnecessarily paid overhead and profit in some claims), Opinion No. 4 (none of the insureds complained about the pricing),  Opinion No. 5 (Xactware pricelists are not below market), and Opinion No. 6 (no claims were underpaid) are either merit based inquiries or employ irrelevant methodology.

Every single one of those opinions is rendered meaningless in the class certification stage because it bears on merits and presupposes another "adjustment" of each and every claims file. However, Plaintiffs' theory of class certification centers upon unconditional tenders – the amount already determined to be due by State Farm and of which it was required to pay its insureds within 30 days. See Kodrin v. State Farm Fire & Cas. Co., No. 08-30169, at *15 n.38 (5th Cir. 3/11/09) ("A determination of whether an insurer acted in good faith is based on the information known to the insurer at the time it refused payment.") (citing La. Bag. Co., Inc. v. Audubon Indem. Co., 2008 WL 5146674, at *7 (La. 2008)).

Mr. Adrian's experience and methodology assumes an arms-length negotiation for construction or repairs that will be made. That experience and methodology is inapplicable to the insurer-insured situation where a sophisticated fiduciary has the unilateral right and responsibility to make a tender unconditionally.

Each one of the payments made by State Farm to the putative class members were an unconditional tender. State Farm, as a matter of law and as a matter of its own policy, is not entitled to a "re-adjustment" of its decision of that tender. As such, any testimony by Mr. Adrian that every single claim file needs to be re-opened and re-investigated violates Louisiana law.

Every hurricane case (generally and as to each putative class member) is comprised of two components: scope and price. "Scope" is what is covered damage; "price" is the cost of repairing that covered damage.

This case is not about the "scope" of damage caused by a loss. Plaintiffs do not make a claim (and therefore State Farm does not have a defense) relative to what was damaged by a covered loss

(including overhead and profit). The putative class members agree with State Farm as to what was paid for.

This case is about the second component – price. Plaintiffs claim that they weren't paid the market price for what both Plaintiffs and State Farm have agreed was paid.

Mr. Adrian's conclusions bear upon the following: (1) the misplaced assumption that there will be a re-adjustment of scope of the loss; and (2) the pricelists used by State Farm were reasonable. Mr. Adrian's conclusions bearing upon the scope of loss are irrelevant – plaintiffs are not challenging the scope of the damage. Mr. Adrian's conclusions bearing upon the pricelists are strictly merit based – whether the Xactimate pricelists conform with other pricelists. Either way, Mr. Adrian's opinions will not assist this Court in determining whether the Rule 23(a) or (b)(3) requirements have been satisfied in this case.

This is why State Farm's persistent reliance upon Nguyen v. St. Paul Travelers Ins. Co., 2008 WL 4691685 (E.D. La. 2008) (Vance, J.), is misplaced.[1] The Nguyen plaintiffs sought certification of an overhead and profit claim. To determine whether overhead and profit is available, the court believed it needed to look at the scope of loss of each claim to determine whether overhead and profit was properly paid.

However, in this case, no such "scope of loss" analysis needs to be made. Plaintiffs agree with State Farm as to the "scope of the loss." Plaintiffs are not challenging the issue of "whether something should have been paid." Rather, plaintiffs are challenging the amount of a particular

---

[1] It should also be noted that Mr. Adrian was never deposed before he provided testimony in Nguyen at the class certification hearing and never challenged by motion.

payment. As will be shown at the class certification hearing, each pricelist and each line item can be searched by computer, extrapolated, and re-priced almost instantaneously.

## II. AFTER THE DISCOVERY DEADLINE, AFTER THE DEPOSITION OF MR. ADRIAN, AFTER THE MOTION TO EXCLUDE MR. ADRIAN, STATE FARM, FOR THE FIRST TIME, OFFERS NEW EVIDENCE OF A NEW WITNESS IN THE FORM OF A BRAND NEW AFFIDAVIT.

A brand new expert report. In order to plug the analytical hole of Mr. Adrian's report, State Farm submits the expert report of a former assistant professor of business, Anne Gron, who provides the first ever glimpse in this case of the sampling Mr. Adrian relied upon. See Affidavit of Anne Gron, attached as Exhibit "A". Ms. Gron does not attest that she has personal knowledge as to anything in her affidavit, she never attests that she was personally involved in any of the analysis or the project at all. Rather, she is a "senior consultant" with NERA Economic Consulting, apparently a litigation consultant who was never disclosed to Plaintiffs. Until after the discovery deadline.[2]

Not only is this a very late expert report but it does not contain all of the documents Plaintiffs would have been entitled to under Fed. R. Civ. Proc. 26. For example, she identifies a list of 144,676 claim files. Gron Affidavit, ¶ 6. Presumably, this is a list of Plaintiffs' putative class in this case. State Farm never turned it over. Ms. Gron identifies sample sizes and describes lists of the putative class in her affidavit. Id. ¶¶ 9-11. State Farm has never turned it over.

This is a clear violation of the discovery rules and this Court's scheduling order.

---

[2] Perhaps the Court remembers the telephone status conference in this case where State Farm and Xactware vehemently opposed the extension of any expert deadline for fear Plaintiffs would attempt a "second bite of the apple."

