UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN AND GORDON SCHAFER, | * | CIVIL ACTION |
| | * | |
| Plaintiffs, | * | NO. 06-8262 |
| | * | |
| VERSUS | * | SECTION "K"(5) |
| | * | |
| STATE FARM FIRE AND CASUALTY COMPANY AND XACTWARE SOLUTIONS, INC., | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE CHASEZ |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE THE TESTIMONY OF DR. JAMES ADRIAN**

Defendant State Farm Fire and Casualty Company respectfully submits this Sur-Reply in further opposition to Plaintiffs' Motion to Exclude the Testimony of Dr. James Adrian ("Plaintiffs' Motion to Exclude").

## INTRODUCTION

Plaintiffs plainly want Dr. Adrian's opinions excluded from consideration at the upcoming class certification hearing because those opinions are devastating to their bid for class certification. They so much want his views excluded that with their Reply in support of their Motion to Exclude, Plaintiffs shifted tactics and arguments. This Sur-Reply is prompted by that stark change in tactics. Plaintiffs originally argued that Dr. Adrian's opinions and testimony should be excluded primarily because they supposedly are unreliable, and secondarily because

they allegedly are merits-based views. *See* Docket No. 158-2. State Farm established by its Response that neither argument has any merit. *See* Docket No. 168-1. So, Plaintiffs now try another tack, using their Reply to play their overly-simplistic and invalid class certification themes and to seek discovery to back-fill their inadequate factual record. *See* Docket No. 180-3. These ploys should be rejected, and their Motion to Exclude should be denied.

## ARGUMENT

**I.    The Clear Showing that Dr. Adrian's Opinions Are Properly Supported Does Not Justify the Further Discovery Plaintiffs Now Seek by Their Reply.**

Plaintiffs' original attack on Dr. Adrian focused almost exclusively on his supposed reliance on "fundamentally flawed data." *See* Docket No. 158-2 at 2-6. Plaintiffs insisted that no reliance could be placed on conclusions Dr. Adrian drew from his review of a sampling of claim files because there supposedly was insufficient information in the record regarding the manner in which the sample had been drawn. *Id*.

State Farm has already shown that Plaintiffs' argument regarding the claim file sampling is a red herring. *See* Docket No. 168-1. Dr. Adrian's conclusions based on his review of the claim file sampling would be pertinent here even if the claim files were viewed purely as anecdotal evidence. Moreover, Plaintiffs did not fairly characterize Dr. Adrian's testimony regarding the claim file sampling. Dr. Adrian *did* understand generally how the sample had been drawn, and he testified that he relied on an economic firm to draw the sample. *See* Docket No. 168-1 at Ex. 4 (filed under seal), pp. 79-82. It is perfectly permissible – and even customary – for an expert like Dr. Adrian to rely on the work product of others in performing tasks such as the drawing of a sample, as State Farm has shown. *See* Docket No. 168-1 at 6-7.

Despite all of this, and to address Plaintiffs' contentions regarding the sample, State Farm included in its Response a detailed, factual affidavit of its consultant expert, Anne Gron,

explaining the stratified random sampling methodology that was used in drawing the sample. *See* Docket No. 168-5, Gron Aff. By its Response, State Farm also affirmatively offered to make Ms. Gron available for deposition if Plaintiffs wished to question her. *See* Docket No. 168-1 at 11. At no point before they filed their Reply did Plaintiffs express any interest in deposing Ms. Gron, although she would have been available for deposition before then.

State Farm's Response provided Plaintiffs with *exactly* the information that Plaintiffs mistakenly claimed was missing from State Farm's original showing in "support" of Dr. Adrian's opinions and testimony. In response, Plaintiffs have now turned, complaining that Ms. Gron's Affidavit is a late-filed "expert report" and that State Farm previously should have "disclosed" Ms. Gron as a testifying expert. *See* Docket No. 180-3 at 4-6. They then attempt to use those arguments as a springboard for further discovery. *Id*. This approach has no more merit than their original attack and it should be rejected out of hand.

To begin with, State Farm fully complied with this Court's deadline for disclosing its experts on class certification. Pursuant to the Case Management Order, State Farm identified Dr. Adrian and construction experts Robert Foley and Michael Berryman and produced their reports and CVs in a timely manner. Further, State Farm timely produced the 100 claim files that had been identified through the stratified random sampling methodology and all the additional claim files that Dr. Adrian reviewed. State Farm was not obligated to provide anything more than that.

