## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

KATHLEEN & GORDON SCHAFER                                          CIVIL ACTION

VERSUS                                                                    NO. 06-8262

STATE FARM & FIRE CASUALTY COMPANY, ET AL.              SECTION "K"(5)

### ORDER AND REASONS

Before the Court is a Motion to Exclude Expert Testimony by Plaintiffs Kathleen and

Gordon Schafer (Rec. Doc. 158) ("Mot."). Defendant State Farm Fire & Casualty Company

("State Farm") has filed an opposition (Rec. Doc. 168) ("Opp."), Plaintiffs have filed a reply

(Rec. Doc. 184) ("Reply"), and State Farm filed a sur-reply (Rec. Doc. 210) ("Sur-reply").

Having reviewed the pleadings and relevant law, this Court will grant the motion in part and

deny it in part.

## I. BACKGROUND

Plaintiffs are the class representatives for a putative class action representing insured

customers of State Farm who filed claims with the company for damage sustained during and

after Hurricanes Katrina and Rita. They allege that State Farm improperly used a flawed

methodology in adjusting damage to Plaintiffs' property, and they assert that Xactware

Solutions, Inc., another defendant, produced the inaccurate pricing lists used by State Farm to

adjust claims. Plaintiffs assert that these lists resulted in State Farm undervaluing the cost to

repair damage. In the present motion, Plaintiffs seek to exclude the testimony of James J.

1

Adrian, Ph. D.  Dr. Adrian is proffered as an expert in construction estimating, whose opinion generally concerns the procedures in construction estimating and the reasonableness of the estimates given to State Farm customers after Hurricanes Katrina and Rita.


## II.  ANALYSIS

### A.  Standard

The standard by which this Court is to determine the admissibility of Dr. Adrian's opinion is a main issue of dispute.  Plaintiffs advocate using the *Daubert* standard to scrutinize the reliability of Dr. Adrian's methodology.  State Farm replies that a "full blown" *Daubert* hearing is unnecessary and improper in the class certification context.

The general standards of expert testimony are well-established.  Under the Federal Rules of Evidence:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Rule 703 permits the facts or data relied upon by the expert to be admissible if those facts are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."  Fed. R. Evid. 703.  The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) set forth a non-exhaustive list of factors for a trial judge to consider in evaluating the foundation of an expert's opinion.  "*Daubert* suggested that the trial judge consider:  whether the theory or

technique the expert employs is generally accepted; whether the theory has been subjected to peer review and publication; whether the theory can and has been tested; whether the known or potential rate of error is acceptable; and whether there are standards controlling the technique's operation." *Knight v Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (citing *Daubert*, 509 U.S. at 593, 113 S.Ct. 2786). In extending *Daubert*'s guidelines to non-scientific opinions, the Supreme Court in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) explained, "The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable."

In light of this flexibility in evaluating expert testimony, courts have advocated for a more limited *Daubert* standard for class certification that is more appropriate to that stage of litigation. *See Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1179 (9th Cir. 2009) ("At the class certification stage, it is enough that [the expert] "presented properly-analyzed, scientifically reliable evidence tending to show that a common question of fact . . . exists with respect to all members of the class"); *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 670 n.7 (D. Kan. 2008) ("Where the parties proffer expert testimony on the class certification issue, the Court may need to conduct a limited inquiry under *Daubert* [] to determine whether to utilize the expert testimony."); *Natchitoches Parish Hosp. Service Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 270 (D. Mass. 2008) ("To determine predominance, a court need not plunge into the weeds of an expert dispute about potential technical flaws in an expert methodology. . . . The important question in a class certification context is whether after a sneak preview of the issues, the expert

approach appears fundamentally flawed-an issue usually vetted more fully at a *Daubert* hearing based on a more detailed record.") (citations and internal quotation marks omitted); Joseph M. McLaughlin, 1 McLaughlin on Class Actions § 3:13 (5th ed. 2009) ("Most courts have discharged their gatekeeper function at the class certification stage by conducting a modified *Daubert* analysis of proffered expert evidence.").  As explained by the Second Circuit, in the context of reviewing the admissibility of expert opinion evidence for class certification, "The district court correctly noted that its function at the class certification stage was not to determine whether plaintiffs had stated a cause of action or whether they would prevail on the merits, but rather whether they had shown, based on methodology that was not fatally flawed, that the requirements of Rule 23 were met." *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 135 (2d Cir. 2001).  While "[t]he admissibility of expert testimony is governed by the same rules, whether at trial or summary judgment," *First United Fin. Corp. v. U.S. Fidelity & Guar. Co.*, 96 F.3d 135, 136-37 (5th Cir. 1996) (per curiam), a less stringent *Daubert* analysis is appropriate at the class certification stage where the court is not addressing the merits, but instead is only analyzing the propriety of class treatment for Plaintiffs' claims.  Indeed, as explained by the Fifth Circuit:

> The analysis under Rule 23 must focus on the requirements of the rule, and if findings made in connection with those requirements overlap findings that will have to be made on the merits, such overlap is only coincidental. The findings made for resolving a class action certification motion serve the court *only* in its determination of whether the requirements of Rule 23 have been demonstrated.

