

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN AND GORDON SCHAFER, | * | CIVIL ACTION |
| | * | |
| Plaintiffs, | * | NO. 06-8262 |
| | * | |
| VERSUS | * | SECTION "K"(5) |
| | * | |
| STATE FARM FIRE AND CASUALTY COMPANY AND XACTWARE SOLUTIONS, INC., | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE CHASEZ |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### STATE FARM'S MEMORANDUM OF LAW SUPPORTING THE COURT'S CONSIDERATION OF DR. ADRIAN'S TESTIMONY AND OPINIONS RELATING TO MULTIPLE PAYMENT CLAIMS

Defendant State Farm Fire and Casualty Company ("State Farm") respectfully submits this Memorandum in support of the Court's consideration of the opinions and other testimony of State Farm's expert, Dr. James Adrian, to the extent they relate to his review of claim files involving multiple payments. This Court should deny any motion or other objection by Plaintiffs seeking to preclude the admission or consideration of that evidence at the class certification hearing because it is pertinent to the predominance and commonality requirements of Rule 23.

### Background

Pursuant to the Court's Case Management Order, State Farm timely disclosed Dr. Adrian as one of its testifying experts and produced his expert Report. *See* Docket No. 112 at p. 2; *see also* State Farm Class Cert. Exhibit No. 62 (the "Adrian Report"). Plaintiffs subsequently filed a

972022v.1

motion to strike Dr. Adrian's Report, and after extensive briefing, the Court granted that motion in part and denied it in part. *See* Docket Nos. 158-2, 168, 184, 210, and 211.

One aspect of Dr. Adrian's Report that Plaintiffs challenged was Dr. Adrian's review of a sampling of Louisiana homeowners claim files relating to dwelling losses ("Coverage A claims") during the relevant time period. *See* Docket No. 158-2 at 2-6. Although Plaintiffs' proposed class is defined to include only those insureds who received a single payment from State Farm under their dwelling policy for a covered loss, the claim file sampling that Dr. Adrian reviewed contained a small number of claim files in which an insured had received more than one check from State Farm for a dwelling damage loss.[1]

Dr. Adrian formed several opinions based on his review of the claim file sampling. Those opinions included (i) that State Farm frequently paid insureds based on contractors' estimates, (ii) where contractor price information was available in the files, State Farm's estimated prices at times were substantially the same or *higher* than the contractor prices, (iii) State Farm on occasion paid an insured for general contractor's overhead and profit ("GCOP") when the services of a general contractor were not reasonably anticipated, (iv) one cannot evaluate the sufficiency of an estimate or State Farm's payment to an insured without reviewing the entire claim file, (v) it is to be expected that estimates for a single repair that are prepared by different individuals will differ from one another due to the individualized nature of estimating, and (vi) it generally is very difficult to compare a contractor's invoice or proposal to a State

---

[1] The file sample was a random sample that drew claims from six different strata, with a pre-determined number of files drawn from each of those six strata. The strata were: 1) Katrina claim file numbers with a single payment; 2) Katrina claim numbers with multiple payments; 3) Rita claim numbers with a single payment; 4) Rita claim numbers with multiple payments; 5) all other claim numbers with a single payment; and 6) all other claim numbers with multiple payments. Fewer files were drawn from strata 2, 4, and 6. *See* Gron Aff., Def. Class Cert. Ex. 5.

Farm estimate due to the fact that contractors generally do not use detailed unit pricing like State Farm's when pricing a job. *See, e.g.*, Def. Class Cert. Ex. 62 at pp. 4-13.

When ruling on Plaintiffs' motion to strike Dr. Adrian's Report, this Court concluded that Dr. Adrian's personal claim file review of the file sample was a reliable methodology and that the claim file sampling was adequate from which to draw an opinion based on class certification. *See* Docket No. 211 at 9-10. The Court noted, however, that the files drawn from strata 2, 4, and 6 were "multiple payment" files that did not fall within the proposed class definition, and stated that any "opinion derived from these strata of claims will be disregarded by this Court unless some relevance is presented during class certification." *Id.* at 11.

Each of Dr. Adrian's opinions based on his file review was fully supported by his analysis solely of the "single payment" files in the claim file sampling. His opinions are further supported, however, by his review of the "multiple payment" files, and State Farm accordingly submits that that the information drawn from those files should be considered on class certification as well.

### Argument

When considering a motion for class certification, expert testimony is permitted and should be allowed if it relates to the prerequisites for class certification and has a sufficient indicia of reliability. As this Court recently stated:

> Clearly, comprehensive expert reports as will be required on the merits are not feasible at the Rule 23 stage. If the class is certified a detailed report will be necessary and required at the trial on the merits. The court's inquiry here is to determine if the expert testimony has sufficient reliability to be presented at the class certification hearing. Is the approach used by the experts sufficiently trustworthy to assist the Court in determining the requirements of commonality with respect to damages? In essence, the Court must determine if the expert's testimony may reliably establish that a class action should or not be certified.

*In re Katrina Canal Breaches Consolidated Litigation*, 2007 WL 3245438 at *12 (E.D.La. Nov. 1, 2007).

