# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KATHLEEN & GORDON SCHAFER | CIVIL ACTION |
| VERSUS | NO. 06-8262 |
| STATE FARM FIRE & CASUALTY COMPANY, ET AL. | SECTION "K"(5) |

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion for Class Certification (Rec. Doc. 160) ("Mot."). Defendant State Farm has filed an opposition (Rec. Doc. 182) ("State Farm Opp."), and Defendant Xactware Solutions, Inc. ("Xactware") has also opposed the motion (Rec. Doc. 193) ("Xactware Opp."). Plaintiffs have filed replies to each. (Rec. Doc. 204) ("Reply to SF"); (Rec. Doc. 206) ("Reply to Xact."). Having reviewed the evidence, the pleadings, and the relevant law, this Court concludes that class certification should be denied.

## I. FACTS & PROCEDURAL HISTORY

Plaintiffs are the class representatives for a putative class action representing insured customers of State Farm who filed claims with the company for property damage sustained during Hurricanes Katrina and Rita. This lawsuit arises out of a property adjustment dispute between a homeowner's insurer and policyholders relating to damages sustained when Hurricane Katrina struck the city of New Orleans on August 29, 2005. Prior to the storm, Plaintiff class representatives Kathleen and Gordon Schafer obtained an insurance policy from Defendant State Farm for their property located at 3128 State Street Drive, New Orleans, Louisiana. Like many

1

others, the Schafers sustained substantial damage to their home because of Hurricane Katrina. Pursuant to the terms of their homeowner's policy, they sent to State Farm a timely claim for damages and/or loss to State Farm. Subsequently, State Farm sent independent adjusters to the Plaintiffs' property to determine the extent of the loss.

Plaintiffs allege that Defendants State Farm and Xactware systematically underestimated the required replacement cost of specific items, resulting in class-wide losses. Plaintiffs assert that State Farm used a computer software program called Xactimate in determining the value of the loss. Xactimate is produced by Defendant Xactware. Xactware produces both the Xactimate computer program as well as pricing lists for numerous line items used in adjustments. "Line items" include labor, materials and other necessary items for each repair. These pricing lists are produced for specific regions at various intervals. State Farm purchases the program and pricing lists from Xactware, and State Farm adjusters use the program and pricing lists to calculate the replacement value of damaged property. State Farm does review pricing lists before using them, and may request modifications by Xactware. Xactimate is then used by the insurance claims adjuster by entering in the damaged immovable property component parts (e.g. drywall or siding) and the size of the damaged property (e.g. square feet or linear feet), and the program applies a pre-determined price for that damaged item and calculates that line item's replacement cost.

Plaintiffs seek to certify specific claims against State Farm and Xactware. Plaintiffs claim that State Farm's payment of "deflated and devalued Xactware-based [line item] prices was a breach of its insurance policy contract and violated the Louisiana Insurance Code as a failure to pay the reasonable *amount* due within 30 or 60 days of receipt" of the proof of loss.

2

Mot. at 6. Plaintiffs presented evidence suggesting that the prices used by State Farm to adjust claims after Hurricane Katrina may have been artificially deflated.[1] As to Xactware, Plaintiffs "only seek to certify fraud claims against Xactware to the extent that Xactware itself knew and intended that State Farm would rely upon the devalued and deflated numbers for unconditional actual cash value or other payments." Mot. at 7. Plaintiffs do *not* seek to certify "breach of contract or 'bad faith' claims regarding the timeliness of State Farm's payment or adjustment, nor coverage issues (*e.g.* whether damages were caused by water or wind)." Mot. at 6. Plaintiffs do not seek to certify fraud or misrepresentation claims against State Farm, or any claims against Xactware solely as a co-conspirator liable for fraud with State Farm. Mot. at 7. As to the membership of the proposed class, Plaintiffs have phrased their class as:

> All Louisiana residents who were named insureds with State Farm and who received a one-time payment under Coverage A for the damage or loss to structures located within the State of Louisiana according to the terms of their homeowner's policies with State Farm, utilizing any Xactware and/or Xactimate-related pricing, from August 29, 2005 through [date of certification].

