UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN AND GORDON SCHAFER, | * | CIVIL ACTION NO. 06-8262 |
| | * | |
| Plaintiffs, | * | |
| | * | |
| VERSUS | * | SECTION "I"(5) |
| | * | |
| STATE FARM FIRE AND CASUALTY | * | JUDGE AFRICK |
| COMPANY AND XACTWARE SOLUTIONS | * | |
| INC., | * | MAGISTRATE CHASEZ |
| | * | |
| Defendants. | * | |
| | * | |

*******************************************

**SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO DECLASSIFY DOCUMENTS**

NOW INTO COURT come Plaintiffs, through undersigned counsel, who respectfully submit the instant Supplemental Reply in Support of Plaintiffs' Motion to Declassify Documents.

**I.    XACTWARE WOULD NOT LOSE A RED CENT IF OUTDATED PRICELISTS ARE DECLASSIFIED.**

Contrary to what Xactware asserted in its affidavit and in the telephone hearing, it does not receive an additional fee for such price lists. Previously, Xactware claimed, both in writing and through counsel's oral argument, that its out-dated price lists still had commercial value because they were sold for a fee. Only because the Court ordered Xactware to disclose how much these fees produced in revenue, we now know Xactware's claim was false. The new affidavit now states that it did not charge any fee for obtaining these outdated pricelists.

However, in the first affidavit submitted by Xactware, the same Edmund Webecke stated, "Price lists published several years ago are of continuing commercial value to Xactware because

Xactware's paying customers regularly request and receive access to such price lists **for a fee . . . .**" See Xactware Edmund Webecke's affidavit, at ¶ 12 (emphasis supplied).  At best, this is grossly misleading statement because the affidavit was being submitted in relation to pricelists "published several years ago" that do not have a fee associated with customer access.  Xactware's answer to the Court's request of how much revenue these fees produced is "zero."   Thus, the only reason the Court hesitated to declassify these lists was based on a false assertion by Xactware.

## II.     XACTWARE CONTRACTED WITH STATE FARM KNOWING FULL WELL THAT STATE FARM WOULD GIVE THEM TO STATE FARM INSUREDS WITHOUT ANY RESTRICTIONS.

To be clear, Xactware provided the pricelists to State Farm with the explicit knowledge that State Farm could simply provide the unit prices (in the format of an adjuster's estimate) to State Farm clients.  State Farm had the right, under the contract, to lower the unit price, raise the unit price, or keep the prices the same.  At all times, Xactware knew (as other insurance companies did) that State Farm could provide the unit prices to its insureds, without any restrictions.

In fact, that was the very nature of the pricelists.  The very nature and very purpose of the pricelists was for them to end up in an adjuster's report to be provided to a State Farm insured as a basis for what State Farm owed in a Katrina claim.

## III.     XACTWARE AND STATE FARM STILL CANNOT SATISFY THEIR BURDEN OF SHOWING PARTICULARIZED HARM.

The clearest example of how State Farm is unable to show a real, particularized harm is to look at the *Watkins* case.  State Farm has now confirmed it had price lists declassified in the *Watkins* case with no ill effect.  See State Farm's Sur-Reply Memorandum, at 3 n. 2.

While State Farm is correct that the documents unclassified in the *Watkins* case are not the exact documents sought to be declassified in this matter; State Farm fails to note the exact same nature of these documents. For instance, State Farm did have its price lists declassified in the *Watkins* case and in this matter plaintiffs seek to declassify State Farm price lists. Additionally, in the *Watkins* matter, State Farm had its operations guide, OG-783, declassified; and in this matter, plaintiffs seek to declassify what is likely newer versions of OG-783.

Despite these admissions, both State Farm and Xactware continue to suggest "significant threat to [Xactware's] business" and a "'triple threat' of competitive injury" should these price lists be declassified. See State Farm's Sur-Reply Memorandum, at 4 & 5. Again, these vague suggestions of injury are the very type of generalized injury that cannot support protection of these price lists under the 26(c) test.

PSP Program:

This program specifically works with State Farm insureds and contractors on a regular basis and like the price lists is not held in a secretive manner. The PSP manuals are publicly available on the internet and any insured or contractor who participates in the program know how the program operates. Thus, this program is hardly maintained in secrecy.

WHEREFORE Plaintiffs respectfully request that the Motion to Declassify be granted and that the identified documents be declassified.

Respectfully Submitted,


       **/s/ Soren Gisleson**
**STEPHEN J. HERMAN**, La. Bar No. 23129
**SOREN E. GISLESON**, La. Bar No. 26302
**HERMAN, HERMAN, KATZ & COTLAR, LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 561-6024
E-Mail: sgisleson@hhkc.com

**AND**

**MARK P. GLAGO**, La. Bar No. 25395
**Glago Law Firm, LLC**
One Canal Place - 17th Floor
365 Canal Street - Suite 1700
New Orleans, Louisiana 71030
Telephone: (504) 599-8666
Fax No.: (504) 599-8699
Email: Mglago@GlagoLawFirm.com

**AND**

**T. CAREY WICKER, III**, La. Bar No. 13450
**J. ALEX WATKINS,** La. Bar No. 29472
**CAPITELLI & WICKER**
1100 Poydras Street
2950 Energy Centre
New Orleans, Louisiana  70163-2950
Telephone:  (504) 582-2425
Fax No. (504) 582-2422
E-Mail: JAW@Capitelliandwicker.com

**COUNSEL FOR PLAINTIFFS.**

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that the above and foregoing Motion will be filed electronically with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system thereby serving notice on all counsel this 20th day of October, 2009.

                                                        **/s/ Soren Gisleson**