UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN AND GORDON SCHAFER, | * | CIVIL ACTION NO. 06-8262 |
| Plaintiffs, | * | |
| VERSUS | * | SECTION "I"(5) |
| STATE FARM FIRE AND CASUALTY COMPANY AND XACTWARE SOLUTIONS INC., | * | MAGISTRATE CHASEZ |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
DEPOSITIONS AND DISCOVERY**

NOW INTO COURT come Plaintiffs, through undersigned counsel, who respectfully submit the instant Memorandum in Support of Plaintiffs' Motion to Compel Depositions and Discovery. State Farm has refused to produce pricing specialists Mark Richter and Garret Gaubert, as well as a Corporate Representative to testify as to the merits of this case. State Farm has also refused to produce ANY documents relative to the merits of this case.

**I.   STATE FARM MUST PRODUCE PRICING SPECIALISTS RICHTER AND GAUBERT.**

Mark Richter was State Farm's pricing specialist for Louisiana at the time of Katrina. Most importantly, Mr. Richter was responsible for creating/editing the price list that was used in Plaintiffs' estimate.

> **REQUEST FOR ADMISSION NO. 8:**
>
> Admit or deny that Mark A. Richter, in reviewing any price component used in adjusting the Schafer's claim for damage to their

>home, relied in whole or in part, upon the pricing provided to State Farm by Xactware.
>
>**RESPONSE NO.8:**
>
>State Farm objects to this Request on the grounds that it is interposed for purpose of harassment and is not reasonably calculated to lead to the discovery of admissible evidence herein. The issue in this proceeding is whether the total amount paid to the Schafers was sufficient to pay for the repair of the covered damages, not the unit pricing for particular individual repairs. Subject to and without waiving the foregoing objections, <u>State Farm admits that Mark Richter, in his role as Pricing Specialist, prepared the specific State Farm price list (LANO5F5D3) that was used by the claim adjuster who generated the State Farm Fire repair estimate for the Plaintiffs' wind claim, and based that price list in substantial part on unit pricing information received from Xactware</u>. Richter did not participate in the adjustment of Plaintiffs' individual claim. Except as expressly admitted by the foregoing, State Farm Fire denied all remaining assertions in this Request.

<u>See State Farm's Responses to Plaintiffs' Combined Discovery Request</u>, (emphasis supplied), attached as Exhibit "A".

This Response clearly fingers Mr. Richter as the fact witness who developed the unit prices used in the Schafer's estimate. One of the central allegations in this case is that State Farm intentionally deflated the unit prices in the Schafer's estimate (as well as every other Louisiana resident) to reduce the Schafer's claim. As the person responsible for preparing the unit prices, Mr. Richter is a relevant and necessary witness in this case.

The deposition of Garret Gaubert is also necessary. Although State Farm claims that Mr. Gaubert was not a pricing specialist at the time the Schafer's estimate was prepared, Gaubert was a pricing specialist during the central rebuilding time after Katrine. As a pricing specialist, Gaubert

has knowledge of what State Farm knew during this time, as well as the market price of post-Katrina construction materials and labor.  This makes Gaubert an important witness.

## II.   STATE FARM FAILED TO PRODUCE A SINGLE PIECE OF PAPER IN RESPONSE TO PLAINTIFFS' MERITS DISCOVERY.

As this Court remembers, discovery in this case was bifurcated between class certification and merits discovery.  The class certification phase is over.  Plaintiffs propounded merits discovery – discovery limited to the Schafers' claim.  Plaintiffs kept their Requests for Production to only four.  Essentially, Plaintiffs requested all documents supporting State Farm's unit prices in the Schafer's estimate as well as numerous documents related to the Schafer's flood claim.  See State Farm's Responses to Plaintiffs' Combined Discovery Request, attached as Exhibit "A".

State Farm objected to all of them and did not produce a single document.

Plaintiffs are clearly entitled to all documents that support the unit prices in the Schafer estimate. (RFP No. 1.)  As stated above, these documents are relevant to the issue of whether (and to what extent) State Farm deflated the unit prices in a calculated attempt to undervalue the Schafer's claim – a central allegation in this case.

The Requests directed to the Schafer's flood claim (RFP Nos. 2-4) are relevant to both Plaintiffs' claims and State Farm's defenses.  State Farm adjusted the Schafer's flood claims.  Under federal law, State Farm was required to use its own methods to adjust wind claims in adjusting the flood claims.  In adjusting the flood claims, the WYO "shall use its own customary standards, staff and independent contractor resources, as it would in the ordinary and necessary conduct of its own

3

business affairs, subject to the Act and regulations . . . ." 44 C.F.R. § 62.23(e). This is especially important in terms of property damage and contents damage.

