UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN SCHAFER | : | CIVIL ACTION NO. 06-8262 |
| Wife of/and GORDON SCHAFER | : | |
| | : | SECTION "I" (5) |
| Versus | : | |
| | : | JUDGE AFRICK |
| STATE FARM FIRE & CASUALTY | : | |
| COMPANY *et al.* | : | MAGISTRATE JUDGE CHASEZ |

**DEFENDANT STATE FARM FIRE'S MEMORANDUM
IN SUPPORT OF ITS CROSS-MOTION FOR PROTECTIVE ORDER**

Defendant State Farm Fire and Casualty Company ("State Farm") respectfully submits this Memorandum in support of its accompanying Cross-Motion for Protective Order. State Farm seeks a Protective Order to limit the far-ranging discovery demands that Plaintiffs served on or about February 4, 2010 to those relevant to the Plaintiffs' individual homeowners insurance claim. In addition, State Farm seeks a Protective Order as to Plaintiffs' demands to depose State Farm employees Bob Phillips, Mark Richter, and Garrett Gaubert.

As set forth more fully below, there are just a few weeks remaining before the close of fact discovery in this case. With that deadline fast approaching, Plaintiffs requested the depositions of Messrs. Phillips, Richter and Gaubert, and served their Combined Discovery Requests, an extensive Rule 30(b)(6) Notice, and a companion Rule 30(b)(5) Document Notice that, to the extent they are not improperly duplicative of prior discovery, are overly broad, unduly burdensome, invasive, and bear no relation to the limited individual claim issues that remain in this case. The cost that this discovery would impose is grossly disproportionate to the

very modest amount – less than $40,000 – that Plaintiffs to date have identified as their damages in this single-plaintiff action. For these reasons and those set forth more fully below, State Farm's Motion for Protective Order should be granted.

## Introduction

Plaintiffs previously framed this case as a proposed class action against State Farm and Defendant Xactware Solutions, Inc. ("Xactware"). Plaintiffs' theory in their proposed class action was that when State Farm estimated the damage for its homeowners insureds after Hurricane Katrina, State Farm used (and Xactware allegedly supplied) pricing that was "too low" or "below market." Plaintiffs thus claimed that individuals who received payments based on State Farm estimates using that pricing had suffered an injury. Plaintiffs, however, were unable to demonstrate to Judge Duval that they even had any means for developing the expert testimony that would be required to establish what any particular "market" price *was* for specific labor or materials at any given point in time or location, much less how State Farm's pricing would compare to any such "market" prices. *See* Docket No. 222.[1] Judge Duval accordingly denied Plaintiffs' motion for class certification on August 3, 2009. *Id.*

As a result of Judge Duval's Order, this case now presents a simple, single-plaintiff Katrina homeowners insurance dispute. The limited matters that remain at issue are:

- Whether State Farm "underpaid" Plaintiffs for the cost to repair wind damage to their home by $18,332.81;[2]

---

[1] Significantly, Judge Duval noted that Plaintiffs had not presented any expert to testify as to what any "true" market price for a particular item might be, and that the evidence did not support using other commercial pricing guides as a "proxy" for "true fair market value" for goods and services. *See* Docket No. 222 at pp. 4, 7-9, 11.

[2] State Farm's wind repair estimate totaled $24,449.69, while Plaintiffs' "expert" estimated a total repair cost of $42,782.50, for a difference of $18,332.81. However, the "expert's" calculations clearly are grossly inflated. Plaintiffs' expert computed the component for General Contractors Overhead and Profit at a rate higher than the Schafers' contractor

- Whether State Farm should have paid Plaintiffs $15,545 for damaged furniture and other contents from the upstairs of Plaintiffs' home;[3] and

- Whether State Farm should have paid Plaintiffs $1,950.00 in additional ALE expenses for rental they incurred while living in Tuscaloosa, Alabama.[4]

Plaintiffs' asserted claims against State Farm for alleged breach of contract, fraud (consisting of alleged "misrepresentation" of the estimated cost to repair their home), negligence, and statutory penalties under La. Rev. Stat. §§ 22:1220 and/or 22:658[5] are all based on these three narrow questions.

