# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN AND GORDON SCHAFER, | * | NO. 06-cv-8262 |
| | * | |
| Plaintiffs, | * | |
| | * | |
| VERSUS | * | JUDGE LANCE AFRICK |
| | * | |
| STATE FARM FIRE AND CASUALTY COMPANY AND XACTWARE SOLUTIONS INC., | * | MAGISTRATE CHASEZ |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |

*********************************************

## PLAINTIFFS' CONSOLIDATED RESPONSE TO STATE FARM AND XACTWARE'S APPEAL OF MAGISTRATE CHASEZ'S ORDER DECLASSIFYING CERTAIN DOCUMENTS

NOW INTO COURT come Plaintiffs, through undersigned counsel, who respectfully submit the instant Consolidated Response to the Motion to Appeal Magistrate Chasez's Order Declassifying Certain Documents.

## I.     INTRODUCTION.

Plaintiffs filed a Motion to Declassify thousands of pages of documents that were neither trade secrets nor proprietary information.  In general terms, the documents can be categorized as follows: (1) the State Farm and Xactware price lists; (2) the pricing white paper; (3) fourteen (14) emails; (4) three corporate representative depositions; (5) The deposition of Mr. Economu; and (6) Plaintiffs counsel's Powerpoint presentation and all the documents referenced therein.

In the broadest terms, the subject documents concern stale data and State Farm's use of these

data in defrauding Louisiana citizens after Hurricanes Katrina and Rita.  As State Farm has admitted in at least one other case, it manipulates the unit prices from Xactware.  The end product of this manipulation is the State Farm price lists. The manner in which State Farm went about it is contained in emails, corporate representative depositions, and the power point presentation.  Stale data is not protected data.  Xactware has admitted in an affidavit submitted to Magistrate Chasez that it does not charge (or profit from) the service of providing outdated pricelists.

Moreover, much of the substance of the subject documents has been testified to without a protective order in the case <u>Brown v. State Farm Fire & Cas. Co.</u>, No. 06-07269 (Orleans Parish, Civil Dist. Ct.) (Medley, C.J.).  In that case, State Farm's corporate representative Chris Lapinskie testified to State Farm's policy, practice, and procedure for manipulating the unit prices, claim function keys, and State Farm lap top issued computers.  Lapinskie also testified concerning the use of XactAnalysis, XactNet, XactTotal, and claims software.

## II.    MAGISTRATE CHASEZ'S ORDER WAS NEITHER CLEARLY ERRONEOUS NOR CONTRARY TO LAW.

Because Magistrate Chasez's order concerned a non-dispositive discovery issue, this Court must review the objections pursuant to a "clearly erroneous" or "contrary to law" standard.  FED. R. CIV. PROC. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.").  Particular deference is accorded to magistrate judges on discovery issues.  <u>Costa v. County of Burlington</u>, 584 F.Supp.2d 681 (D.N.J. 2008).  The party who bears this significant burden of proof is the objector.  <u>See Kounelis v. Sherrer</u>, 529 F.Supp.2d 503 (D.N.J. 2008).

There is also a distinction in the burden of proof between whether the perceived error was

one of law or fact.  If the perceived error is one of law, then the objector must satisfy the burden that the Magistrate's order was "contrary to law," i.e., fails to apply or misapplies relevant statutes, case law, or rules of procedure.  DeFazio v. Wallis, 459 F.Supp.2d 159 (E.D.N.Y. 2006).

If the perceived error is one of fact, then the objector must prove that the Magistrate's Order was "clearly erroneous."  A Magistrate's Order is clearly erroneous when the district court is left with the "definite and firm conviction that a mistake has been made."  Westefer v. Snyder, 472 F.Supp.2d 1034 (S.D. Ill. 2006).

In this case, Magistrate Chasez's factual determinations concerning the "staleness" of the data are not clearly erroneous and, as a result, her legal conclusions are sound.

## A. The Order Appealed From Was Just One of Many in Magistrate Chasez's Extensive and Thorough History of Discovery Rulings in This Case.

The Motion to Declassify was obviously not Magistrate Chasez's first dealing with discovery issues in this case. Magistrate Chasez was intimately involved in all manner of discovery issues before and after this case proceeded as a putative class action.  Most importantly, Magistrate Chasez is the judge who signed the Protective Order in this case – the very order that formed the basis of Plaintiffs' Motion to Declassify.  See 9/16/08 Order granting Protective Order (Chasez, M.J.) (Rec. Doc. 111).

