## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN AND GORDON SCHAFER, | * | NO. 06-cv-8262 |
| Plaintiffs, | * | |
| VERSUS | * | JUDGE LANCE AFRICK |
| STATE FARM FIRE AND CASUALTY COMPANY AND XACTWARE SOLUTIONS INC., | * | MAGISTRATE CHASEZ |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFFS' CONSOLIDATED RESPONSE TO STATE FARM AND XACTWARE'S APPEAL OF MAGISTRATE CHASEZ'S SECOND ORDER DECLASSIFYING PRICE LISTS

NOW INTO COURT come Plaintiffs, through undersigned counsel, who respectfully submit this Consolidated Response to both State Farm and Xactware appeals of Magistrate Chasez's second order declassifying price lists. Plaintiffs adopt, as if copied herein, their first consolidated response and reply briefs to defendants' first appeal of Magistrate Chasez's first declassification order. While the underlying case has settled, these appeals remain for final resolution.

### I. MAGISTRATE CHASEZ'S ORDER WAS NEITHER CLEARLY ERRONEOUS NOR CONTRARY TO LAW.

Magistrate Chasez's order was not clearly erroneous because it was based upon a case specific factual determination. Because Magistrate Chasez's order concerned a non-dispositive discovery issue, this Court must review the objections pursuant to a "clearly erroneous" or

"contrary to law" standard. FED. R. CIV. PROC. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). Particular deference is accorded to magistrate judges on discovery issues. Costa v. County of Burlington, 584 F.Supp.2d 681 (D.N.J. 2008). The party who bears this significant burden of proof is the objector. See Kounelis v. Sherrer, 529 F.Supp.2d 503 (D.N.J. 2008).

There is also a distinction in the burden of proof between whether the perceived error was one of law or fact. If the perceived error is one of law, then the objector must satisfy the burden that the Magistrate's order was "contrary to law," i.e., fails to apply or misapplies relevant statutes, case law, or rules of procedure. DeFazio v. Wallis, 459 F.Supp.2d 159 (E.D.N.Y. 2006).

If the perceived error is one of fact, then the objector must prove that the Magistrate's Order was "clearly erroneous." A Magistrate's Order is clearly erroneous when the district court is left with the "definite and firm conviction that a mistake has been made." Westefer v. Snyder, 472 F.Supp.2d 1034 (S.D. Ill. 2006).

In this case, Magistrate Chasez's factual determinations concerning the "staleness" of the price lists are not clearly erroneous and, as a result, her legal conclusions are sound.

While the underlying case has now resolved, before resolution, Magistrate Chasez had several dealings with discovery issues in this case. Magistrate Chasez was intimately involved in all manner of discovery issues before and after this case proceeded as a putative class action. Most importantly, Magistrate Chasez is the judge who signed the Protective Order in this case – the very order that formed the basis of Plaintiffs' Motion to Declassify. See 9/16/08 Order granting Protective Order (Chasez, M.J.) (Rec. Doc. 111).

Magistrate Chasez has even ruled upon the parameters and strictures of the Protective order before. After the Protective Order was entered, Plaintiffs' filed a Motion to Amend/Correct Protective Order. Rec. Doc. No. 115. Magistrate Chasez ordered that Plaintiffs counsel could use the documents produced in Schafer in other State Farm Katrina cases, as long as notice was provided. Rec. Doc. 120. In the event that State Farm did not consent to the use of those documents in the other State Farm cases, the issue could be raised with the presiding judge in the other cases. Id.

State Farm and Xactware appealed Magistrate Chasez's order amending the protective order, as it has done in this the latest of Judge Chasez's discovery rulings. Rec. Doc. 121. Judge Duval denied the Appeal, finding that the Magistrate's order was not clearly erroneous. Rec. Doc. 177.

Magistrate Chasez has also addressed numerous other discovery motions apart from the Protective Order. Magistrate Chasez has presided over the following discovery motions:

(1) Motion to Compel Discovery filed by Xactware (Rec. Doc. 133);

(2) Motion to Compel State Farm filed by Plaintiffs (Rec. Doc. 135);

(3) Motion to Compel Xactware filed by Plaintiffs (Rec. Doc. 137);

(4) Motion to Declassify Documents (Rec. Doc. 224);

(5) Motion for Return of Certain Confidential Documents by Xactware (Rec. Doc. 227);

(6) Motion to Compel Discovery and Depositions filed by Plaintiffs (Rec. Doc. 271);

(7) Cross Motion for Protective Order by State Farm (Rec. Doc. 272);

(8) Motion to Quash Notice of Deposition by Mathew Wilson (Rec. Doc. 289); and

(9) Motion to Declassify Remaining Pricelists filed by Plaintiffs (Rec. Doc. 282).