In its Opposition, State Farm magnanimously offers Ms. Gron for a deposition. <u>State Farm Opposition</u>, at 11 n.4 ("State Farm stands ready to present Dr. Gron for a limited deposition in respect to the sampling if Plaintiffs wish to depose her.").

As a result of State Farm's discovery violations, Plaintiffs request the depositions of (1) Ms. Gron; and (2) the State Farm representative who created the claim file list. Plaintiffs respectfully maintain that before these depositions can be held, State Farm be ordered to produce what it would have had to produce under Rule 26 and Plaintiffs' discovery requests had State Farm timely identified Ms. Gron:

1. List of 144,676 claim files in Access database;

2. All documents supporting and/or referenced in the Gron Affidavit;

3. All correspondence between NERA Economic Consulting and State Farm and/or Xactware;

4. All documents transmitted (electronically or otherwise) between NERA Economic Consulting and State Farm and/or Xactware;

5. All documents identifying who created the list of claim numbers;

6. All documents identifying the search criteria used in creating the list of claim numbers;

7. All documents related in any way concerning the methodology employed in creating the list of claim numbers;

8. All documents related to the computer program used to extract the list of claim numbers, including, but not limited to, the database(s) searched, the methodology of the search, the parameters of the search, and the format the data was collected.

To be clear, Plaintiffs do not want the hearing on class certification continued. Plaintiffs do

not want to extend any deadlines. Plaintiffs do not want the opportunity to get rebuttal experts. Plaintiffs can depose the above two people within 10 days (but after receipt of the above documents), leaving plenty of time to digest the testimony, review the new documents, and supplement briefing.

Plaintiffs also note how Ms. Gron's affidavit supports class certification. Her affidavit supports the ascertainability of the class – State Farm is apparently capable of creating a list of 144,676 putative class members by date (between 8/29/05 to 8/11/08). Her affidavit supports the ability to locate and identify claim files in the following way: (1) by claim number; (2) by date; (3) by date of loss; (4) whether the claims are in litigation; (5) city; (6) zip code; (7) total coverage A payment (in dollars); and (8) number of coverage A payments. Gron Affidavit, ¶ 6.

In sum, State Farm can identify our class using its own documents without any help from Plaintiffs.

### III. WE STILL DO NOT KNOW THE UNIVERSE OF CLAIMS.

Apparently, only the State Farm lawyers know the universe of claims. Mr. Adrian did not know. He testified in his deposition that the files were given to him by State Farm lawyers. Ms. Gron does not know. She states in her affidavit that "[t]he population of claim numbers is based on a list of claim numbers provided to us by counsel in an Access database." Gron Affidavit, ¶ 6. She was not involved in the collection of these claim numbers. Yet, she nonetheless somehow developed an "understanding":

> We understand this list to represent homeowners' insurance claims on which State Farm made coverage A claim payments on the state of Louisiana with a date of loss from August 29, 2005 through

>August 11, 2008, excluding claims in litigation with State Farm at the time the list was compiled. The list contained 144,676 claim numbers and, for each claim number, provided information on four additional items: date of loss, city, zip code, total coverage A payment (in dollars), and number of coverage A payments.

Gron Affidavit, ¶ 6.

Besides the fact that she never states whether she herself was personally involved in any of the work identified in the Affidavit (she always refers to "we" – never to herself individually), Ms. Gron never identifies what she bases this "understanding" upon. Was it a conversation with State Farm counsel? Was it in correspondence between Ms. Gron and State Farm? Was it correspondence between someone else at her company and a representative of State Farm?

These unanswered questions all bear upon whether her understanding (and sampling methodology) is "reliable" for Daubert purposes. Otherwise, the entirety of Mr. Adrian's report and Ms. Gron's Affidavit is meaningless. Mr. Adrian's sweeping conclusions and Ms. Gron's random analysis are worthless if the universe of claims is not reliable. And, the "reliability" of the universe cannot be challenged (fairly and adequately) by Plaintiffs based upon a single paragraph of a new witness who does not even identify the person(s) involved in determining the universe.

Mr. Adrian testified as to being provided a "blind sample" by State Farm and now Ms. Gron was provided a "blind universe." Neither one really knows what their results are based upon. Only State Farm knows how the universe was created.

WHEREFORE, Plaintiffs respectfully move that Mr. Adrian's testimony be stricken from consideration in Plaintiffs' Motion for Class certification.

This 13th day of March, 2009.

Respectfully Submitted,

      /s/ Soren Gisleson
**STEPHEN J. HERMAN**, La. Bar No. 23129
**SOREN E. GISLESON**, La. Bar No. 26302
**HERMAN, HERMAN, KATZ & COTLAR, LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 561-6024
E-Mail: sherman@hhkc.com


**T. CAREY WICKER, III**, La. Bar No. 13450
**J. ALEX WATKINS,** La. Bar No. 29472
**CAPITELLI & WICKER**
1100 Poydras Street
2950 Energy Centre
New Orleans, Louisiana  70163-2950
Telephone:  (504) 582-2425
Fax No. (504) 582-2422
E-Mail: JAW@Capitelliandwicker.com

**COUNSEL FOR PLAINTIFFS.**


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Motion will be filed electronically with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system thereby serving notice on all counsel this 13th day of March, 2009.


      /s/  Soren Gisleson