Moreover, as Plaintiffs acknowledge, State Farm has *already offered* to make Ms. Gron available for her deposition. *See* Docket No. 18-3 at 5. Rather than promptly proceeding with that limited discovery – which is of questionable necessity in any event – Plaintiffs instead have demanded the *additional* deposition of a State Farm witness and the production of every document relating to the manner in which the claim file sampling was drawn, including every

3

document relating to the computer programs used to identify State Farm's Louisiana homeowners insurance claims. *See id*. Plaintiffs' new discovery demands are out of time under the Court's Scheduling Order, are improper under the Federal Rules (as they have not been propounded by proper request upon a party, but rather by a back-door request to the Court in a reply legal argument), and are wholly inappropriate in scope. What matters for purposes of the class certification hearing is for the Court to have a sufficient basis to conclude that Dr. Adrian's Report and Opinions are based on a reliable methodology. *See In re Katrina Canal Breaches Consol. Litig.*, 2007 WL 3245438 at *12 (E.D. La. Nov. 1, 2007). To the extent that the claim file sampling is implicated in that inquiry, Ms. Gron's Affidavit fully provides that evidentiary basis, and State Farm has already offered to produce Ms. Gron for a deposition in Chicago (where she lives and works), if Plaintiffs truly wish to cross-examine her regarding that methodology. No more is necessary or proper here.

Finally, Plaintiffs' indignant accusation that State Farm has somehow wrongfully refused to produce a list of class members to Plaintiffs is yet another red herring. Docket 180-3 at p. 6. Not only is this accusation wholly irrelevant to the admission or exclusion of Dr. Adrian's testimony, it is unfounded in two respects. First, it is patently clear that the list of 144,676 claim files from which the sample was pulled is *not* a list of putative class members. As Ms. Gron's Affidavit explains, that list included *all* Louisiana homeowners claims in which State Farm had made a dwelling damage payment – *including* claims where more than a single check had been issued for dwelling damage. *See* Docket No. 168-5, Gron Aff. at ¶¶ 6-7. Indeed, that clearly is highlighted by the fact that in the stratified random sample drawn, three strata are sets of individuals who received *more than one* claim payment. *Id.* Even setting aside all of the twists, permutations and ever-evolving exclusions of Plaintiffs' proposed class definition (*see* Docket

No. 156 at 1-3), it should have been clear to Plaintiffs that the list of 144,676 claim numbers did *not* identify members of their proposed class.

Moreover, State Farm did not "turn over" the list of 144,676 claim numbers because Plaintiffs never asked State Farm to produce a list of all Louisiana claims in which it had made dwelling payments. And to the extent Plaintiffs complain that a list of proposed class members was owed to them, not only is such discovery premature prior to actual certification of a class,[1] State Farm timely objected to that request on numerous grounds when Plaintiffs made it and Plaintiffs never challenged those objections.[2]

In sum, there is no basis for the Court to strike Dr. Adrian's Report or further testimony based on *Daubert*–related concerns. Plaintiffs cannot contest that a claim file sampling is a reliable methodology. Plaintiffs can point to no error in Dr. Adrian's analysis and summary of the files he reviewed. Plaintiffs cannot contest that stratified random sampling is a recognized methodology for drawing a sample for analysis. And Plaintiffs have not identified a single flaw in the steps that were employed to draw the sample that Dr. Adrian reviewed. The sampling was not drawn from a "blind universe," it was drawn from a clearly identified subset of State Farm's Louisiana homeowners insurance claim files. *See* Docket No. 186-5, Gron Aff. at ¶ 6. This

---

[1] *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-54 (1970) (a proposed class plaintiff generally has no need to compile a list of proposed class members or to contact those individuals *before* a class is certified, and listings of class members instead are usually only necessary if a class is certified and notice must be sent).

[2] Among other things, State Farm objected that potential class members could not be identified by State Farm without individualized review of each insured's claim (which would impose an undue burden on State Farm), that Plaintiffs' criterion for class membership were vague and ambiguous, that a demand for the names and addresses of class members was premature in any event, and that State Farm was obligated under State and Federal privacy laws to protect the private and personal information of its insureds from unwarranted disclosure.

showing is more than sufficient at the class certification phase. *See In re Katrina Canal Breaches Consol. Litig.*, 2007 WL 3245438 at *12.