*Bell v. Ascendant Solutions, Inc.*, 422 F.3d 307, 312 (5th Cir. 2005).  This Court performed a thorough analysis of the standard for evaluating expert evidence at class certification in *In re Katrina Canal Breaches Consolidated Litigation*, Civ. A. No. 05-4182, 2007 WL 325438, at *12

(E.D. La. Nov. 1, 2007) (Duval, J.), concluding that the review of an expert's proffered evidence at class certification should be "vigorous but limited to the opinion's reliability and relevance to the requirements of class certification under Rule 23," and accordingly concluded that its *Daubert* examination would be focused during class certification:

> [to] ensure that [these expert opinions] contain no flaws that would render [either] inadmissible as a matter of law: the methodology must show some hallmarks of reliability whether through peer review or use of generally-accepted standards or methods; the expert must be qualified; and the opinion must have probative value for the issues of class certification.

*Id.* at *12 (citing *Turner v. Murphy Oil USA, Inc.*, 2006 WL 91364, at *4 (E.D. La. Jan 12, 2006) (Fallon, J.)). This Court finds this standard to be the appropriate one for evaluating the admissibility of expert testimony for class certification purposes, and accordingly it will be the standard applied here.

### B. Application

Applying a limited *Daubert* analysis contoured specifically for class certification, this Court must determine whether Dr. Adrian is qualified as an expert, whether his methodology is adequately reliable, and whether his opinions are relevant to class certification. The burden of proving admissibility is on the proponent of the expert testimony. *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (*Daubert* burden is on "party seeking to have the district court admit expert testimony"). This Court is mindful that in performing its "gatekeeper" function, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786.

First, Dr. Adrian appears to have the requisite experience and credentials to offer an opinion on construction estimating. He has a Ph. D. in civil engineering, and he is a Certified Public Accountant and a Registered Professional Engineer. He has focused professionally on construction administration for the past 35 years. He is a tenured professor in construction estimating, and has published a textbook on the topic. He has also prepared training material for the American Institute of Certified Public Accountants to aid its members in appraising the accuracy of construction estimates when they prepare construction firm audited financial statements. Report of Dr. James Adrian at 3, Mot., Ex. A ("Report"). Plaintiffs reply that Dr. Adrian has never been a state licensed or certified contractor, and he has never worked on pricing a construction job in post-Katrina Louisiana. Opp. at 7. However, this Court does not envision how this case requires an expert with Louisiana-specific experience. There is no reason to assume that construction estimators in this state use different methods than those used throughout the rest of the nation. Accordingly, Dr. Adrian has the qualifications to testify as an expert in construction estimating.

The Court also must determine which proffered opinions are relevant to class certification. Relevant issues in to class certification include the numerosity of the claims, the commonality of factual or legal issues among class members, the typicality of the class representatives' claims, and the adequacy of the class representatives. Fed. R. Civ. P. 23(a). Additionally, expert opinions may be relevant if they address the predominance of common or individual issues, or the superiority of the class action over other forms of litigation. Fed. R. Civ. P. 23(b)(3). By this Court's assessment, Dr. Adrian reaches the following conclusions through his review of the claim files: (1) on occasion, the contractor estimate for work was

higher than a State Farm estimate for similar work, and on occasion, the State Farm cost estimate

and the contractor cost estimate were substantially the same; (2) the estimating process utilized

by State Farm to estimate the repair costs for each homeowner's damage enhances the accuracy

of those estimates; (3) construction contractor estimates or invoices were often used by State

Farm in paying homeowner repair costs, and therefore frequently State Farm paid market rates;

(4) there were a number of claims in which State Farm included a payment on the estimate for

general contractor overhead and profit even where it was clear that no such general contractor

would be necessary or feasible; (5) the activity logs in the claim files reveal that there was

substantial negotiation between State Farm and homeowners and no claims resulted in a

disagreement between the homeowner and State Farm; (6) Xactware provides pricing

"consistently competitive with or greater than that used in other industry sources"; (7)

comparisons among repair cost vendors is "complex, difficult, and sometimes not possible

because those industry sources build different assumptions into their pricing and have greatly

different detail and work item definitions"; (8) "[t]he only way one can determine whether a

payment was sufficient to cover the cost of a repair is to individually evaluate in detail the

specific circumstances of each individual claim"; (9) no claims were underpaid, and in some

claim files, State Farm's payment may have been greater than required for the applicable

homeowner damage.  Report at 4-13.