Moreover, as this Court recently reaffirmed, factual and expert evidence that pertains to the issues raised on a class certification motion should be admitted and considered *even if* it also pertains to the merits of the case. *Id.* at *10. The evidence is not used at class certification to decide the case at hand, but consideration of the evidence is still appropriate in connection with the "rigorous analysis" required for resolving class certification motions. *See Unger v. Amedisys, Inc.*, 401 F.3d 316, 321 (5th Cir. 2005).

Plaintiffs have argued that the central merits issue in this case is whether State Farm's unit prices were "below market" across the board throughout the State of Louisiana. They have argued that the "evidence of the 'actual' market prices that should have been paid is *common evidence* – as is the evidence of intentional manipulation and/or utilization" of supposed below market prices. *See* Plaintiffs' Mem. in Support of Class Certification at p. iii. Indeed, their "below market" allegation is the lynchpin both for their plan to establish State Farm's supposed liability through "common evidence" and their planned computation of damages, as their proposed trial plan shows. *See* Docket No. 156-2. Many of the supposed common issues to be tried in their proposed Phase I are based on the assumption that State Farm's pricing was below market, and their claim that they can someday present a proposed method for computing class damages depends completely upon the notion that "actual" or "should have been" prices can be fed into a computer and substituted for unit pricing that State Farm actually used, with no need to review the facts of each individual's claim to determine whether State Farm's *total* claim payment was sufficient to pay the cost of covered repairs under the insured's policy. *Id.*

Plaintiffs have yet to disclose how they propose to demonstrate that *any* particular unit price used by State Farm was below market at any particular time or place in Louisiana during the asserted class period. But they do claim to have shown that the unit pricing in State Farm's estimate for the Schafers was "too low," and they rely *specifically* on their discussion of a handful of prices from two price guides (the HBAGNO price list and Gulf Coast Guide)[2] as support for that contention. *See* Docket No. 200-3.

Given Plaintiffs' theory on predominance and commonality, and their citation to two price guides as at least some supposedly common and predominating evidence of State Farm's alleged use of insufficient prices, State Farm's opposing evidence on those points is directly pertinent to the questions of commonality and predominance.[3] The pertinent, contrary conclusions by Dr. Adrian on the issues of commonality and predominance based on his claim file review include that:

- There is *no single market price* for particular goods or services;

- Different estimators legitimately may generate different prices for the same job;

- State Farm frequently paid insureds *based on contractors' pricing* (which clearly was payment of "market" price for the job at hand); and

- It is difficult to compare State Farm's unit pricing to contractors' bids or invoices due to the fact that most contractors do not use unit pricing.

*See* Def. Class Cert. Ex. at pp. 4-13. Significantly, *none* of the foregoing observations is either affected by or dependent upon whether a particular insured received one check, two checks, or

---

[2] For ease of reference, the price list prepared by the Homebuilders Association of Greater New Orleans is referred to herein as the "HBAGNO" price list, and the 2006 Gulf Coast Estimator price guide is referred to as the "Gulf Coast guide."

[3] This Court has already noted that evidence showing State Farm's payment of actual contractor prices, and its payment of GCOP where such services were not necessary, "may bear upon the predominance of individual issues over common issues of the class." Docket No. 211 at 9.

972022v.1

any number of additional checks from State Farm in payment for their loss. Repairs for "multiple payment" insureds that were performed by contractors for differing amounts at or below State Farm's prices *still* are probative of whether there was a "single" market price for the particular repair. And that evidence is equally probative of whether the HBAGNO price list or Gulf Coast price guides actually set out the "true" market repair cost for any particular items. Similarly, evidence from claim files showing that contractors did not generally use unit pricing like State Farm's, and that it accordingly is difficult to compare State Farm's unit pricing to actual construction costs, is in no way dependent on whether the claim at hand was resolved through one payment or two. And finally, the evidence that State Farm may have paid *both* "single payment" and "multiple payment" insureds for unnecessary costs, such as when GCOP has been paid when a general contractor's services were not reasonably anticipated, is probative of whether each proposed class member's file must be evaluated individually to determine whether the *total* bottom-line payment to the insured was actually sufficient under their policy.

## Conclusion

For all of the foregoing reasons, State Farm respectfully requests that the Court deny any motion by Plaintiffs to disregard or disallow any testimony or evidence presented by Dr. Adrian that relates to his review of "multiple payment" files in this matter.

Respectfully submitted,

*/s/ Michael Q. Walshe*

Wayne J. Lee, 7916, T.A.
Mary L. Dumestre, 18873
Michael Q. Walshe, Jr., 23968
J. Dalton Courson, 28542
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504) 581-3200
Fax: (504) 581-3361
Email:   wlee@stonepigman.com
         mdumestre@stonepigman.com
         mwalshe@stonepigman.com
         dcourson@stonepigman.com

and

Joseph A. Cancila, Jr. (admitted pro hac vice)
Heidi Dalenberg (admitted pro hac vice)
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606-6473
Telephone: (312) 258-5500
Fax: (312) 258-5600
Email:   jcancila@schiffhardin.com
         hdalenberg@schiffhardin.com

*Attorneys for Defendant,
State Farm Fire and Casualty Company*

CH2\7200857.1