Mot. at 6. Coverage A is generally defined as the coverage that applies to the primary dwelling structure.

Plaintiffs also exclude certain persons from the class. Specifically, they exclude: "(i)

---

[1]For example, in an internal State Farm email a pricing specialist writes:

> [T]here are market conditions that have lead [sic] to the doubling of the price of rebond since pre Katrina. Yet when you look at the Xactimate survey price from the 3rd quarter last year which was immediately following Katrina and had not really changed, to the 4th quarter list we just put out, there was barely a minimal fluctuation. Going further back you look at the 2nd quarter of last year pre-Katrina and the prices still have only a minimal change.

Email from G. Gaubert to M. Richter, Oct. 18, 2006 (Pl. Ex. 91).

Persons who have been paid policy limits under Coverage A; (ii) Persons (other than the Schafers) who are individually named as plaintiffs in lawsuits (other than the present suit) against State Farm relating to their homeowner policy claims; and (iii) Persons who have negotiated final settlements with State Farm and who have released all claims for property damages under Coverage A of their homeowner's policies." Mot. at 6. They also exclude "claims relating to costs or prices that are not Xactware/Xactimate-related, but were individually 'overridden' by a State Farm adjuster;" and policyholders who either filed suit or received a "supplemental" payment from State Farm "amending, increasing, or otherwise revising the 'actual cash value' or other unconditional payment with 'replacement' costs that were higher than the tendered amounts as reflected in the Xactware/Xactimate-related pricing." Mot. at 6-7.

Plaintiffs filed their original complaint on August 22, 2006 in the Civil District Court for Orleans Parish, and Defendants subsequently removed the case to this Court on October 16, 2006. Defendants have sought dismissal of the class action complaint on several occasions previously in this litigation. This Court issued opinions on those motions,[2] and subsequently Plaintiffs were permitted to amend their class complaint. Class discovery proceeded during this period. Presently before the Court is Plaintiffs' Third Amended Class Action Complaint (Rec. Doc. 78). This Court heard argument on this motion at a class certification hearing on April 8, 2009. Defendants presented the testimony of five witnesses, three of which were received as experts. The Plaintiffs did not present any witnesses, expert or otherwise, in support of its motion.

---

[2]*Schafer v. State Farm Fire & Cas. Co.*, 507 F. Supp. 2d 587 (E.D. La. 2007); *Schafer v. State Farm Fire & Cas. Co.*, Civ. A. No. 06-8262, 2008 WL 131225, at *1 (E.D. La. Jan. 10, 2008).

Defendants State Farm and Xactware argue that class certification is improper on three main points. First, they assert that the Schafers fail the adequacy and typicality requirements of Rule 23(a). Second, Defendants claim that the proposed class does not satisfy the predominance requirement of Rule 23(b)(3). Their final claim is that the class action does not fulfill Rule 23(b)(3)'s superiority requirement. In light of the fact that this Court finds that the predominance requirement of Rule 23(b)(3) is not fulfilled, a finding that is fatal to class certification, this Court will deny the Plaintiff's motion.

## II. ANALYSIS

The propriety of class certification in federal courts is guided by Rule 23. Rule 23(a) sets forth "four baseline requirements" that "[a]ll classes must satisfy." *Anderson v. U.S. Dep't of Housing & Urban Devel.*, 554 F.3d 525 528 (5th Cir. 2008). Rule 23(a) describes these four requirements as: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

"If Rule 23(a)'s prerequisites of numerosity, commonality, typicality, and adequacy are met, then the proposed class must additionally satisfy one of the three provisions for certification under Rule 23(b)." *Cole v. Gen'l Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007). The parties here agree that the applicable provision to this proposed class is Rule 23(b)(3), which permits a class to be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating this predominance requirement, the Rule states that "[t]he matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Federal courts "emphasize that it is the party seeking certification that bears the burden of establishing that the requirements of Rule 23 have been met." *Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318, 325 (5th Cir. 2008) (citation omitted). "Recognizing the important due process concerns of both plaintiffs and defendants inherent in the certification decision, the Supreme Court requires district courts to conduct a rigorous analysis of Rule 23 prerequisites." *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) (citing *Gen'l Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)). Class certification hearings "should not be mini-trials on the merits of the class or individual claims." *Id.* at 321. Nonetheless, "[g]oing beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996).