For example, in a recent deposition, a State Farm flood adjuster testified that when State Farm adjusted a flood claim, it relied exclusively on what the insured told them was the value of the damages for the property and the value of the contents. Below is how State Farm adjusted the contents claim under the flood policy:

QUESTION: Was it your responsibility to create a contents list on behalf of the(indicating), insured over the phone?

ANSWER: Correct. That was --

QUESTION: And was it acceptable in the course of creating the contents -- Well, let's look at the contents list. Could I direct your attention to Brown 224?

ANSWER: Yes.

QUESTION: All right. Is this a contents list?

ANSWER: Correct.

QUESTION: Was this created by you?

ANSWER: Yes.

QUESTION: Was this an acceptable method that State Farm -- Well, let me ask it this way. Did State Farm accept this method of a contents list in order to pay contents under its flood insurance?

MR. HENRY: Object to form.

ANSWER: Correct. Correct. We were told it made it easier for us to fill out this form (indicating) as opposed to this other one down here (indicating), and so they took this

(indicating) and moved it to this and it would expedite the handling of the claim. And the insured, Mr. Brown, gave me these figures here. Where it says "replacement cost," that's what Mr. Brown told me.

QUESTION: Did you ask for any photographs of any of these contents?

ANSWER: No.

QUESTION: Did you ask for any receipts to substantiate the value of any of these contents?

ANSWER: No.

QUESTION: When you had Mr. Brown over the phone, how did you go through the contents? Did you say, "Why don't you tell me about how much you had in clothing in the house"?

ANSWER: That's exactly what I said.

QUESTION: And when you got to electronics, did you say, "Why don't you tell me about how much you had in electronics in the house"?

ANSWER: That's exactly what I said.

QUESTION: And when you got to appliances, you said, "Why don't you tell me approximately what you had in appliances"?

ANSWER: Correct.

QUESTION: You didn't ask the make/model of the dishwasher, did you?

ANSWER: No.

QUESTION: You didn't ask when any of the clothes were bought, did you?

ANSWER: No.

QUESTION:    When you came to furnishings and you had Mr. Brown on the phone, did you just ask him what was the general value of the furnishings?

ANSWER:    Yeah, I just asked him.

QUESTION:    Did you ask him what kind of couch he had and when he bought it?

ANSWER:    No.

QUESTION:    Did you ask him where he bought the couch from?

ANSWER:    No.

QUESTION:    Did you ask for any kind of detailed analysis that had anything to do with the age of the item, when it was purchased, where it was purchased and for how much?

ANSWER:    No.

<u>Deposition of State Farm Flood Adjuster Dan Sullivan</u>, at 123-25 attached <u>in globo</u> as Exhibit "B".

The methodology State Farm employed in calculating contents in flood cases is drastically different than its homeowners cases. In flood cases, State Farm relied on nothing more than the insured's representations over the phone; however, in homeowners cases, State Farm required every supporting documentation imaginable and then would still deny it. This is compelling evidence to show a jury about how unreasonable State Farm's practices were – when it is someone else's money they will believe the client, when it is State Farm's money they don't.

Federal law also required State Farm to employ the Single Adjuster Program in situations were State Farm adjusted both the wind and flood claim. Pursuant to the Single Adjuster Program, State Farm was required to partition the damage between flood damage and wind damage. The "single adjuster program" requires that in the event of a hurricane, where there is both wind and flood damage, a single adjuster must determine the amount of the flood damage AND the amount

of the wind damage under both policies. 44 C.F.R. Part 62 App. A©. The requested flood document should reveal whether State Farm honored this program or made any efforts to coordinate partition of damage.

For these reasons, State Farm should be ordered to produce all documents responsive to RFP Nos. 2-4.

## III. STATE FARM MUST PRODUCE A CORPORATE REPRESENTATIVE TO TESTIFY TO THE MERITS OF THIS CASE.

Plaintiffs provided State Farm a proposed Rule 30(b)(6) Deposition Notice (with a corresponding Rule 30(b)(5) document request) for a corporate representative deposition. State Farm objected to every single area of inquiry and is attempting to limit the corporate representative's testimony through the objections. See State Farm's Objections to Plaintiffs' Rule 30(b)(6) Deposition Notice and 30(b)(5) Document requests, attached as Exhibit "C".The vast majority of these areas of inquiry (and corresponding document requests) bear upon standard Katrina litigation lines of questioning: (1) document retention policy; (2) claim file issues; (3) adjuster manuals and guidelines; (4) use of claims representatives and adjusters; (5) training of adjusters; (6) policy of adjusting Katrina claims; (7) use of adjuster created documents; (8) use of claims experts; (9) claims expert manuals; (10) reserves; (11) insurance policy at issue; (12) whoever communicated with Plaintiffs; (13) payments made to Plaintiffs; (14) documents produced in discovery; (15)pleadings; (16) Xactimate pricelists in Plaintiffs' claim; (17) State Farm pricelists from Katrina until the end of 2005; and (18-27) documents and communications between Xactware and State Farm and any third party concerning the use, creation, and maintenance of the State Farm and Xactware pricelists.