Although Plaintiffs have been free to pursue discovery as to their individual claims since the inception of this case, they did not pursue such discovery before or after their motion for class certification was denied in August, 2009. Indeed, even after this Court entered the current Scheduling Order herein on November 19, 2009, Plaintiffs took no action at all to pursue discovery on their individual claims until February 4, 2010. Then, with just weeks left before the deadline for completing all discovery herein, Plaintiffs served a barrage of demands directed to

---

actually charged, and similarly quoted prices *above* the Schafers' actual incurred costs for tree removal. Adjusting for those overstated items, the difference between the estimate of Plaintiffs' "expert" and State Farm's repair cost estimate is just $8,042.93.

[3] Plaintiffs first asserted this claim just a few weeks ago, and make it despite Mr. Schafer's prior, contrary testimony that *all* of the contents from the second floor of his home were destroyed in a fire while in storage many months *after* Hurricane Katrina.

[4] Plaintiffs recently informed State Farm and the Court that the unpaid ALE expenses they are now demanding consist of three months of rent, at $650.00 / month, for apartment rental in Tuscaloosa, Alabama. The undisputed record shows, however, that State Farm *already paid* Plaintiffs for 12 months of apartment and furniture rental. Under Plaintiffs' policy, that is the limit available for such expenses. Moreover, Plaintiffs have never submitted any receipts for the rent they now claim.

[5] State Farm contends that Plaintiffs' admissions and other undisputed evidence in the record already demonstrate that Plaintiffs have no evidentiary basis whatsoever for their claims against State Farm. State Farm has obtained Judge Africk's leave to file a summary judgment motion addressing these matters and, accordingly, will be filing its motion within the next several days.

State Farm that are onerous, duplicative, and range far outside the scope of permissible discovery.  Specifically, they served a Rule 30(b)(6) Notice and parallel Rule 30(b)(5) Notice to Produce demanding production of corporate representative witness(es) and documents in respect to no less than 34 far-ranging different topics.  They served Combined Discovery Requests – consisting of interrogatories, requests for admission, and further document requests – that likewise are improper in scope and substance.  And in addition to all that, they are asking to depose three *other* individuals -- Bob Phillips, Mark Richter, and Garrett Gaubert – none of whom assisted in the handling of Plaintiffs' individual homeowners insurance claim.

State Farm has now served its written responses and objections to the Combined Discovery, the Rule 30(b)(6) Notice, and the Rule 30(b)(5) Notice to Produce.  *See* Responses, attached as Exhibits 1-2. State Farm also offered to make a corporate witness available to testify as to the handling of Plaintiffs' individual claim and the several topics relating to that claim, including (i) the manner in which Plaintiffs' individual claim was handled; (ii) the payments made to Plaintiffs in respect to their homeowners insurance claim; (iii) State Farm's communications with Plaintiffs regarding their claim; (iv) the relevant provisions of Plaintiffs' homeowners policy as applied by the adjuster(s) who handled their claim; and (v) the prices in the individual dwelling repair estimate prepared by State Farm for Plaintiffs' claim.[6]  The parties have conferred, but were unable to resolve their differences.[7]  State Farm respectfully submits that it should not be required to produce *any* further response or information as to the discovery

---

[6] State Farm offered to make that witness available to testify on March 18, 2010, but Plaintiffs refused that offer.

[7] The only concession that Plaintiffs made as to the disputed discovery was to inform State Farm that Plaintiffs had erred in setting the timeframe for certain of their requests, and that any requests having a start date of August 29, 1995 instead should have had a start date of August 29, 2005.

beyond what State Farm has already offered and/or provided, and further submits that Plaintiffs' request to depose Messrs. Richter, Gaubert, and Phillips should be quashed.