Magistrate Chasez has even ruled upon the parameters and strictures of the Protective order before.  After the Protective Order was entered, Plaintiffs' filed a Motion to Amend/Correct Protective Order.  Rec. Doc. No. 115.  Magistrate Chasez ordered that Plaintiffs counsel could use the documents produced in Schafer in other State Farm Katrina cases, as long as notice was provided. Rec. Doc. 120.  In the event that State Farm did not consent to the use of those documents

in the other State Farm cases, the issue could be raised with the presiding judge in the other cases. Id.

State Farm and Xactware appealed Magistrate Chasez's order amending the protective order, as it has done in this the latest of Judge Chasez's discovery rulings. Rec. Doc. 121. Judge Duval denied the Appeal, finding that the Magistrate's order was not clearly erroneous. Rec. Doc. 177.

Magistrate Chasez has also addressed numerous other discovery motions apart from the Protective Order. Magistrate Chasez has presided over the following discovery motions: (1) Motion to Compel Discovery filed by Xactware (Rec. Doc. 133); (2) Motion to Compel State Farm filed by Plaintiffs (Rec. Doc. 135); (3) Motion to Compel Xactware filed by Plaintiffs (Rec. Doc. 137); (4) Motion to Declassify Documents (Rec. Doc. 224); (5) Motion for Return of Certain Confidential Documents by Xactware (Rec. Doc. 227); (6) Motion to Compel Discovery and Depositions filed by Plaintiffs (Rec. Doc. 271); (7) Cross Motion for Protective Order by State Farm (Rec. Doc. 272);(8) Motion to Quash Notice of Deposition by Mathew Wilson (Rec. Doc. 289); and (9) Motion to Declassify Remaining Pricelists filed by Plaintiffs (Rec. Doc. 282).

As can be seen above, Magistrate Chasez has signed and/or ruled on the Protective Order at least four times. She signed the Protective Order, amended the Protective Order, Refused to Compel the Return of the Documents, and declassified various documents. Magistrate Chasez has issued numerous and onerous discovery rulings ranging from the vanilla motions to compel to fashioning a unique methodology for using Shafer documents in other Katrina litigation. Due to the extensive motions practice for discovery, Magistrate Chasez has expended a significant amount of energy and developed a quite detailed understanding of the theories in this case and the documents that have been produced.

In this Appeal, it needs to be remembered that Magistrate Chasez did **not** grant Plaintiffs' motion in toto.  Rather, Magistrate Chasez reviewed every single one of the requested documents and carefully determined which documents she maintained contained protected information and which documents did not.  Although she declassified many of the requested documents, Magistrate Chasez did not declassify the following: (1) State Farm Operational Guide ("OG") 135; (2) State Farm Operations Guides; (3) Kuntz Affidavit; (4) Xactimate OG; and (5) Xactimate 24 OG. Order at 6-7.

Magistrate Chasez combed through the depositions to determine what could possibly be protected.  For the depositions of James Carlyle Burt and Dan Kuntz, she painstakingly identified the page and line numbers of protected testimony.  Id. at 3-5.  Not only is this type of review painstaking and tedious, but it comes from a deep-seeded understanding of the case from issuing numerous discovery orders over the past three years.

**B.     Defendants Cannot Satisfy Their Burden of Proof on Appeal Just Like They Could Not Satisfy Their Burden of Proof Before Magistrate Chasez.**

Defendants have a double burden issue in this Appeal that they are unable to overcome. They failed to satisfy their burden before Magistrate Chasez, and they fail to satisfy their burden in the Appeal that Magistrate Chasez was "clearly erroneous" in the first instance.[1]  Defendants' failure to meet both of these burdens is fatal.

Both State Farm and Xactware have failed to show that Magistrate Chasez's decision prove all three elements necessary for these documents to be protected.  It is State Farm and Xactware's

---

[1] According to Paragraph 19 of the Protective Order at issue, "[t]he burden shall remain with the designating party to establish that the information is a trade secret or otherwise proprietary and confidential."

5

burden to prove that the documents satisfy the following criteria: (1) a trade secret; (2) was maintained as confidential; and (3) demonstrate the release will cause a clearly defined and serious injury.

Fed. Rule Civ. Proc. 26(c) places the burden of persuasion on the party seeking protection to demonstrate a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. See United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978) (requiring "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements").