As can be seen above, Magistrate Chasez has signed and/or ruled on the Protective Order at least four times.  She signed the Protective Order, amended the Protective Order, Refused to Compel the Return of the Documents, and declassified various documents.  Magistrate Chasez has issued numerous and onerous discovery rulings ranging from the vanilla motions to compel to fashioning a unique methodology for using Shafer documents in other Katrina litigation.  Due to the extensive motions practice for discovery, Magistrate Chasez has expended a significant amount of energy and developed a quite detailed understanding of the theories in this case and the documents that have been produced.

In this Appeal, it needs to be remembered that Magistrate Chasez did **not** grant Plaintiffs' motion in toto.  Rather, Magistrate Chasez declassified price lists pre-dating the last quarter of 2007.  Not only was this determination based upon a case-specific factual determination on the staleness of the price lists, but also cames from a deep-seeded understanding of the case from issuing numerous discovery orders over the past three years.

1.      **Price Lists Are Stale Data and Not Trade Secrets.**

Magistrate Chasez ordered the declassification of price lists ranging from two to four years old. The price lists are outdated data and, as such, are stale without any financial or proprietary worth:

> A claim that disclosure might result in a competitive advantage or disadvantage also is contingent upon whether the information or material sought to be protected is stale. **In general, although largely a fact and case-specific inquiry, information loses its confidential nature once it becomes stale**. See United States v. Int'l Bus. Machs. Corp., 67 F.R.D. 40, 49 (S.D.N.Y.1975) (holding that five-year-old information in that case was stale); Rosenblatt v. Northwest Airlines, Inc., 54 F.R.D. 21, 23 (S.D.N.Y.1971) (holding that the need for the court's protection was diminished because the information sought to be protected was one year old); Hecht v. Pro-Football, Inc., 46 F.R.D. 605, 605 (D.D.C.1969) (finding that information up to three years old was confidential and

> entitled to protection); <u>United States v. Lever Bros. Co.</u>, 193 F.Supp. 254, 255-56 (S.D.N.Y.1961) (finding that information three to eight years old should not be protected), cert. denied, 371 U.S. 932, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962).

<u>Avtel Services, Inc. v. U.S.</u>, 70 Fed.Cl. 173, 191 (Fed. Cl. 2006). (Emphasis added).

Magistrate Chasez described many of these price lists as "stale as old bread." However, importantly, Magistrate Chasez **did not declassify all of the pricelists** at issue. Xactware claimed that it still derived value from the old prices through the sale of the data in its Industry Trend Reports. <u>Contrary to Xactware's assertion</u>, Plaintiffs provided evidence that the Industry Trend Reports only used data that was from the last ten (10) quarters, i.e. from the last quarter of 2007 to the present. Magistrate Chasez **did not declassify the pricelists from the last quarter of 2007 to the present.** State Farm's inverse logic that other price lists have the same value runs counter to Magistrate Chasez's obvious analysis. Accordingly, Magistrate Chasez made a case specific factual determination on the staleness of these lists that cannot be clearly wrong.

2.     **The Price Lists Were Not Maintained as Confidential.**

The prices in these lists were published by insurance adjusters (for State Farm and other insurers) every time he/she handed an insured an estimate based upon those price lists. Most of the prices contained in these lists were published thousands of times – in fact, there were hundreds of thousands of claims (not counting flood claims) from Hurricane Katrina alone, with approximately 80% being estimated with the Xactimate program price lists, and many of those claims had multiple estimates written. Yet, State Farm and Xactware suggest those same prices must not be made public or they will be injured in some way. These lists are just outdated material and labor costs processed by Xactware (and State Farm) for publication. While the specific formula and algorithms used to process the price list information are trade secrets, the outdated output is not anymore secret than last month's stock prices.

Stated as simply as possible, it defies logic to argue that price lists were "maintained as confidential" when they were provided to the hundreds of thousands of insureds after Katrina and Rita. State Farm did not require a single insured to sign any type of confidentiality agreement before providing them with an adjuster's report.

Xactware contracted with State Farm (and many other insurers) knowing full well that State Farm would give price list information to State Farm insureds without any restrictions. To be clear, Xactware provided the price lists to State Farm with the explicit knowledge that State Farm could simply provide the unit prices (in the format of an adjuster's estimate) to State Farm clients. State Farm had the right, under the contract, to lower the unit price, raise the unit price, or keep the prices the same. At all times, Xactware knew (as other insurance companies did) that State Farm could provide the unit prices to its insureds, without any restrictions. In fact, that was the very nature of the price lists. The very nature and very purpose of the price lists was for them to end up in an adjuster's report to be provided to a State Farm insured as a basis for what State Farm owed in a Katrina claim.

3.  **Defendants Have Failed to Prove That a Clearly Defined and Serious Injury Would Result from Declassification.**

Defendants cannot identify the harm that would come from publishing outdated price lists. What things get fixed after a hurricane or fire and how their costs are broken down is not any big secret. Yet, throughout the extensive briefs, Xactware and State Farm claim how the price lists are constructed have some indeterminate value. However, careful review of the price lists shows they are made up of construction repair elements (such as drywall removal) and their attendant material and labor costs; not exactly the type of concept one would view as difficult to figure out for a competitor. Additionally, exactly what type of economic (or any other) injury

could result from showing that for the period after Katrina, State Farm was charging $X price for sheetrock? Moreover, what type of injury would result from showing the public HOW State Farm decided to charge X price for sheetrock?