## II.   Dr. Adrian's Opinions and Testimony Are Pertinent for Class Certification.

Plaintiffs alternatively assert that Dr. Adrian's testimony and opinions supposedly are "irrelevant" to the issue of class certification. Contrary to Plaintiffs' arguments, Dr. Adrian's views are directly relevant to that issue and indeed are devastating to Plaintiffs' class certification arguments. After all, Dr. Adrian has opined that, among other things:

- There is *no such thing* as a single, true market price for any given repair, and rather, a range of reasonable prices exists in the marketplace for each job at a particular time and place.

- No two contractors will estimate the same price for any repair job because each will approach the job in his or her own way and make individualized decisions as to how best to perform the repair.

- State Farm's pricing in particular estimates cannot be easily compared to prices suggested in other pricing guides, because those differing industry sources build different assumptions into their pricing and have greatly different detail and work item definitions.

- Based on his review of a sampling of State Farm homeowners claim files, State Farm's estimated prices sometimes were higher than actual contractor costs, and sometimes were lower, which contradicts Plaintiffs' contention that *all* of State Farm's unit pricing was "below market" at all times.

- The *only* way to determine whether payment issued on the basis of an estimate was sufficient to cover the cost of the identified repairs "is to individually evaluate in detail the specific circumstances of each individual claim."

*See* 168-2 (Adrian Report).

Nevertheless, according to Plaintiffs, Dr. Adrian's opinions and testimony relate to "merits" issues. *See* Docket No. 158-2 at 7-8; No. 180-3 at 2-4. In addition, Plaintiffs contend that under their "theory of class certification," there will be no need for individualized inquiry as to each class member's claim because State Farm's initial payment to an insured supposedly is an "unconditional tender." According to Plaintiffs, once such a tender is made, an insurer is

estopped under Louisiana law from showing that the amount tendered was sufficient to pay the reasonable cost for the insured's necessary repairs. *Id.* That theory is insupportable.

Treating an insurer's initial payment as an absolute and irrevocable admission estopping the insurer from defending itself against an insured's claim for further insurance benefits would contravene both Louisiana law and common sense. It is well-settled under Louisiana law that the only "qualitative effect" of an unconditional tender is to protect the insurer from exposure to penalties and attorney's fees pursuant to La. R.S. 22:658.[3] *See Haydel v. State Farm Ins. Co.*, 935 So.2d 171, 174 (La. Ct. App. 2006) (quoting *Clark v. State Farm Mut. Auto. Ins.*, 785 So.2d 779, 792 (La. 2001)). A tender clearly does *not* constitute a waiver of any defenses the insurer may have against a particular underpayment claim. *Haydel*, 935 So. 2d at 175 (treating an unconditional tender as an automatic waiver of an insurer's defenses "would significantly discourage pre-suit payments and effectively block the desired legislative goal").

Plaintiffs further are incorrect in arguing that State Farm has no right under its own policy language to present evidence that its *total* payment to an insured was sufficient to cover reasonable expenses for necessary repairs. For example, the Schafers' policy promised that State Farm would pay "the reasonable and necessary cost to repair or replace the damaged buildings for equivalent use . . . with commonly used materials that are readily available in the areas where the building is localed" in the event of a covered loss. As recently explained in *Nguyen v. St. Paul Travelers Ins. Co.*, this policy language does *not* promise perfect line-item-by-line-item pricing in estimates, it promises a *total* reasonably necessary payment:

> State Farm's insurance policy does not provide that it will pay to every insured the market rate for each item in need of repair. The contract provides that State Farm will pay the insured the total amount that is reasonably necessary to repair

---

[3] Former La. R.S. 22:658 was redesignated by Acts 2008, No. 415, §1, effective January 1, 2009. It is now codified as La. R.S. 22:1892.