As a preliminary issue, many of these proffered opinions are actually in the nature of

factual conclusions, not opinions.  The similarity of estimates by contractors and State Farm is a

fact, not opinion.  The opinion that construction contractor estimates or invoices were often used

by State Farm in paying homeowner repair costs is a fact, not opinion.  Dr. Adrian's conclusion

that there were a number of claims in which State Farm included payments for contractor overhead and profit where no general contractor work was feasible is a fact, not opinion.  The fact that the activity logs show that there was substantial negotiation between State Farm and homeowners with no claims resulting disagreement between the homeowner and State Farm is a fact, not an opinion.  His finding that Xactware provides pricing that is competitive with or greater than other industry sources is a factual conclusion, not an opinion.  Dr. Adrian certainly may testify regarding these facts from his review of the claim files, but this Court makes this distinction to clarify that these conclusions will not be given the imprimatur of an expert opinion.

A significant number of Dr. Adrian's opinions are also irrelevant to class certification.  These opinions go to the merits of the case, such as whether State Farm and Xactware undercut their estimates of damages when adjusting homeowners' claims.  Dr. Adrian's opinion that State Farm's estimate and the contractor estimates were frequently the same is entirely irrelevant to the class certification process.  Likewise, his opinion that there was frequent negotiation between State Farm and homeowners and that no claims resulted in a disagreement between the homeowner and State Farm only bear upon whether State Farm underestimated Plaintiffs' damages.[1]  Dr. Adrian's conclusion that Xactware's pricing lists were consistently competitive with competitors is certainly relevant to the merits of the case, but has no bearing on class certification.  These opinions will be stricken in their entirety for the purposes of class

---

[1]Indeed, this Court questions whether this opinion has any relevance to the merits considering that State Farm would have an information advantage over a homeowner in any negotiation, making evidence of homeowner satisfaction at the time of payment irrelevant.  Moreover, this Court takes judicial notice that numerous homeowners have filed lawsuits in this district against State Farm, thus refuting the conclusion that no homeowner has ever disputed State Farm's estimation of damages.

certification.

Plaintiffs assert that more of these opinions bear upon the merits, and thus are irrelevant. Indeed, two of the remaining opinions do concern the merits, but they also bear upon class certification. Dr. Adrian's testimony that construction contractor estimates or invoices were often used by State Farm in paying homeowner repair costs, and therefore frequently State Farm paid market rates, is a conclusion that concerns the merits. However, the fact that State Farm occasionally used contractor estimates or invoices instead of Xactware's pricing lists may bear upon the predominance of individual issues over issues common to the class. Similarly, Dr. Adrian's conclusion that State Farm included a payment for general contractor overhead and profit where no such general contractor would be necessary or feasible may concern predominance insofar as it suggests complications in determining damages on a class-wide basis. The Court will consider these conclusions only insofar as they concern class certification issues.

Finally, this Court must strike any expert testimony that is not based upon a reliable methodology. Applying the standard described in Part A, *supra*, this Court finds that Dr. Adrian's methodology to be sufficiently reliable. Dr. Adrian performed a personal case review of a sample of 100 claim files. The sample was selected by NERA Economic Consulting, and it was described via affidavit of Ann Gron, Ph. D. of that firm. Affidavit of Ann Gron ¶ 1, Opp., Ex. 3 ("Gron Aff."). This sample was drawn from a total set of 144,676 claims filed by State Farm clients within Louisiana with a date of loss from August 29, 2005 through August 11, 2008, excluding those claims that were already in litigation with State Farm. Gron Aff. ¶ 6. NERA then used "stratified random sampling" to first separate the types of claims into "strata" of similar types of claims, and then to randomly select individual samples from each strata.

Gron Aff. ¶ 7.  The strata included "1) Katrina claim numbers with a single payment, 2) Katrina claim numbers with multiple payments, 3) Rita claim numbers with a single payment, 4) Rita claim numbers with multiple payments, 5) all other claim numbers with a single payment, 6) all other claim numbers with multiple payments."  Gron Aff. ¶ 7.  From each strata, NERA took a sample of claims of proportionate size to reach a total of 317 claims, 100 of which were reviewed by Dr. Adrian.  Stratified random sampling is an approved sampling technique, particularly in light of the size of the potential class of claims in this case, and there appears no serious challenge to its use here.  *See Michigan Dep't of Educ. v. U.S. Dep't of Educ.*, 875 F.2d 1196, 1205 (6th Cir. 1989) (approving use of random stratified sampling as "reliable and acceptable evidence in determining adjudicative facts," particularly where "audit of thousands of cases comprising the universe of cases would be impossible").  Dr. Adrian need not have known who selected the sample or how it was done.  This Court is satisfied at this time that a significant portion of the sample was drawn randomly from claims of the proposed class.[2]  The Court will permit cross-examination of Dr. Gron should it be deemed necessary to evaluate the identity of the claims (*i.e.*, whether they indeed are Katrina or Rita claims) and the randomness of the sample.  Likewise, while this Court deems 100 claims an adequate sample from which to draw an opinion for class certification, Plaintiffs shall have the ability to cross-examine Dr. Adrian on the adequacy of that sample.  The Court notes, however, that claims involving multiple payments