Defendants most significant argument is that the proposed class action fails the

requirement that common class issues predominate over individual issues. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997). "The predominance inquiry is 'more demanding than the commonality requirement of Rule 23(a)' and requires courts 'to consider how a trial on the merits would be conducted if a class were certified.'" *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir. 2007) (citing *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301, 302 (5th Cir. 2003)). This inquiry "'entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class,' a process that ultimately 'prevents the class from degenerating into a series of individual trials.'" *Bell Atl.*, 339 F.3d at 302 (quoting *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003)).

Plaintiffs claim that they have fulfilled their burden of establishing predominance. They argue that the most significant common issue in this litigation is the "should-have-been" price, *i.e.* the correct market price. Plaintiffs would use common evidence to establish this correct market price, such as the "'raw data' submitted to State Farm in the forms of proofs of loss and other invoices from policyholders . . . for the same line items within the same geographical region during the relevant time period." Mot. at 10. Plaintiffs would also present extrinsic evidence common to the class, such as price lists produced by Xactware competitors Craftsman and the Home Builders Association of Greater New Orleans, in order to determine that correct market price. Mot. at 11. Plaintiffs admit that some prices in the Xactware list were modified by State Farm; however, they point out that modified prices can be weeded out from the original

7

Xactware prices. They note that any prices modified by an adjuster are marked in the total adjustment, and such prices can also mechanically be removed from any individual's claim for damages. Finally, Plaintiffs assert that once the correct market price is determined, the Court would simply have to compare the line items of each class member's incorrect estimate against the line items with the correct market price to determine damages. Mot. at 14.

Despite Plaintiffs' arguments, however, this case presents significant predominance problems. First, the measure of damages requires individualized determinations. The Fifth Circuit has held that "the necessity of calculating damages on an individual basis will not necessarily preclude class certification." *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (citing *Bell,* 339 F.3d at 306). "However, where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class." *Id.* The Plaintiffs attempt to invoke the Fifth Circuit's language by asserting that any individual computation of damages would be "mechanical" and "formulaic," requiring a simple calculation of the difference between State Farm/Xactware's price and the fair market value of the item. Even presuming *arguendo* that this is the proper calculation for damages, Plaintiffs still would need to establish what the fair market value is for each line item. In this case, there are potentially over a million line items. The Defendants presented the testimony of Michael Fulton, a general manager of Xactware's pricing data services division, who pointed out that Xactware creates different lists for different geographic areas to account for local differences in price. Testimony of Michael Fulton ("Fulton Test.") (Tr. at 148). Xactware divides Louisiana into nine regions, and it produces a separate list for each region. *Id.* Xactware also produces new pricing lists at regular

8

intervals, usually on a quarterly basis. *Id.* However, Xactware also produces an "interim publication" as needed, such as during emergencies involving fluctuating prices. During the period from August 2005 until April 2009, which is included in the proposed class period, Xactware produced a total of 17 price lists for each region. *Id.* at 149. Therefore, Xactware produced a total of 153 lists during the class period (17 lists for each of Louisiana's nine regions). Each list contains roughly 10,000 different line items. *Id.*; *see* Def. Ex. 93. Accordingly, Xactware made over 1,500,000 line item estimations over the class period. In order to prove liability, Plaintiffs would have to determine the accuracy of each individual line item, *i.e.*, the actual fair market value of each item on each list. However, Plaintiffs provided no expert testimony concerning how these fair market values would be calculated efficiently on a class-wide basis. Because Plaintiffs have not carried their burden of proof, this Court is persuaded that the calculation of the fair market value of over 1,500,000 line items would be an incredibly particularized assessment that would predominate over any common issues.