Most of these (1-17) are standard Hurricane Katrina areas of inquiry in individual cases which have been used by undersigned in dozens of cases against dozens of insurance companies. Nos. 18-27 are relevant to this case. Plaintiffs have alleged (and Judge Duval has stated that Plaintiffs have adequately alleged a claim) for fraud against both Xactware and State Farm. Communications and document exchanges between these co-defendants are relevant to the adequately alleged claims for fraud.

Finally, areas of inquiry 28-34 bear upon State Farm's use of the consulting firm McKinsey & Company in adjusting Katrina claims AND in its advice and consultation regarding the use of the Xactimate program to generate profits by deflating unit prices in its computer program. This a legitimate area of inquiry in that it bears upon its practice and methodology of deflating unit prices that were used in the Plaintiffs' estimate. State Farm must produce a witness (and responsive documents) concerning its use of McKinsey's consultations on first party property claims, Katrina claims, and Xactimate.

In its response to discovery, State Farm recycled an affidavit to Plaintiffs from a Louisiana state case that reads as follows: "McKinsey & Co. has not provided any services or documents to State Farm in connection with the adjustment or handling of Hurricane Katrina property claims." Affidavit of William Gourgues, at ¶ 4, Dorberth v. State Farm Fire & Cas. Co., No. 107-025 (St. Bernard Parish), attached as Exhibit "D".

However, the affidavit overtly misses the central issue in this case. After admitting to "massaging" the pricing in the Xactimate program, State Farm attempts to obfuscate the fact it does not deny having consulted with McKinsey & Co. on the use of the Xactimate program, a program that can be used "off-the-shelf" without any manipulation.

This conclusory statement should not be allowed to go unchallenged without a deposition. State Farm has demonstrated an exaggerated view of what is irrelevant in this case. In every single one of its responses to Plaintiffs' discovery and Notice of Rule 30(b)(6) Deposition, State Farm has objected based relevance. Whether Plaintiffs have requested communications between State Farm and the insured, payments made y State Farm, or even the insurance policy itself – every single time State Farm objects as to relevance.

With such a disturbing sens of what is relevant in a Katrina claim, the affidavit of Mr. Gourgues should be tested with a deposition about McKinsey's involvement in first party property claims, Katrina claims, and State Farm's practice of deflating unit prices in Xactimate.

Finally, Plaintiffs are more than willing to conduct the State Farm corporate representative deposition in Magistrate Chasez's courtroom to fully expedite the resolution of any objections that may be raised.

WHEREFORE Plaintiffs respectfully request that the Motion to Compel be granted and the requested relief be ordered.

Respectfully Submitted,

        **/s/ Soren Gisleson**
**STEPHEN J. HERMAN**, La. Bar No. 23129
**SOREN E. GISLESON**, La. Bar No. 26302
**HERMAN, HERMAN, KATZ & COTLAR, LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 561-6024

E-Mail: sgisleson@hhkc.com

**AND**

**MARK P. GLAGO**, La. Bar No. 25395
**Glago Law Firm, LLC**
One Canal Place - 17th Floor
365 Canal Street - Suite 1700
New Orleans, Louisiana 71030
Telephone: (504) 599-8666
Fax No.: (504) 599-8699
Email: Mglago@GlagoLawFirm.com

**AND**

**T. CAREY WICKER, III**, La. Bar No. 13450
**J. ALEX WATKINS,** La. Bar No. 29472
**CAPITELLI & WICKER**
1100 Poydras Street
2950 Energy Centre
New Orleans, Louisiana  70163-2950
Telephone:  (504) 582-2425
Fax No. (504) 582-2422
E-Mail: JAW@Capitelliandwicker.com

**COUNSEL FOR PLAINTIFFS.**

## CERTIFICATE  OF  SERVICE

I HEREBY CERTIFY that the above and foregoing Motion will be filed electronically with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system thereby serving notice on all counsel this 16th day of March, 2010.

                                                  **/s/ Soren Gisleson**

11