### Argument

I.   **The Legal Standard for a Motion for Protective Order and Motion to Quash.**

It long has been recognized that "discovery does have 'ultimate and necessary boundaries.'" *Front-Line Promotions & Marketing v. Mayweather Promotions, Inc.*, No. 08-3208, 2009 WL 928568 at * 2 (E.D. La. April 2, 2009) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Federal Rule of Civil Procedure 26(b)(2)(C) provides for limitation of discovery on motion of a party to impose appropriate limits to the "frequency or extent" of discovery. Specifically, such limitations *must* be imposed under Rule 26(b)(2)(C) when:

> (i) the discovery sought is unreasonably cumulative or duplicative . . .;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

As the plain text of Rule 26 makes clear, a party faced with discovery that suffers the defects enumerated above is *entitled* to relief from the Court. Here, State Farm is entitled to the Court's protection for numerous reasons. First, much of the discovery that Plaintiffs are now pursuing is, indeed, highly duplicative and cumulative of prior discovery. Second, to the extent the discovery does not suffer *that* defect, the discovery demands information that is simply unrelated to the issue of whether Plaintiffs were paid the benefits they were entitled to receive under their homeowners insurance policy. It is clear that protection should be ordered under

Rule 26 when a party has served discovery that "'strays from the claims or defenses being asserted.'" *Thibault v. Bellsouth Tel., Inc.*, No. 07-200, 2008 WL 4808893 at * 2 (E.D. La. Oct. 30, 2008) (quoting *Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 500 (S.D. Ind. 2003)). And finally, the additional discovery that Plaintiffs demand not only seeks irrelevant information, but it also would impose substantial burden on State Farm and result in an expenditure of resources wholly disproportionate to the very modest claimed damages that Plaintiffs have identified here, while doing nothing to advance the resolution of this case. *See id.* at *7 (in plaintiff's individual suit demanding overtime pay for splicing work, and in absence of class allegations, burden of discovery demanding production of Bell-South's documentation regarding its capital and operating expenditures and its gross payroll expenses for all employees who performed splicing work far outweighed any need that plaintiff had for the information).

II.     **Good Cause Exists for Entry of A Protective Order.**

    A.     **Plaintiffs' Duplicative Discovery Requests Should Be Quashed.**

Several of Plaintiffs' discovery requests demand items that State Farm produced to Plaintiffs in full during the class certification phase of this case, and which Plaintiffs accordingly have had in their possession for more than a year. And Plaintiffs could not simply have overlooked the fact of State Farm's prior production, given that much of this material was introduced into evidence during the class certification phase of this case and further has been the subject of extensive motion practice related to confidentiality issues:

- **Interrogatory No. 4 and Rule 30(b)(5) Request No. 13** – demanding identification and copies of all claim payments made to Plaintiffs, although the payment documentation was already produced and Plaintiffs have already testified regarding what payments they received;

- **Request No. 3** – demanding production of the flood claim file for Plaintiffs' loss, although that was produced to Plaintiffs more than a year ago;

- **Rule 30(b)(5) Request No. 11** – demanding production of Plaintiffs' insurance policy, though that was produced to Plaintiffs' with State Farm's initial disclosures herein;

- **Rule 30(b)(5) Request No. 12** – all documents relating to State Farm's communications with State Farm regarding their claim, although State Farm produced Plaintiffs' claim files long ago;

- **Rule 30(b)(5) Requests Nos. 14 and 15** – demanding re-production of all documents previously produced in discovery and all pleadings filed in the case; and

- **Rule 30(b)(5) Request No. 17** – demanding production of State Farm price lists, although State Farm already produced the approximately 200 price lists to Plaintiffs more than a year ago.

State Farm should not even have been put to the expense of having to draft written responses to any of this discovery, and each of these requests should be quashed.

### B. Plaintiffs' Discovery Demands for Flood Claim Materials and Their Request to Depose Bob Phillips Should Be Quashed as Irrelevant.

During the deposition of Kathleen Schafer, Plaintiffs' counsel expressly stipulated that Plaintiffs have *no complaint* regarding the manner in which their flood claim was handled. In addition, Plaintiffs themselves have admitted that State Farm paid the full limits of their flood policy for damage to their dwelling, that State Farm paid the full limit of their flood policy for damaged contents, and that State Farm paid the full limit of their flood policy for the expense to elevate their home (ICC coverage). Nevertheless, Plaintiffs are now demanding to depose Bob Phillips, the claim adjuster who handled their flood claim, and they further are demanding that State Farm identify and produce all of its internal claim handling guidelines for flood claims. *See* Interrogatory No. 2 and Requests to Produce Nos. 3 and 4.