There is no absolute privilege for trade secrets and similar confidential information. Occidental Chemical Corporation v. Louisiana Public Service Commission, 2008 WL 566833 (M.D. La. 2008) (citing Centurion Industries, Inc. v. Warren Steurer and Associates, 665 F.2d 323, 325 (10th Cir. 1981)). Whether something constitutes a trade secret is a question of fact. Wyatt v. PO2, Inc., 651 So.2d 359 (La. App. 2d Cir. 3/1/95). The threshold inquiry is whether any legally protectable information exists. A trade secret is information that has independent economic value because it is not generally known or readily ascertainable and efforts are taken to maintain the information's secrecy. Id.

More specifically, according to La. R.S. 51:143 (4), of the Uniform Trade Secrets Act, trade secrets are defined as follows:

> (4)   "trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> a. derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and

> b.     is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Defendants gave Magistrate Chasez only stereotyped and conclusory statements of how the release of any information would lead to a clearly defined and serious injury.  Defendants failed to persuade Magistrate Chasez that the information Plaintiffs seek to declassify are not "trade secrets," have not been maintained as confidential, and both defendants have failed to specifically demonstrate that disclosure will cause a clearly defined and serious injury.

## 1.     Price Lists (And the Documents Related to Them) Are Stale Data and Not Trade Secrets.

Magistrate Chasez ordered the declassification of price lists and related documents. The Price lists (and emails and related documents) were over four years old and some were over two years old.  Neither State Farm nor Xactware use these pricelists anymore.  These pricelists are continuously updated every three months or more.  The pricelists are outdated data and, as such, are stale without any financial or proprietary worth:

> A claim that disclosure might result in a competitive advantage or disadvantage also is contingent upon whether the information or material sought to be protected is stale. In general, although largely a fact and case-specific inquiry, information loses its confidential nature once it becomes stale. See United States v. Int'l Bus. Machs. Corp., 67 F.R.D. 40, 49 (S.D.N.Y.1975) (holding that five-year-old information in that case was stale); Rosenblatt v. Northwest Airlines, Inc., 54 F.R.D. 21, 23 (S.D.N.Y.1971) (holding that the need for the court's protection was diminished because the information sought to be protected was one year old); Hecht v. Pro-Football, Inc., 46 F.R.D. 605, 605 (D.D.C.1969) (finding that information up to three years old was confidential and entitled to protection); United States v. Lever Bros. Co., 193 F.Supp. 254, 255-56 (S.D.N.Y.1961) (finding that information three to eight years old should not be protected), cert. denied, 371 U.S. 932, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962).

Avtel Services, Inc. v. U.S., 70 Fed.Cl. 173, 191 (Fed. Cl. 2006).

Trade secrets must be a "formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors . . . ." 3 JACK B. WEINSTEIN, WEINSTEIN'S FEDERAL EVIDENCE § 508.04 (2d ed.2009) (quoting Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1001, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)).

The language "formula, pattern, device" suggests that trade secrets are more than "sensitive business information."   Rather, trade secrets are sophisticated, innovative methods or inventions that are the result of human creativity and ingenuity.  Minter v. Wells Fargo Bank, N.A., 258 F.R.D. 118, 122, 123 (D. Md. 2009).  While each price list is a compilation of information, it is only used ONCE for a limited time (three months normally) and is then replaced by an "update" with current pricing.  They are not sophisticated, innovative methods or inventions. The price lists plaintiffs seek to declassify range in age between two and four years old.  It is not surprising that no specific showing of substantial injury could be made.

Finally, the Economou and corporate depositions are in precisely the same vein.  The focus is on the pricelists and pricing.  How was it done, who did it, under what criteria, in what way. These are the issues addressed in these materials.  And, for the reasons asserted above, none of them are trade secrets.

Just like in Weiss and Johnson, the State Farm documents here center upon the adjusting of Katrina claims and, even more narrowly, the pricing of these claims.  This information was given to thousands of adjusters who gave it to hundreds of thousands of policyholders without any restrictions.  Because of this, the pricelists (and all related documents) are not trade secrets.

The prices in these lists were published by insurance adjusters (for State Farm and other insurers) every time he/she handed an insured an estimate based upon those price lists. Most of the prices contained in these lists were published thousands of times – in fact, there were hundreds of thousands of claims (not counting flood claims) from Hurricane Katrina alone, with approximately 80% being estimated with the Xactimate program price lists, and many of those claims had multiple estimates written. Yet, State Farm and Xactware suggest those same prices must not be made public or they will be injured in some way.