In fact, Magistrate Chasez had already viewed many similar documents from State Farm. In <u>Johnson v. State Farm Fire & Cas. Co.</u>, No. 07-1486 (E.D. La. 2/08/08) (Chasez, M.J.), Magistrate Chasez reviewed a self serving State Farm affidavit from Michael Sebald which stated that the materials were trade secrets. <u>Id.</u> at 4. However, this Court stated as follows:

> While it is self-serving on the part of State Farm to offer such an opinion, the Court has looked at the documents in question which appear to be <u>run-of-the-mill adjusting documents pertinent to Hurricane Katrina claims</u>. State Farm was invited by the Court to outline why each document caused problems, if produced, and has not done so.

<u>Id.</u> at 4 (emphasis supplied).

Despite these admissions, both State Farm and Xactware continue to suggest "significant threat to [Xactware's] business" and a "'triple threat' of competitive injury" should these price lists be declassified. Again, these vague suggestions of injury are the very type of generalized injury that cannot support protection of these price lists under the 26(c) test.

Perhaps the best known, recent example of whether an insurer has made a specific, demonstrable showing of injury is in <u>Weiss v. Allstate Ins. Co.</u>, 2007 WL 2377119 (E.D. La. 2007). In <u>Weiss</u>, Judge Sarah Vance reasoned as follows:

> Moreover, Allstate's general assertion that it would be at a competitive disadvantage if another insurance company obtained these exhibits is not supported by any specific facts. <u>See Liljeberg Enters. Int'l, LLC v. Vista Hosp. of Baton Rouge, Inc.</u>, 2005 WL 1309158, at *2 (E.D.La. May 19, 2005) (requiring defendants moving to seal parts of judicial record to provide "specifics as to what harm would come to them if this information were not sealed"). Allstate does not point to a single document or excerpt of a document within the approximately 185 pages that comprise

> Exhibits 7, 31, and 31A that might be harmful to its competitive position. Its failure to do so is particularly telling given the facially benign nature of these exhibits. Exhibit 7 includes a press release, a list of publicly available phone numbers, tips to policyholders affected by Hurricane Katrina, and suggested answers for its personnel to use when responding to questions from policyholders with hurricane claims. Exhibit 31 and 31A contain customer service guidelines to be followed by Allstate personnel, including information that was intended to be passed along to customers. It is not apparent that these documents contain sensitive material of any kind. Absent elucidation from Allstate as to the specific information in these exhibits that should remain confidential, the Court refuses to seal them in their entirety based on a general request to do so.

Weiss, 2007 WL 2377119, at *4.

Just like in Weiss and Johnson, the State Farm documents here center upon the adjusting of Katrina claims and, even more narrowly, the pricing of these claims. This information was given to thousands of adjusters who gave it to hundreds of thousands of policyholders without any restrictions. Because of this, the price lists (and all related documents) are not trade secrets.

Defendants will not be lose a red cent when the price lists are in the public domain. Xactware does not receive an additional fee for stale price lists. Magistrate Chasez reviewed the affidavit submitted by Xactware that it does not charge any of its users for the ability to obtain stale price lists. As part of the second declassification motion, Xactware suggested a second "injury" from declassification because it still sold old data in the form of Industry Trend Reports. As previously mentioned, Magistrate Chasez did not declassify the price lists used in these Industry Trend Reports. Since State Farm and Xactware has not made the requisite showing of economic harm, they cannot prevail. Magistrate Chasez's order evidences a fact and case specific analysis that is not clearly wrong.

II.     CONCLUSION.

Plaintiffs respectfully submit that State Farm and Xactware's Appeal from Order Declassifying Price Lists should be denied.  Magistrate Chasez received over a dozen briefs related to these two motions, and as evidenced by her first order delineating, in detail, those items that should remain classified from those that should be declassified, has carefully reviewed the documents at issue.  These rulings evidence a careful fact-based and case specific analysis fully supported by the law.  The price lists at issue in this appeal contain stale data, are not trade secrets or proprietary data, and already exist in the public domain.   State Farm and Xactware have failed to carry their burden.  Thus, these appeals should be denied.

>Respectfully submitted,
>
>_____/s/ J. Alex Watkins_____
>J. Alex Watkins La. Bar No. 29472
>Capitelli & Wicker
>1100 Poydras Street, Suite 2950
>New Orleans, Louisiana 70163
>Phone 504-582-2425
>Fax 504-582-2422

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of electronic filing to all counsel.

>___/s/ J. Alex Watkins _____
>J. Alex Watkins, La. Bar No. 29472
>1100 Poydras Street, Suite 2950
>New Orleans, Louisiana 70163
>Phone 504-582-2425
>Fax 504-582-2422
>JAW@Capitelliandwicker.com