> or replace the property. Therefore, for each class member, **the issue is whether the total amount paid, not just a discrete, uniformly applicable component of that payment, was sufficient to satisfy State Farm's contractual obligation.**

*See*, *e.g.*, *Nguyen v. St. Paul Travelers Ins. Co.*, 2008 WL 4691685 at *5 (E.D. La. 2008) (emphasis original). As Judge Vance properly concluded in *Nguyen*, determining whether State Farm honored its obligation to pay the reasonable cost for necessary repairs to any particular class member would require individualized inquiry into a host of individual issues, including "the specific damage to the insured's property, the nature of the repairs and materials required to repair or replace that damage, [and] whether the insured was reasonably likely to require the services of a general contractor." *Id.* at *8.

Plaintiffs' argument fails yet again when they attempt to distinguish their claims from those at issue in *Nguyen*. Like the Schafers, the plaintiffs in *Nguyen*, sought to avoid State Farm's policy language (defining its obligation in terms of the total reasonable and necessary cost to repair or replace covered dwelling damage) by alleging underpricing in a line item of cost (general contractor overhead and profit) and asking the court to ignore the adequacy of the total amount paid. And like the Schafers, the Plaintiffs in *Nguyen* alleged that scope was irrelevant to their claims because they would stipulate to the scope of damage shown in State Farm's estimates. However, those machinations were soundly rejected by Judge Vance, who held that even under the *Nguyen* plaintiff's theory of recovery, State Farm at trial "would be *entitled* to demonstrate that its overall payment was reasonable" as to each class member for several reasons, including that a general contractor's services may not actually have been necessary *or that "the Xactimate pricing data State Farm used for unit repair costs included in the estimate was above market rate or because contractors would do the work for the amount"* that State Farm had paid. *Id.* at *5 (emphasis added).

8

Finally, there likewise is no basis in the record or in law for Plaintiffs' assertion that Dr. Adrian's experience and methodology are somehow inapplicable to "insurer-insured situation[s] where a sophisticated fiduciary has the unilateral right and responsibility to make a tender unconditionally." Plaintiffs have no basis to characterize State Farm as a "fiduciary" here – their proposed class claims arise out of an alleged breach of contract and alleged statutory "bad faith" under La. Rev. Stat. 22:1220 and 22:658. The Louisiana Supreme Court has made clear that Louisiana's bad faith statutes must be strictly construed because they are punitive in nature. *Theriot v. Midland Risk Ins. Co.*, 694 So. 2d 184, 188-89 (La. 1997). Accordingly, no claim for unfair claim handling practices may lie unless it falls within one of the specific wrongs enumerated in the statute. *Id.*; *see also Aguilar v. Allstate Fire & Cas. Ins. Co.*, No. 06-4660, 2007 WL 734809 at *4 (E.D. La. March 6, 2007). There is *no* authority that an insurer's alleged use of insufficient prices when estimating an insured's dwelling repair costs constitutes statutory bad faith; rather, there is authority holding directly to the contrary. *See Aguilar*, 2007 WL 734809 at *4 (a claim that an insurer used below-market pricing in preparing a dwelling repair estimate does *not* fit any of the statutory causes of action, and accordingly fails as a matter of law).

## **CONCLUSION**

Wherefore, for all of the foregoing reasons and those set forth in State Farm's original Memorandum opposing Plaintiffs' Motion to Exclude the Testimony of Dr. James Adrian, Plaintiffs' motion should be denied.

Respectfully submitted,

*/s/ J. Dalton Courson*
Wayne J. Lee, 7916, T.A.
Mary L. Dumestre, 18873
Michael Q. Walshe, Jr., 23968
J. Dalton Courson, 28542
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Fax:  (504) 581-3361
Email:    wlee@stonepigman.com
          mdumestre@stonepigman.com
          mwalshe@stonepigman.com
          dcourson@stonepigman.com

and

Joseph A. Cancila, Jr. (admitted pro hac vice)
Heidi Dalenberg (admitted pro hac vice)
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606-6473
Telephone: (312) 258-5500
Fax:  (312) 258-5600
Email:    jcancila@schiffhardin.com
          hdalenberg@schiffhardin.com

969585v.1

## **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Sur-Reply in Further Opposition to Plaintiffs' Motion to Exclude the Testimony of Dr. James Adrian has been served upon all counsel of record by the CM/ECF electronic filing system, this 17th day of March, 2009.

*/s/ J. Dalton Courson*

CH2\7148626.2

969585v.1