---

[2]This Court is skeptical as to whether the sample must be drawn randomly in this case because the present motion seeks to exclude the *defense*'s expert.  Plaintiffs would likely need a random sample in order to establish the predominance of claims within the class.  However, if State Farm seeks to establish the lack of predominance, it would appear that their expert could take any sample of claims because they need only show that there are unique factors among members of the class.  The size and randomness of the sample would lend the expert opinion further credibility, but would not necessarily impact admissibility.

from State Farm, strata 2, 4, and 6, are beyond the scope of the proposed class.[3]  Any opinion derived from these strata of claims will be disregarded by this Court unless some relevance is presented during class certification.

The individualized analysis of claims within the class by an expert in construction estimating was used in a prior case, *Nguyen (Melancon) v. St. Paul Travelers Ins. Co.*, Civ. A. No. 06-4130, Civ. A. No. 06-5230, 2008 WL 4691685, at *1 (E.D. La. Oct. 22, 2008) (Vance, J.).  In that case, Melancon, a putative class plaintiff, sued State Farm for damage caused during Hurricanes Katrina and/or Rita.  The plaintiff specifically alleged that after those hurricanes, State Farm paid to insureds 20% general contractor's overhead and profit ("GCO & P") as part of the up-front adjustment of claims.  The plaintiff claimed, however, that in post-Katrina and Rita Louisiana GCO & P rose dramatically, resulting in 20% being an unreasonable and arbitrary figure.  Judge Vance, however, denied the plaintiff's motion for class certification.  In doing so, she relied upon the same expert, Dr. Adrian, who had "reviewed 412 claim files" in reaching his conclusion that many claims had unique issues that would require individualized review to ascertain damage.  *Id.* at *5.  This Court finds that individual review of claims is a reliable

---

[3]The class, as proposed by Plaintiffs, is:

> All Louisiana residents who were named insureds with State Farm and who received a one-time unconditional payment for the actual cash or other value of damage to property located in the State of Louisiana, under the terms of homeowner's policies with State Farm, utilizing any Xactware or Xactimate pricing, from August 29, 2005 thru [sic] [the date of certification].

Third Amended Complaint ¶ II (Rec. Doc. 78).  Although this Court generally refers to the proposed class as including only those filing claims for damage caused by Hurricanes Katrina and/or Rita, it appears the class can include non-hurricane claims as long as they were filed in the proposed time period.  Accordingly, claims from strata 5, which are not Katrina or Rita claims, will not be stricken at this time.

methodology for determining the characteristics involved in each claim, and therefore will admit Dr. Adrian's opinion insofar as it is not otherwise excluded on other bases.

Lastly, the Plaintiffs dispute that they should be given a extensive discovery regarding the data underlying Dr. Adrian's opinion, as well as the opportunity to depose Dr. Gron and the process by which the sample was drawn. Reply at 5. Plaintiffs, however, have had ample time to request discovery via the proper Rule 26 motion. They did seek discovery through a motion before the magistrate judge (Rec. Doc. 135), but after that motion's denial (Rec. Doc. 155) they never sought review by this Court.[4] State Farm has made Dr. Gron available for deposition; Plaintiffs may depose her and utilize such deposition during the class certification hearing.

---

[4]Plaintiffs did make mention of the sampling process and the claim files reviewed by Dr. Adrian in footnote 25 of its motion before the magistrate judge seeking production of State Farm's electronic data. (Rec. Doc. 135). However, a footnote in a brief does not constitute a Rule 26 motion.

## III.  CONCLUSION

For the foregoing reasons, accordingly,

**IT IS ORDERED** that the Plaintiffs' Motion to Exclude Expert Testimony (Rec. Doc. 158) is **GRANTED IN PART AND DENIED IN PART.**  It is granted insofar as the Court will not consider those portions of Dr. Adrian's report that are not relevant to class certification, and it will not consider any opinion derived from sample claims that are not within the definition of the proposed class unless some relevance is presented during the class certification hearing.  In all other respects, the motion is denied.

New Orleans, Louisiana, this \_\_\_\_25th\_\_\_ day of March, 2009.

_____
        **STANWOOD R. DUVAL, JR.**
     **UNITED STATES DISTRICT JUDGE**

13