Individual issues also exist as to how each putative class member's adjustment was performed. The Defendants presented the testimony of a team manager from State Farm's catastrophe services, who explained that Xactimate's line item prices are not the only factors used to make an estimate. Testimony of Michael Lapinskie ("Lapinskie Test.") (Tr. at 88). In an actual cash value policy, the adjuster would first "estimate the replacement cost of the damaged items and then reduce that replacement cost by a percentage based on age, condition, wear and tear." *Id.* at 94. The amount of depreciation that must be attributed to age, condition, wear and tear is a "judgment call by the adjuster." *Id.* at 95. The estimate may be further adjusted by additional information provided by the insured. *Id.* at 98. During a field adjustment, an adjuster

9

needs to determine the scope of damage by measuring the space that needs repair and estimating the degree of damage through either visual estimate or through discussions with contractors. *Id.* at 106-07. The adjuster needs to estimate waste, i.e., how much extra material must be ordered for a repair. *Id.* at 110. Unique house structures may require additional labor hours, another judgment call left to the estimator that is not included in Xactimate pricing. *Id.* at 117. The adjuster may need to factor in additional shipping costs for materials that are difficult to obtain. *Id.* at 120. Moreover, while each Xactimate pricing includes the cost of subcontractor labor, an adjuster must determine whether a general contractor is needed depending on the "complexities of the loss." *Id.* at 115. An adjuster then may add the cost of general contractor overhead and profit ("GCO&P") to the adjustment, a fee that the homeowner would receive whether or not she decided to execute the repairs. *Id.* at 115-16. Defendants point out that an adjuster could use sources other than Xactimate in estimating the replacement cost, such as personal knowledge from visits to local hardware stores or the invoices for repair. *Id.* at 107. The adjuster may add other incidental costs, such as fees for generators, parking, and portable toilets at the site. *Id.* at 127-29.

Defendants also presented the testimony of Dr. James Adrian, an expert in construction estimating and estimating systems.[3] Dr. Adrian evaluated a sample of 100 claim files taken from the proposed class. Adrian Testimony ("Adrian Test.") (Tr. at 238). He found that there were

---

[3]This Court denied a motion to exclude Dr. Adrian's testimony prior to the class certification hearing. *Schafer v. State Farm Fire & Cas. Co.*, Civ. A. No. 06-8262, 2009 WL 799978, at *1 (E.D. La. Mar. 25, 2009).

no consistent relationship between Xactimate's prices and competitors' prices.[4] In other words, just as Xactimate prices would be lower than a competitors, they would be higher than competitors' just as frequently. *Id.* at 249. Moreover, Xactimate and other price lists do not always categorize labor and materials in the same manner for the same job, such as for roof repair or replacement of an air conditioning unit. *Id.* at 249, 258. Some price lists include the cost of labor already in the cost of material; other price books require labor to be added in. *Id.* Other price lists also use different geographical regions for their price lists. *Id.* at 264. These inconsistencies suggest that competitors' prices are not necessarily a proxy for true fair market value, making the task of determining fair market value for all 10,000 items more difficult.

Predominance problems also arise in the context of affirmative defenses. The Fifth Circuit has held that "[t]he predominance of individual issues necessary to decide an affirmative defense may preclude class certification." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 420 (5th Cir. 2004) (citing *Castano*, 84 F.3d at 744); *Gene & Gene*, 541 F.3d at 327. Here, Defendants have argued that even if some line item prices were deflated by State Farm and/or Xactware, State Farm still provided customers with a reasonable payment as a *whole*. State Farm's contract with all customers obliges State Farm to pay "the reasonable and necessary cost to repair or replace the damaged buildings for equivalent use . . . with commonly used materials that are readily available in the areas where the building is located." State Farm Opp. at 23-24 (citing Def. Ex. 20). Dr. Adrian testified that there were some putative class members against whom this defense could be asserted. He concluded that nine possible claims in his sample of

---

[4]Examples of competitor price books cited by Dr. Adrian include Timberline, Craftsman, and the Home Builders Association of Greater New Orleans.

100 where State Farm paid GCO&P where it likely was not necessary to complete the required repairs. Adrian Test. (Tr. at 253). He further found that many claim files did not clearly establish whether the repair was actually conducted, thus increasing the difficulty in determining whether the insurance payment was reasonable. *Id.* at 255. Also, some customers likely used their insurance payments to improve their homes instead of returning them solely to pre-storm conditions, which would also complicate determining whether State Farm paid the reasonable replacement value.[5] Lapinskie Test. (Tr. at 129). Plaintiffs argue that this "set off" defense is a counterclaim upon which Defendants should bear the burden of establishing class propriety under Rule 23. Reply to SF at 4. However, there appears no evidence that State Farm would actually seek a refund here; instead, State Farm would merely be asserting that no harm has been done. Therefore, State Farm's claim would be an affirmative defense, and here it appears that assessing this affirmative defense would require individualized inquiry that would predominate over any issues common to the class.