State Farm produced a copy of Plaintiffs' flood claim file (as discussed above) with its first production of documents in this case. In addition, during the class certification phase of this case, State Farm made an extensive production of its internal claim handling guidelines, including guideline materials relating to State Farm's handling of flood claims following

Hurricane Katrina. Since it now is clear through Plaintiffs' own stipulations and admissions that their flood claim is not at issue here, State Farm respectfully requests that the Court quash Plaintiffs' request to depose Bob Phillips and further order that State Farm need not make any further response to Plaintiffs' Interrogatory No. 2 or their Requests to Produce Nos. 3 and 4.

### C. Plaintiffs' Discovery Demands For Further Information Relating to State Farm Pricing and Their Requests to Depose Messrs. Richter and Gaubert Should Be Quashed.

When this case was still framed as a proposed class action, State Farm produced a substantial volume of information to Plaintiffs regarding its use of pricing information from Xactware. State Farm produced copies of its contracts with Xactware, documents showing the manner in which State Farm's claims adjusters use Xactimate software from Xactware, the manner in which State Farm reviewed pricing information from Xactware for use in Louisiana following Katrina, the hundreds of price lists that State Farm made available for its claim handlers in Louisiana after Katrina (including the State Farm price list used by the claim adjuster who prepared the Plaintiffs' individual estimate), and extensive additional information regarding its estimating and claim handling practices. Since class certification was denied herein, however, Plaintiffs have no further need for the information they already have *received* regarding State Farm's pricing for estimates, much less a need for *further* information on those topics.

This case now involves only Plaintiffs' individual claim. Accordingly, the only discovery permissible here is discovery that relates to their individual claim. *See Thibault*, 2008 WL 4808893 at *2 (in deciding whether discovery should be allowed, the court must examine "the relationship of the requested discovery and the facts it is intended to uncover *to the specific claims and defenses raised by the parties*" (emphasis added)). It is beyond dispute here that Plaintiffs hired a general contractor and completed repairs to their home (and indeed, remodeled

it extensively in the process).[8] Because such repairs have been made, Plaintiffs *cannot* recover for underpayment of their dwelling damage claim unless they can show that the combined total they have been paid for dwelling damage under their flood and homeowners insurance policies is less than *their actual cost of repair*, and any unpaid costs are attributable to repair of wind damage covered under their homeowners policy. *See, e.g., Williams v. Allstate Indem. Co.*, No. 09-30140, 2009 WL 5183826 at *1 (5th Cir. Dec. 30, 2009).

As the above authority shows, *regardless* of the pricing that State Farm used in developing the estimate for Plaintiffs' dwelling repairs, *regardless* of how such pricing may have been developed, *regardless* of the computer software or the manuals for that software, and *regardless* of anything else regarding State Farm's estimating practices,[9] the estimate that Plaintiffs received is what it is, and Plaintiffs' actual repair costs either were or were not higher than the prices in that estimate.[10] That actual repair cost – and *not* a "market" price – is the only measure for determining the issues of liability and what damages, if any, Plaintiffs might recover. The question of "market" price is simply irrelevant here, as is the issue of whether State Farm ever owned any stock in Xactware. For all of the foregoing reasons, State Farm should

---

[8] After Hurricane Katrina, the Schafers chose to engage in an extensive remodeling and expansion of their home rather than restoring it to pre-loss condition. They built a two-story, 1150 square foot addition to the home that now houses Mr. Schafer's business office and boasts such amenities as a conference room, a fully appointed kitchen, a powder room, and a covered porch. The interior of the pre-existing space was also substantially renovated, including reconfiguration of an interior staircase, construction of a new fireplace, and removal of an interior wall.

[9] *See* Interrogatory No. 3; Request No. 1; Rule 30(b)(6) Topics Nos. 16-23; Rule 35 Requests Nos. 16-23.

[10] In fact, the undisputed record shows that Plaintiffs simply were not harmed. Among other things, it is already established that State Farm's combined total payment of $233,499.69 for dwelling damage under Plaintiffs' flood insurance and homeowners insurance policies *exceeded by more than $40,000* the price that Plaintiffs' contractor proposed for full repair of their home to pre-loss condition.

not be required to make any further response to the "pricing"-related discovery demands that Plaintiffs have made, which consist of the following: Interrogatory No. 3; Request No. 1; Rule 30(b)(6) Topics Nos. 16-23; and Rule 30(b)(5) Requests Nos. 16, 18-23.