In fact, State Farm's Xactimate price lists have been made public in the past without any ill effects. In Watkins et al. v. State Farm, Xactimate price lists were declassified and made public (and are still available), and neither State Farm nor Xactware suffered – other than State Farm's wrongful conduct being exposed. Watkins et al. v. State Farm Fire & Casualty Co., No. CJ-2000-303, verdict returned (Okla. Dist. Ct., Grady County April 17, 2006). See Exhibit "A" (Order vacating protective order); Exhibit "B" (list of documents declassified, page 10 showing "Xactimate Price Lists.") These lists are just outdated material and labor costs processed by Xactware (and State Farm) for publication. While the specific formula and algorithms used to process the price list information are trade secrets, the outdated output is not anymore secret than last month's stock prices.

### 2.    The Price Lists (And Related Documents) Were Not Maintained as Confidential.

State Farm had hundreds, if not thousands, of adjusters inspecting properties and creating adjuster summaries/reports. Each one of these reports contained pricelists from Xactimate. These pricelists were available to the adjusters to provide to the insureds.

Stated as simply as possible, it defies logic to argue that price lists were "maintained as

9

confidential" when they were provided to the hundreds of thousands of insureds after Katrina and Rita. State Farm did not require a single insured to sign any type of confidentiality agreement before providing them with an adjuster's report.

The same is true of the who, what, where, why, and how issues related to the price lists. Who decided whether to change them, what did State Farm use to decide whether to change them, why did State Farm decide on these pricelists, and how State Farm implemented its pricing program were also not maintained as confidential because it was all focused upon the end product, namely, what is State Farm going to decide was the market price for a particular item at a particular time.

Xactware contracted with State Farm knowing full well that State Farm would give them to State Farm insureds without any restrictions.   To be clear, Xactware provided the pricelists to State Farm with the explicit knowledge that State Farm could simply provide the unit prices (in the format of an adjuster's estimate) to State Farm clients.   State Farm had the right, under the contract, to lower the unit price, raise the unit price, or keep the prices the same.   At all times, Xactware knew (as other insurance companies did) that State Farm could provide the unit prices to its insureds, without any restrictions.         In fact, that was the very nature of the pricelists.   The very nature and very purpose of the pricelists was for them to end up in an adjuster's report to be provided to a State Farm insured as a basis for what State Farm owed in a Katrina claim.

### 3.     Defendants Have Failed to Prove That a Clearly Defined and Serious Injury Would Result from Declassification.

Defendants cannot identify the harm that would come from publishing outdated pricelists and the documents that they relate to them.   Exactly what type of economic (or any other) injury could result from showing that for the period after Katrina State Farm was charging X price for sheetrock?

10

Moreover, what type of injury would result from showing the public HOW State Farm decided to charge X price for sheetrock?

In fact, Magistrate Chasez had already viewed many similar documents from State Farm. In <u>Johnson v. State Farm Fire & Cas. Co.</u>, No. 07-1486 (E.D. La. 2/08/08) (Chasez, M.J.), Magistrate Chasez reviewed a self serving State Farm affidavit from Michael Sebald which stated that the materials were trade secrets.  <u>Id.</u> at 4.  However, this Court stated as follows:

> While it is self-serving on the part of State Farm to offer such an opinion, the Court has looked at the documents in question which appear to be <u>run-of-the-mill adjusting documents pertinent to Hurricane Katrina claims</u>.  State Farm was invited by the Court to outline why each document caused problems, if produced, and has not done so.

<u>Id.</u> at 4 (emphasis supplied).

Likewise the emails do not contain a shred of "formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors."  A good example of this is Xactware's email bates number XW 3560 (labeled "Highly Confidential").  This email discusses a particular name of a report, but does not contain specific information of what is on that report.  In fact, that email contains no more method information than what anyone with an internet connection can glean is available to any Xactware subscriber.

Additionally, the State Farm emails do not discuss anything more than general business information already made public.  Managerial structures and general information regarding business operations-the type of information sought to be protected here-fail to make the grade.  <u>Minter</u>, 258 F.R.D. at 123.  State Farm filed unprotected discovery responses in a case before this Court, which described the very information (related to Pricing Specialists) they are now suggesting is protected.