Coordinate courts have considered similar proposed class actions and have likewise found that the predominance requirement is not satisfied. A case much on point is *Melancon v. State Farm Insurance Co.*, Civ. A. No. 06-4130, Civ. A. No. 06-5230, 2008 WL 4691685, at *1 (E.D. La. Oct. 22, 2008) (Vance, J.). In that case, Melancon, a putative class plaintiff, sued State Farm for damage caused during Hurricanes Katrina and/or Rita. The plaintiff specifically

---

[5]State Farm argues that the Schafers made improvements on their home instead of merely replacing any damaged property, suggesting that they would be inadequate class representatives. *See* Testimony of Michael Berryman (Tr. at 199-213). This argument possible does hold merit considering that it may be difficult to ascertain whether the Schafers actually were harmed by allegedly low prices used for the adjustment. However, as this opinion focuses on predominance, this Court need not address the adequacy and typicality of the Schafers and their claims for the purposes of serving as class representatives.

alleged that after those hurricanes, State Farm paid to insureds 20% GCO&P as part of the up-front adjustment of claims. The plaintiff claimed, however, that in post-Katrina and Rita Louisiana GCO&P rose dramatically, resulting in 20% being an unreasonable and arbitrary figure. Upon considering class certification, Judge Vance denied certification because predominance was lacking. She cited several aspects of the class claim that ran afoul of the predominance requirement, many that are present in this case. First, she noted that the plaintiffs' breach of contract claims asserted that each component price was artificially low; however, each contract only required that State Farm pay *in total* a reasonable amount. Inquiring into whether the total amount paid to each plaintiff was reasonable was an individualized inquiry. *Id.* at *5. Judge Vance also explained that GCO&P may have been paid in instances where it was not necessary, and State Farm had the right to present individualized evidence that a specific claimant had gained a windfall. *Id.* at *5-6. The court also observed that direct percentage comparisons of GCO&P awarded by two different companies would not be accurate because a company may generally award more per item and then award less GCO&P. Some insureds also had general contractors involved in the claims who would negotiate for more accurate adjustments. *Id.* at *6. Judge Vance further noted that "State Farm introduced evidence that after Hurricane Katrina, it took account of changes in labor and material costs quarterly and that these costs varied from region to region around the state." *Id*. at *7.

Likewise, Judge Trimble of the Western District of Louisiana dismissed a class action claim against an insurer for under-adjustment of insurance claims after Hurricane Katrina, finding that factual inquiries would need to be made into "each putative class member's claims, such as where and when materials and supplies were being purchased, what was the market price

13

at the time, and when did the price of materials and supplies decrease." *Jones v. Nat'l Sec. Fire & Cas. Co.*, Civ. A. No. 06-1407, 2006 WL 3228409, at *4 (W.D. La. Nov. 3, 2006), *aff'd* 501 F.3d 443 (5th Cir. 2007). In *Aguilar v. Allstate Fire and Cas. Ins. Co.*, Civ. A. No. 06-4660, 2007 WL 734809, at *1 (E.D. La. Mar. 6, 2007), Judge Feldman denied a class action alleging underpayment of post-Katrina insurance claims due to the class representatives' failure to fulfill the predominance requirement. Judge Feldman noted that the allegations "will require an intensive review of the individual facts of each class member's damage claim, including the nature and extent of damage, the timing and adjustment of each class member's claim, how much each class member was paid for his claim and for what damage, and whether that amount was sufficient and timely." *Id.* at *3; *see Terrebonne v. Allstate Ins. Co.*, 251 F.R.D. 208, 211 (E.D. La. 2007) (Vance, J.) (denying certification to putative class of insureds because "plaintiffs' claims still require highly individualized inquiries into the cause of each plaintiff's loss and the amount of the damages sustained at each of the plaintiffs' properties."); *Comer v. Nationwide Mut. Ins. Co.*, No. 1:05 CV 436 LTD RHW, 2006 WL 1066645, at *1 (S.D. Miss, Feb. 23, 2006) (denying certification due to "the preponderance of individual questions of damage, coverage, policy provisions, mortgage obligations . . . involved in the case of each individual property owner who sustained damage as a result of Hurricane Katrina.").