Likewise, this Court should quash Plaintiffs' requests to depose Mark Richter and Garrett Gaubert. Messrs. Gaubert and Richter were not claims adjusters for the Schafers' claim, and State Farm has already informed Plaintiffs that neither individual had any involvement in assisting with the adjustment of Plaintiffs' individual insurance claim. To the extent that Plaintiffs are demanding these depositions because Messrs. Richter and Gaubert both worked as Pricing Specialists for State Farm, the depositions are wholly unnecessary and should not be allowed. As discussed above, the issue in this case is whether State Farm paid a sufficient amount to cover the Plaintiffs' *actual* repair costs, regardless of where or how pricing in State Farm's price list was developed. Mark Richter's review of that price list that was in effect when the Plaintiffs' estimate was prepared thus is simply irrelevant. The demand for Mr. Gaubert's testimony goes even further afield, as he had no involvement in reviewing the State Farm price list in effect when Plaintiffs' estimate was prepared. State Farm has already offered to present a corporate representative witness competent to testify regarding the specific prices that appear in the estimate that was prepared for the Schafers. Nothing further should be required of State Farm.

    **D.    Plaintiffs' Discovery Demands Regarding State Farm's General Business Practices Should Be Quashed as Duplicative and Irrelevant.**

During the initial phase of discovery herein, when this case was still a proposed class action, State Farm produced a massive volume of documents relating to its practices and procedures in handling homeowners insurance claims in Louisiana following Hurricane Katrina. State Farm's production included more than 30 of its internal Operation Guides, internal training

materials for estimation of dwelling repair costs, internal training materials for adjustment of claims, and extensive additional internal guidance documents provided to claim handlers following Hurricane Katrina.  Those materials comprise tens of thousands of pages of documents.  In addition, State Farm has already produced corporate representative witnesses to testify regarding its general claim handling practices in Louisiana following Hurricane Katrina.

Since State Farm's prior production, the shape of this case has changed.  Plaintiffs' class certification motion has been denied, and they now are only entitled to pursue an *individual* lawsuit regarding State Farm's handling of their *individual* homeowners insurance claim.  Likewise, the scope of permissible discovery now must focus on the specific alleged circumstances underlying Plaintiffs' action.  *See Thibault*, 2008 WL 4808893 at *7 (disallowing broad discovery of defendant's general business practices where plaintiff was only pursuing an individual claim for modest damages, and breadth of discovery that plaintiff sought would impose an undue and disproportionate burden on the defendant); *see also Eloie v. Allstate Ins. Co.*, No. 07-4434, 2008 WL 4747214 at *6 (E.D. La. Oct. 17, 2008) (discovery demanding production of broad information regarding defendant's general claim handling and business practices was objectionable as it sought data unrelated to the limited issues raised in the plaintiff's individual post-Katrina suit for additional homeowners insurance benefits).

As noted above, Plaintiffs' complain of just three, discrete matters *at most*:  (i) whether the pricing in State Farm's estimate for their dwelling repair costs was "too low"; (ii) whether Plaintiffs are owed further payment for damaged contents; and (iii) whether State Farm fully paid Additional Living Expense benefits to them.  Notwithstanding the narrow scope of these issues, and notwithstanding the massive production that State Farm *already* made to them regarding its

homeowners insurance claim handling practices in Louisiana following Hurricane Katrina, Plaintiffs have now demanded the following, entirely irrelevant information:

- A witness to testify about State Farm's document retention policy and all documents relating to that policy (*see* Rule 36 Topic No. 1 and Rule 30(b)(5) Request No. 1);

- A witness to testify about State Farm's procedures for creating and maintaining claim files and all documents relating to those procedures (*see* Rule 36 Topic No. 2 and Rule 30(b)(5) Request No. 2);

- A witness to testify about State Farm's development of its claim handling guidelines and training materials for claim handlers and all documents relating to those matters (*see* Rule 36 Topic No. 3 and Rule 30(b)(5) Request No. 3);