Yet, State Farm is now suggesting somehow, information it made public, is now "confidential" and injurious to its business.

State Farm seeks to protect information about its Premier Service Program, but that information is also quite public. Attached as Exhibit E, F and G are documents that detail how the program operates – including two manuals (158 page and 82 page) that is far more detailed than anything Plaintiffs seek to declassify.

The Economou and corporate depositions are in precisely the same vein. The focus is on the pricelists and pricing. How was it done, who did it, under what criteria, in what way. These are the issues addressed in these materials. And, for the reasons asserted above, none of them are trade secrets.        The clearest example of how State Farm is unable to show a real, particularized harm is to look at the <u>Watkins</u> case. While State Farm is correct that the documents unclassified in the <u>Watkins</u> case are not the exact documents sought to be declassified in this matter; State Farm fails to note the exact same nature of these documents. For instance, State Farm did have its price lists declassified in the <u>Watkins</u> case and in this matter plaintiffs seek to declassify State Farm price lists. Additionally, in the <u>Watkins</u> matter, State Farm had its operations guide, OG-783, declassified; and in this matter, plaintiffs seek to declassify what is likely newer versions of OG-783.

Despite these admissions, both State Farm and Xactware continue to suggest "significant threat to [Xactware's] business" and a "'triple threat' of competitive injury" should these price lists be declassified. Again, these vague suggestions of injury are the very type of generalized injury that cannot support protection of these price lists under the 26(c) test.

Perhaps the best known, recent example of whether an insurer has made a specific, demonstrable showing of injury is in <u>Weiss v. Allstate Ins. Co.</u>, 2007 WL 2377119 (E.D. La. 2007).

In <u>Weiss</u>, Judge Sarah Vance reasoned as follows:

> Moreover, Allstate's general assertion that it would be at a competitive disadvantage if another insurance company obtained these exhibits is not supported by any specific facts. <u>See Liljeberg Enters. Int'l, LLC v. Vista Hosp. of Baton Rouge, Inc.</u>, 2005 WL 1309158, at *2 (E.D.La. May 19, 2005) (requiring defendants moving to seal parts of judicial record to provide "specifics as to what harm would come to them if this information were not sealed"). Allstate does not point to a single document or excerpt of a document within the approximately 185 pages that comprise Exhibits 7, 31, and 31A that might be harmful to its competitive position. Its failure to do so is particularly telling given the facially benign nature of these exhibits. Exhibit 7 includes a press release, a list of publicly available phone numbers, tips to policyholders affected by Hurricane Katrina, and suggested answers for its personnel to use when responding to questions from policyholders with hurricane claims. Exhibit 31 and 31A contain customer service guidelines to be followed by Allstate personnel, including information that was intended to be passed along to customers. It is not apparent that these documents contain sensitive material of any kind. Absent elucidation from Allstate as to the specific information in these exhibits that should remain confidential, the Court refuses to seal them in their entirety based on a general request to do so.

<u>Weiss</u>, 2007 WL 2377119, at *4.

Just like in <u>Weiss</u> and <u>Johnson</u>, the State Farm documents here center upon the adjusting of Katrina claims and, even more narrowly, the pricing of these claims. This information was given to thousands of adjusters who gave it to hundreds of thousands of policyholders without any restrictions. Because of this, the pricelists (and all related documents) are not trade secrets.

Defendants will not be lose a red cent when the pricelists are in the public domain. Xactware does <u>not</u> receive an additional fee for stale price lists. Magistrate Chasez reviewed the affidavit submitted by Xactware that it does not charge any of its users for the ability to obtain stale pricelists. Since State Farm gets its pricelists from Xactware in the first instance, then State Farm, too, has not

made any showing of economic harm.  This is highlighted by State Farm's failure to identify any

use or economic benefit of pricelists that were used years ago.  State Farm gives this information

to their policyholders in the form of an adjuster's estimate.

III.     THE TESTIMONY OF DAN KUNTZ AND HARRIS ECONOMOU IS PART OF THE

         PUBLIC DOMAIN THROUGH THE UNPROTECTED TESTIMONY OF STATE

         FARM'S CORPORATE REPRESENTATIVE IN ANOTHER CASE.