The present case has significant similarities with the decisions here. Plaintiffs here seek to certify class claims that are based on the proper adjustment of property damage claims. Inevitably, this would require individualized assessments regarding the actual extent of damage and whether the adjuster properly estimated the damage. As specifically observed by Judge Vance in *Melancon*, the participation of general contractors could impact the reasonableness of a

payment. Plaintiffs here appear to try to avoid this problem by excluding general contractor estimates and instead focusing the class on Xactware line items. However, the process of excluding such persons from the class would involve substantially the same individualized inquiry that this Court must avoid under Rule 23(b)(3), suggesting that Plaintiffs cannot "define" themselves out of a Rule 23(b)(3) problem. Moreover, the inclusion of GCO&P where it is not necessary would have led to an overpayment to a customer, resulting in no harm being suffered by the customer. State Farm should be entitled to assert this defense.

Plaintiffs claim similar class actions have been certified, citing as their foremost authority *Mills v. Foremost Insurance Co.*, 511 F.3d 1300 (11th Cir. 2008). *Mills* concerned claims brought by mobile home owners who suffered property damage due to a hurricane. They sought to assert a class action against their insurer for purposefully excluding "overhead, profit, and taxes under the Policy" held by plaintiffs, a claim similar to that asserted in *Melancon*. *Id.* at 1302. The district court both dismissed the claim under a Rule 12(b)(6) motion, and it also dismissed the class claim as lacking predominance. The Eleventh Circuit reversed both rulings as in error. However, in evaluating the *Mills* court's reasoning, Plaintiffs' reliance is misplaced. *Mills* held that dismissal of the class was premature, and instead the district court should "go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Id.* at 1309. The Eleventh Circuit also found that dismissal based on lack of predominance was inappropriate because "a lack of predominance under Rule 23(b)(3) does not automatically bar class certification because the putative class representative can still attempt to satisfy the requirements of Rule 23(a) and either Rule 23(b)(1) or (b)(2)." *Id.* at 1309-10. Plaintiffs in the present case have only asserted a Rule 23(b)(3) class action, and

indeed it seems that would be the only form of class action available here. Lastly, the *Mills* court in the last paragraph reinforced the fact that it was reversing the district court's decision "that class action treatment was inappropriate as a matter of law from the face of the Millses' particular complaint." *Id.* at 1311. It concluded, "In so holding, we express no opinion as to whether class certification is or is not appropriate in this case." *Id.* Thus, *Mills* is not relevant to the present motion to certify.

Plaintiffs here have failed to satisfy the predominance requirement. Despite Plaintiffs' best efforts, there are too many individual issues regarding what the proper market price of a line item was at a specific time, what method an adjuster used to make an estimate, whether labor was included in an estimate, and whether any class members actually were overpaid, among others. In assessing the bevy of previous insurance-based class actions that have been denied due to lack of predominance, it appears unlikely that any insurance adjustment-based claim could survive current Fifth Circuit class action law. This Court is bound to follow this law as its sister courts have done. This motion for class certification shall be denied for lack of predominance.[6]

---

[6]Because Plaintiffs cannot establish predominance, it is unnecessary to address the other Rule 23 requirements. *See Steering Committee*, 461 F.3d at 601 (declining to address other Rule 23 requirements where plaintiffs failed to fulfill predominance or superiority requirements).

## III. CONCLUSION

For the reasons stated herein, accordingly,

**IT IS ORDERED** that the Plaintiffs' Motion for Class Certification (Rec. Doc. 160) is hereby **DENIED.**

New Orleans, Louisiana, this __3rd__ day of August, 2009.

                                           **STANWOOD R. DUVAL, JR.**
                                     **UNITED STATES DISTRICT JUDGE**