- A witness to testify about State Farm's job qualifications, hiring and promotion of claim handlers and all documents relating to those matters (*see* Rule 36 Topic No. 4 and Rule 30(b)(5) Request No. 4);

- A witness to testify about State Farm's training of claim handlers and all documents relating to those matters (*see* Rule 36 Topic No. 5 and Rule 30(b)(5) Request No. 5);

- A witness to testify about State Farm's general practices in handling homeowners insurance claims following Hurricane Katrina and all documents relating to those matters (*see* Rule 36 Topic No. 6 and Rule 30(b)(5) Request No. 6);

- A witness to testify about State Farm's use and "training" of experts retained for adjustment of individual claims (although no such experts were used in Plaintiffs' claim) and all documents relating to those matters (*see* Rule 36 Topics Nos. 7-9 and Rule 30(b)(5) Requests Nos. 7-9);

- A witness to testify about State Farm's practices in establishing reserves and all documents relating to those matters (*see* Rule 36 Topic No. 10 and Rule 30(b)(5) Request No. 10);

- A witness to testify about every document produced in discovery to date, regardless of subject matter and regardless of whether the materials were produced by State Farm (*see* Rule 36 Topic No. 14); and

- A witness to testify about every pleading filed in the case, regardless of its subject matter and regardless of which party filed the pleading (*see* Rule 36 Topic No. 15).

State Farm has objected to all of this discovery as overly broad, unduly burdensome, and outside the scope of permissible discovery. Further, the discovery is improper to the extent it demands production of information that State Farm already produced to Plaintiffs.

-12-

1011071v.1

In its response to these and other topics in Plaintiffs' Rule 36(b) Notice, State Farm has agreed to produce a corporate representative witness competent to testify regarding (i) the manner in which Plaintiffs' individual claim was handled; (ii) the payments made to Plaintiffs in respect to their homeowners insurance claim; (iii) State Farm's communications with Plaintiffs regarding their claim; (iv) the relevant provisions of Plaintiffs' homeowners policy as applied by the adjuster(s) who handled their claim; and (v) the prices in the individual dwelling repair estimate prepared by State Farm for Plaintiffs' claim.[11]  Nothing further should be required of State Farm.

State Farm accordingly requests that this Court Order that its objections to the foregoing discovery are all sustained in full, that State Farm need not present any witness to testify as to the foregoing matters except as described in State Farm's written response to the Rule 36 Notice, and that no further production in response to these demands is required.

### E. Plaintiffs' Discovery Demands Regarding Rates and Premiums Should Be Quashed.

At no time since the inception of this case have Plaintiffs *ever* complained that State Farm's homeowners insurance rates were improper in any way, or that the premiums that they paid for their homeowners coverage were excessive.  Rather, their complaint has been that State Farm's payment of benefits under their homeowners insurance policy supposedly was inadequate.  Now, however, Plaintiffs have served an Interrogatory demanding that State Farm explain its practices in setting homeowners insurance rates, and has served two Requests for Admission on that same irrelevant topic.  *See* Interrogatory No. 5, Requests to Admit Nos. 1 and 2.

---

[11] This offer is set forth in State Farm's responses to Rule 30(b)(6) Topics Nos. 2, 3, 6, 10, 11, 12, 13, 14, 15, 16, and 17.

State Farm has provided substantive responses to Plaintiffs' Requests to Admit Nos. 1 and 2, along with accompanying objections. Sate Farm further has objected to Interrogatory No. 5 on the grounds that it demands irrelevant information. Providing further response to this set of requests would impose significant and undue burden on State Farm, but would yield no information pertinent to Plaintiffs' remaining claims here. State Farm requests that the Court sustain its objections and Order that no further response is required to Interrogatory No. 5 or Requests to Admit Nos. 1 and 2.

**F.    Plaintiffs' Discovery Demands Regarding State Farm's Retention and Use of Consultants Should Be Quashed.**

A substantial number of the Topics and document requests in Plaintiffs' Rule 30(b)(5) and Rule 30(b)(6) Notices demand information regarding State Farm's retention and use of "consultants." In addition to the other objections set forth in State Farm's written responses to these demands, the information sought bears no relation to Plaintiffs' individual claim here, and there is no justification for Plaintiffs' demand for it.