         Information and documents that are in the public domain are not subject to any type of

protection.  CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1154 (D.C. Cir. 1987) (noting that if

information is in the public domain, the submitter is unable to claim confidentiality), cert. denied,

485 U.S. 977, 108 S. Ct. 1270, 99 L.Ed.2d 481 (1988).

         On December 18, 2009, undersigned took the corporate representative deposition of State

Farm in Brown v. State Farm Fire & Cas. Co., No. 06-07269, pending in Orleans Parish Civil

District Court, Chief Judge Lloyd Medley, presiding.  The deposition was not subject to a protective

order.

         As its corporate representative, State Farm proffered Christopher Lapinskie – the same

person it put on the stand as its corporate representative at the hearing on class certification.  In his

deposition, Mr. Lapinskie testified as to all manner of topics and areas of inquiry that were the

subject of Plaintiffs' Motion to Declassify as well as the depositions of Dan Kuntz and Harris

Economou.  See 1442 Deposition of State Farm Fire & Cas. Co., attached in globo as Exhibit "C".

         The most explosive testimony confirms what has been the central allegation in this case (and

in  which the bulk of the documents that were the subject of the Motion to Declassify address),

namely, that State Farm takes the pricelists that Xactware tells the public (and its customers) reflect

14

market prices, and State Farm changes them.

State Farm testified that it licensed the software from Xactware (the makers of Xactimate) and that it would receive the pricelists separately of which it could reduce the unit prices.  Id. at 30. He stated that Mark Richter, the pricing specialist for State Farm, was the one who suggested decreasing the unit price for roofing prices in Louisiana.

He testified as follows:

QUESTION:   And the price lists originate from Xactware and then are sent to State Farm; correct?

ANSWER:     The price list that State Farm uses as their price list is based on a price list that we receive from Xactware; yes.

QUESTION:   And then State Farm pursuant to its agreement with Xactware has the option of increasing the unit price, lowering the unit price or keeping the unit price the same, correct?

ANSWER:     Once we receive the price list from Xactware, we have the ability to make changes to that price list, yes, sir.

Id. at 30.

As it relates specifically to what State Farm did to the insured's price list, the corporate representative testified as follows:

QUESTION:   And in terms of the Brown claim, and the unit items identified in the Brown claim, did State Farm keep those unit prices the same from Xactware, did they increase the unit prices or decrease the unit prices?

ANSWER:     There were two unit prices that were revised by State Farm.  That would be the removal of roofing and the replacement of roofing.  In my preparation for this

deposition, I asked whether that was an increase or a decrease and it was a decrease in price.

QUESTION:   Did you ask – And this is Mark Richter who told you this?

ANSWER:      The information I just relayed was information I received from pricing specialist Mark Richter.

Id. at 30-31.

**In other words, Mr. Lapinskie testified that State Farm reduced the unit price for repairing and replacing 25 year tab roofing – one of the single largest line items on a Katrina wind claim.**

Mr. Lapinskie even testified concerning State Farm's policy, practice, and procedure for how to use the Xactimate program, how the Xactimate estimate is uploaded into State Farm's servers, and how it is stored.  Id. at 77-80.  He testified concerning the coding of the Xactimate price lists, Xactimate's formatting, and how base service charges are identified.  Id. at 170-173.

Mr. Lapinski testified concerning XacTotal, id. at 5, 210-212, 231-232, 234.  He testified concerning XactAnalysis, id. at 84-87, 93.

 Mr. Lapinski provided extensive testimony concerning how the claims file is maintained, id. at 58-59, the format of the claims file, id. at 59-60, State Farm's claims software identified as Claim Service Record ("CSR"), id. at 60-65, the activity log, id. at 64, the claim function keys, id. at 66-67, and State Farm issued lap top computers, id. at 70-71.

Much of the documents that are the subject of the Appeal concern the very subject matter that Mr. Lapinskie addressed in the Brown deposition.  The central subject in all of the documents that are requested to be declassified bear upon State Farm's misconduct of reducing the unit prices

16

it receives from Xactware.  The Xactware pricelists, the State Farm pricelists, the communications by Mark Richter, the deposition of Mr. Economou are all NOT trade secrets or proprietary information if another State Farm representative is testifying to there scheme in other cases filed in state court.

## IV.   THE SPREADSHEET WAS NEVER DESIGNATED AS CONFIDENTIAL AND PORTIONS OF THE SPREADSHEET WERE FILED INTO THE RECORD OVER ONE YEAR AGO.