As demonstrated above, the question of whether State Farm may owe Plaintiffs additional payment for the cost to repair their home does not raise the question of what consultants State Farm may have hired at some undefined period in the past, either for "claim handling valuation" or any other purpose. The question underlying Plaintiffs' claims here instead requires only a simple comparison between the amounts that Plaintiffs received from State Farm, on the one hand, and their *actual* cost to repair the wind damage to their home, on the other. Thus, Plaintiffs' demands for every document that State Farm exchanged with consultants over the years, and its contracts with those consultants, should be quashed. *See* Rule 30(b)(6) Topics Nos. 24-26 and Rule 30(b)(5) Requests Nos. 24-26.

Similarly, this Court should quash Plaintiffs' numerous discovery demands for documents and information that State Farm may have exchanged with consulting firm McKinsey & Co. *See* Rule 30(b)(6) Topics Nos. 28-29 and 31-33, and Rule 30(b)(5) Requests Nos. 29-33. State Farm has already demonstrated that any consulting arrangements that State Farm may have had with that entity over the years are irrelevant here by providing Plaintiffs with the sworn affidavit of a corporate representative witness affirming that "McKinsey & Co. has not provided any services or documents to State Farm in connection with the adjustment or handling of Hurricane Katrina property claims." *See* Affidavit of W. Gourgues, attached hereto as Ex. 3. Accordingly, no further response should be required of State Farm, and these discovery demands likewise should be quashed.

### G. State Farm's Responses to the Remaining Demands Should Be Deemed Sufficient.

State Farm has already provided or offered to provide specific information in response to many of Plaintiffs' discovery demands. In response to Plaintiffs' request for identification of all individuals who assisted in handling Plaintiffs' individual claim, State Farm has properly referred Plaintiffs to the claim file as the source of responsive information. *See* Interrogatory No. 1. In response to Plaintiffs' demands for information regarding State Farm's trial experts, State Farm has confirmed that it will make the disclosures required under Rule 26 in accordance with the Scheduling Order already entered herein. *See* Interrogatories Nos. 6 -7 and Request No. 2. State Farm also confirmed that it has no responsive information to provide as to Rule 30(b)(6) Topic No. 34 or Rule 30(b)(5) Request No. 34 because it did not have a "Zero Sum Economic Game." And, as discussed above, State Farm has offered to make a corporate representative witness available to testify regarding the handling of Plaintiffs' individual claim, in response to several of the Rule 30(b)(6) Topics. *See* discussion *supra* at p. 10 and n. 8.

Likewise, State Farm has provided sworn answers to all of Plaintiffs' Requests to Admit. As noted above, no further responses should be required as to Requests to Admit Nos. 1 and 2 since those relate to premium computation and rate development issues that are not pertinent to this case. State Farm will supplement its response to Requests to Admit Nos. 6 and 7 in light of additional information that Plaintiffs have now provided in response to State Farm's prior objections. As for the remainder of State Farm's responses to these Requests should be deemed sufficient, as each was properly answered.

1011071v.1

**Conclusion**

For all of the foregoing reasons, State Farm respectfully requests that this Court enter all the relief that State Farm has requested herein.

Dated:  March 17, 2010

Respectfully submitted,

*/s/ J. Dalton Courson*
Wayne J. Lee, 7916, T.A.
Michael Q. Walshe, Jr., 23968
J. Dalton Courson, 28542
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Fax:  (504) 581-3361
Email:    wlee@stonepigman.com
             mwalshe@stonepigman.com
             dcourson@stonepigman.com
and
Joseph A. Cancila, Jr. (admitted *pro hac vice*)
Heidi Dalenberg (admitted *pro hac vice*)
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606-6473
Telephone: (312) 258-5500
Fax:  (312) 258-5600
Email:    jcancila@schiffhardin.com
             hdalenberg@schiffhardin.com

*Attorneys for State Farm Fire and Casualty Company*

## **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Defendant State Farm Fire's Memorandum in Support of its Cross-Motion for Protective Order has been served upon all counsel of record by CM/ECF filing, this 17th day of March, 2010.

*/s/ J. Dalton Courson*