One quick glance at the Spreadsheet and it becomes immediately apparent that it was never designated as confidential.  There is no "confidential" stamp anywhere on the Spreadsheet.  More importantly, the information on the spread sheet was provided to State Farm's experts James Adrian and Ann Gron who took the information and incorporated into their expert reports and attached it to their expert reports – again, without the designation that these reports were deemed confidential.


On February 13, 2009, Plaintiffs challenged the Report by filing a Motion to Exclude Adrian's Testimony.  Rec. Doc. 158.  Plaintiffs attached the Report to their motion which contained a lengthy analysis of the information in the Spreadsheet.  Attached to the Report was information contained in the Spreadsheet used by and relied upon by State Farm's expert.

On March 13, 2009, Plaintiffs filed a Supplemental Memorandum in Support of their Motion to Exclude Adrian's Testimony.  Rec. Doc. 180.  Plaintiffs attached the Affidavit of State Farm's expert Ann Gron who was used to provide a representative random sampling of State Farm's Katrina and Rita claims.  Attached to Ms. Gron's Affidavit was a Spreadsheet containing the same information as the Spreadsheet State Farm seeks to declare as confidential.

17

Both Adrian's and Gron's Affidavits and their attached spreadsheets address the exact same information as in the spreadsheet – name, claim number, zip code, amount paid, etc. Contrary to State Farm's assertion, there is no address on the spreadsheet. Rather, it simply provides the city and zip code.          State Farm's experts reports and their materials have been in the record for well over a year. State Farm did not object over a year ago when they were filed in the record. State Farm is trying to create a privileged document where one did not exist in the first instance.

In any event, the Spreadsheet does not contain any information that is even remotely sensitive, privileged, or proprietary. See Prudential Insurance Company of America v. Baker, 499 N.E.2d 1152 (Ind. App. 3rd 1986) (finding that information regarding policyholders is generally not confidential since that information is "readily obtainable from the policyholder, the policies, and from the insurance company"). There is simply no information on that spread sheet that identifies State Farm insureds. This was done on purpose. Plaintiffs requested this information in a format in which no identifying information could be gleaned. There are no names, no addresses, and no social security numbers on the Spreadsheet.

## V.       THE PRICING SPECIALIST DOCUMENTS AND EMAILS ARE LITTLE MORE THAN STATE FARM'S STRATEGY TO DEFRAUD LOUISIANA POLICYHOLDERS AFTER KATRINA AND RITA.

Magistrate Chasez did not commit reversible error in finding that these documents were in no way proprietary. The pricing specialist documents merely outline the duties and responsibilities of the pricing specialist. Much of that information was testified to by Mr. Lapinskie in his unprotected deposition in the Brown case, discussed supra.

The emails are just plain great. A reading of these emails demonstrate that there is no

18

discussion of top secret information. No review of the "coke formula." No policyholders personal information. No information about any individual claimant.

Just a couple of guys talking about pricing . . . .

## VI.   CONCLUSION.

Plaintiffs respectfully submit that State Farm and Xactware's Appeal from Order Declassifying Certain Documents be denied.   The subject documents concern stale data, are not trade secrets or proprietary data, and already exist in the public domain.

Respectfully Submitted,

_____/s/ Soren Gisleson_____
**STEPHEN J. HERMAN**, La. Bar No. 23129
**SOREN E. GISLESON**, La. Bar No. 26302
**HERMAN, HERMAN, KATZ & COTLAR, LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 561-6024
E-Mail: sherman@hhkc.com

**AND**

**MARK P. GLAGO**, La. Bar No. 25395
**Glago Law Firm, LLC**
One Canal Place - 17th Floor
365 Canal Street - Suite 1700
New Orleans, Louisiana 71030
Telephone: (504) 599-8666
Fax No.: (504) 599-8699
Email: Mglago@GlagoLawFirm.com

**AND**

**T. CAREY WICKER, III**, La. Bar No. 13450
**J. ALEX WATKINS,** La. Bar No. 29472
**CAPITELLI & WICKER**
1100 Poydras Street
2950 Energy Centre
New Orleans, Louisiana  70163-2950
Telephone:  (504) 582-2425
Fax No. (504) 582-2422
E-Mail: JAW@Capitelliandwicker.com

**COUNSEL FOR PLAINTIFFS.**

## CERTIFICATE  OF  SERVICE

I HEREBY CERTIFY that the above and foregoing Motion will be filed electronically with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system thereby serving notice on all counsel this 13th day of April, 2010.

_____ /s/ Soren Gisleson_____

.